Annette Jarvis (Utah Bar No. 1649)
Carson Heninger (Utah Bar No. 17410)
**GREENBERG TRAURIG, LLP**
222 South Main Street, Suite 1730
Salt Lake City, UT  84101
Telephone: (801) 478-6900
Email:   jarvisa@gtlaw.com
        carson.heninger@gtlaw.com

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* forthcoming)
Laura Baccash (*pro hac vice* forthcoming)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  gregory.pesce@whitecase.com
        laura.baccash@whitecase.com

– and –

**WHITE & CASE LLP**
Samuel P. Hershey (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  sam.hershey@whitecase.com

*Counsel to Blockchain Recovery Investment Consortium, LLC, Litigation Administrator and Complex Asset Recovery Manager, as Representative for the Post-Effective Date Celsius Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>POWER BLOCK COIN, L.L.C.<br><br>　　　　Debtor. | Chapter 11<br><br>Case No. 24-bk-23041-JTM |
| CELSIUS NETWORK LLC, *et al.*,<br><br>　　　　Post-Effective Date Debtors,<br><br>　　　　Plaintiff,<br><br>v.<br><br>POWER BLOCK COIN, LLC,<br><br>　　　　Defendant. | Adv. Proc. No. _____<br><br>The Honorable Joel T. Marker |

**COMPLAINT**

Celsius Network LLC and its affiliated post-effective date debtors (collectively, the

"**Plaintiff**" or the "**Celsius Debtors**," and together with their non-debtor affiliates "**Celsius**" or

1

the "**Company**"),[1] acting by and through their representative, the Blockchain Recovery

Investment Consortium, LLC, Litigation Administrator and Complex Asset Recovery Manager

("**Litigation Administrator ARM**"), through the undersigned counsel, to the Litigation

Administrator ARM, hereby submit this complaint (the "**Complaint**") to avoid and recover

transfers made by Celsius to or for the benefit of the above-captioned defendant (the

"**Defendant**"), and allege the following facts and claims based upon information and belief,

reasonable due diligence regarding the facts and circumstances of the Celsius Chapter 11 Cases,

Plaintiff's ongoing investigation, and the documents and information currently available to

Plaintiff as to all other matters:

**PRELIMINARY STATEMENT**

1.      In the months leading up to July 13, 2022 (the "**Celsius Petition Date**"), billions

of dollars in cash and cryptocurrency were transferred off the Celsius platform, severely depleting

the estate that was left to compensate the victims of the Company's fraud.   Hundreds of these

improper pre-petition transfers went to participants in Celsius's institutional lending program (the

"**Institutional Lending Program**"), which was managed by Celsius employees in the United

States and administered through the Celsius Debtor, Celsius Network Limited ("**CNL**").   Through

the Institutional Lending Program, Celsius lent cryptocurrency to institutional clients such as

hedge funds and market-makers on both a secured and unsecured basis.   Participants in the

Institutional Lending Program were among the primary beneficiaries of Celsius's pre-petition

transfers.   Indeed, following the pause on withdrawals that Celsius implemented on June 12, 2022,

---

[1]     Celsius's chapter 11 cases were filed and are pending under the jointly-administered caption *In re Celsius Network LLC, et al.,* Case Number: 22-10964 (MG) (the "**Celsius Chapter 11 Cases**") in the U.S. Bankruptcy Court for the Southern District of New York (the "**NY Bankruptcy Court**"). Documents filed on this docket can be accessed free of charge at https://cases.stretto.com/celsius/.  The location of Celsius Debtor Celsius Network LLC's principal place of business and the Celsius Debtors' service address in the Celsius Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

some institutional borrowers were permitted to continue transacting with Celsius despite all other members of the Celsius community being denied access to their accounts and collateral. The pause was a matter of public record, and these preferred clients of Celsius must have known that they were receiving special treatment.

2.    The Bankruptcy Code provides a mechanism to correct this inequity. The Litigation Administrator ARM brings this action on behalf of the Post-Effective Date Debtors to avoid and recover preferential transfers of property from Celsius to Defendant, who was a participant in the Institutional Lending Program, prior to the Celsius Petition Date. Through these targeted efforts, the Plaintiff will level the disproportionate impact of the Celsius Debtors' bankruptcy, correct any unfairness or inequity resulting from the Institutional Lending Program, and increase the amount of resources available for distribution to creditors.

3.    To that end, and through this Complaint, Plaintiff seeks to avoid and recover the preferential transfers that Defendant received as an initial transferee during the 90 days immediately preceding Celsius's commencement of its bankruptcy proceedings.[2]

## NATURE OF THE ACTION

4.    Plaintiff brings this adversary proceeding (the "**Adversary Proceeding**") pursuant to sections 502, 547, and 550 of title 11 of the United States Code (the "**Bankruptcy Code**"), seeking to avoid and recover from Defendant, or from any other person or entity for whose benefit

---

[2]    In accordance with section 546(a) of the Bankruptcy Code, the Celsius Debtors must file all estate claims and causes of action, including the claims asserted herein, on or before July 13, 2024. For that reason, the Celsius Debtors have recently commenced thousands of adversary proceedings asserting preference and fraudulent transfer claims in the NY Bankruptcy Court. The Celsius Debtors have filed this Complaint in this Court solely because the automatic stay pursuant to section 362 of the Bankruptcy Code bars them from bringing this action in the NY Bankruptcy Court. The Celsius Debtors respectfully submit that, for reasons of judicial economy and depth of relevant knowledge, the NY Bankruptcy Court is the appropriate forum for this case. Accordingly, the Celsius Debtors intend to file a motion seeking to lift the automatic stay and/or a motion to transfer venue in this case so that this Adversary Proceeding can be prosecuted before the NY Bankruptcy Court.

the transfers were made, transfers of property of the Celsius Debtors during the 90-day period (the

"**Transfer Period**") before the commencement of the Celsius Chapter 11 Cases.

5.      Plaintiff seeks entry of a judgment against Defendant: (i) avoiding, pursuant to

section 547(b) of the Bankruptcy Code, preferential transfers to and/or for the benefit of

Defendant; (ii) directing, pursuant to section 550(a) of the Bankruptcy Code, Defendant to return

the transferred assets or to pay to Plaintiff an amount to be determined at trial that is not less than

the value of the Avoidable Transfers (defined below) plus interest and costs; and (iii) pending such

payment, disallowing, pursuant to section 502 of the Bankruptcy Code, any claim of Defendant

against the Celsius Debtors.

6.      Through its ongoing investigation, Plaintiff has determined, based on currently

available information, that the transfers set forth in **Exhibit A** (the "**Avoidable Transfers**") with

a value totaling no less than approximately $54,256,669.86[3] were made by the Celsius Debtors to

or for the benefit of Defendant and are avoidable under section 547 of the Bankruptcy Code.

Accordingly, the Avoidable Transfers, are each recoverable under section 550 of the Bankruptcy

Code.

7.      During the course of this Adversary Proceeding, Plaintiff may learn (through

discovery or otherwise) of additional transfers made to Defendant during the Transfer Period or

following the Celsius Petition Date that are avoidable and recoverable under sections 544, 547,

548, 549, 550 and 553 of the Bankruptcy Code.  Plaintiff intends to avoid and recover all such

transfers made to or for the benefit of Defendant or any other transferee during the Transfer Period.

Plaintiff reserves the right to amend this Complaint to include, without limitation: (i) further

---

[3]     To provide a sense of the dollar value for the actions, the Litigation Administrator ARM has provided the market value of the various assets as of June 14, 2024, in USD.  In doing so, Plaintiff does not waive, and expressly reserves, any and all arguments with respect to the proper valuation date of the Avoidable Transfers and/or the form of recovery on any judgments.

information regarding the Avoidable Transfers; (ii) additional transfers made during the Transfer Period; (iii) additional unauthorized postpetition transfers or setoffs; (iv) additional plaintiffs; (v) modifications of and/or revisions to Defendant's name and other information; (vi) additional defendants; and (vii) additional causes of action, if applicable (collectively, the "**Amendments**"), that may become known at any time during this Adversary Proceeding, through formal discovery or otherwise, and intends for any such Amendments to relate back to this Complaint. The Amendments may include, but are not limited to, certain causes of action related to breach of contract by the Defendants which the Litigation Administrator ARM is investigating and reserves the right to bring on behalf of the Celsius Debtors here or in any other appropriate forum or proceeding.

8. To the extent that any Defendant has filed a proof of claim in the Celsius Chapter 11 Cases, is listed on the Celsius Debtors' schedules, or has otherwise requested payment from the Celsius Debtors' estates (collectively, the "**Claims**"), this Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason including, but not limited to, section 502 of the Bankruptcy Code, and such rights are expressly reserved.

**THE PARTIES**

9. The Plaintiff brings this action pursuant to the *Findings of Fact, Conclusions of Law, and Order Signed on November 9, 2023 Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* (the "**Celsius Confirmation Order**"),[4] the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor*

---

[4] *See In re Celsius Network LLC,* Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), Docket No. 3972.

*Affiliates (Conformed for MiningCo Transaction)* (the "**Celsius Plan**"),[5] the *Litigation Administrator and Complex Asset Recovery Manager Agreement* attached as <u>Exhibit C</u> to the *Eleventh Notice of Filing of Plan Supplement* (the "**Litigation Administrator ARM Agreement**"),[6] and section 1123 of the Bankruptcy Code.  Pursuant to the Celsius Plan, Celsius Confirmation Order, and the Litigation Administrator ARM Agreement, the Litigation Administrator ARM has the capacity administer the ARM Claims,[7] including these causes of action, on behalf of the Celsius Debtors for the benefit of the Celsius Debtors' estates (the "**Celsius Estates**").  The Celsius Debtors are: Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Mining LLC; Celsius Network, Inc.; Celsius Network Limited; Celsius Networks Lending LLC; Celsius US Holding LLC; GK8 Ltd; GK8 UK Limited; and GK8 USA LLC.

10. Defendant is the debtor in the above-captioned chapter 11 case.  The Defendant's principal offices and principal place of business are located in Orem, Utah, within the District of Utah.

## JURISDICTION AND VENUE

11. The United States Bankruptcy Court for the District of Utah (the "**Court**") has jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and DUCivR 83-7.1 of the United States District Court for the District of Utah.

12. The Adversary Proceeding is commenced pursuant to sections 502, 547, and 550 of the Bankruptcy Code, and rules 3007, 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[5]  *Id*., Docket No. 4289.

[6]  *Id*., Docket No. 4297.

[7]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Celsius Plan, Celsius Confirmation Order, and/or Litigation Administrator ARM Agreement, as applicable.

13.    The Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157.

14.    This Court has jurisdiction over Defendant as a chapter 11 debtor whose bankruptcy case is being administered in the above captioned case pending before this Court.

15.    Plaintiff does not consent to entry of final orders and judgments by this Court in this Adversary Proceeding pursuant to Bankruptcy Rule 7008.

16.    As discussed above, the Celsius Debtors respectfully submit that this case should be heard by the NY Bankruptcy Court and intend to file a motion to lift the automatic stay and/or a motion to transfer venue in this case for that purpose.

17.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this Adversary Proceeding arises under and is related to the Defendant's chapter 11 case pending in this Court.

18.    The Celsius Debtors reserve all rights with respect to the appropriate jurisdiction and venue for this Adversary Proceeding.  The Celsius Debtors do not intend to submit to this Court's jurisdiction or venue by filing this Adversary Proceeding before this Court, but rather do so as required by the automatic stay in this case and pursuant to the deadlines set forth in 11 U.S.C. § 546.

**FACTUAL BACKGROUND**

A.    **The Celsius Business Model and Reliance on Institutional Loans to Operate**

19.    Through CNL, Celsius lent assets to institutional clients such as hedge funds and market-makers as part of the Institutional Lending Program.  Unlike retail lending, institutional loans were mainly in the form of U.S. Dollars or stablecoins, and sometimes in cryptocurrency. The terms and conditions of institutional loans were based on master loan agreements and term sheets that set forth the detailed terms of any specific transaction.  The Company provided institutional borrowers with either secured or unsecured loans.  On occasion, Celsius would also enter into agreements with institutional clients to borrow fiat currency or stablecoins on a secured

7

or unsecured basis. The Institutional Lending Program was managed by Celsius employees based in the United States, and much of the day-to-day business with the Defendant was carried out on group chats in which the Head of Institutional Lending and other U.S.-based employees were participants. The settlement of institutional loan transactions often occurred through the Company's U.S.-based "middle office."

20. As of July 13, 2022, CNL had approximately twenty institutional borrowers with approximately $126 million of aggregate outstanding performing loans, and the Company held digital assets with a market value of approximately $77 million to support such loans. As of May 26, 2023, the Celsius Debtors had approximately 15 institutional borrowers with approximately $133 million of aggregate outstanding obligations supported by approximately $23 million in digital assets.

**B.**     **Celsius Faces Heavy Losses and Public Regulatory Scrutiny, Leading to the Pause**

21. Beginning in 2021 through the Celsius Petition Date, Celsius faced increasing regulatory pressure from the United Kingdom and United States' governments. Among other things, on September 17, 2021, the New Jersey Bureau of Securities ordered Celsius to cease and desist from offering Earn Accounts to certain investors in the United States (the "**New Jersey Order**").[8] Around the same time, several other state regulatory agencies, including those in Vermont, California, and New York, took action against Celsius.

22. On June 23, 2021, in response to adverse regulatory action in the U.K., Celsius announced, that it was migrating its main business activity and headquarters from the United Kingdom to the United States and where applicable, to several other jurisdictions.

---

[8]    State of New Jersey Bureau of Securities, *Summary Cease and Desist Order in the Matter of Celsius Network, LLC* (Sept. 17, 2021), https://www.nj.gov/oag/newsreleases21/Celsius-Order-9.17.21.pdf.

23.     On April 15, 2022, the New Jersey Order became effective, forcing Celsius to publicly admit to the regulatory issues that had been plaguing it for over a year.  Following this announcement, the Company began to experience significant outflows of assets from its platform. The amount of digital assets transferred off the Celsius platform increased by 67%,[9] and the corresponding transaction volume increased by 137%, from the period of April 15, 2022 to May 15, 2022, as compared to the period of March 15, 2022 to April 15, 2022.

24.     While Celsius was already insolvent at least as of March 2022, the situation at the Company was about to become even more untenable.  On May 7, 2022, what started as a spike in migration of assets off Celsius's platform turned into an explosion.  The cryptocurrency token, TerraUSD (**"UST"**), suffered a significant loss of value that sent shockwaves through the entire cryptocurrency market.  The UST token was a stablecoin whose value was pegged to USD through an algorithm and use of another cryptocurrency called "Luna."  The UST coin value "de-pegged" and plummeted (the **"Terra Luna Collapse"**).[10]

25.     In the face of the Terra Luna Collapse, rumors swirled around Celsius and its stability.  Customers withdrew billions of dollars' worth of cryptocurrency assets from the Celsius platform the week after the Terra Luna Collapse.

26.     Internally, Celsius faced a liquidity crisis.  It had billions of dollars invested in illiquid investments but insufficient assets to address customer withdrawal requests.  Celsius also had more than one billion dollars in loans that were collateralized by cryptocurrency that was dramatically decreasing in value and required additional collateral to survive margin calls.  By

---

[9]     The amount of digital assets transferred off the Celsius platform during these periods was calculated using the approximate value of the transferred assets in USD as of the date of the transfer and not as of June 14, 2024.

[10]    The Terra Luna Collapse and other events discussed herein are described in further detail in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "**Disclosure Statement**").  *See, e.g.*, Disclosure Statement at 587.

9

May 16, 2022, Celsius's liquidity had dropped by 40% due to customer withdrawals and steep price declines in BTC and ETH.

27. Many customers began rapidly withdrawing all or some of their assets, demanding crypto assets that Celsius lacked liquidity to provide. Many other players in the crypto markets were also collapsing under the same pressures, with crypto hedge fund Three Arrows Capital, Ltd. and crypto brokerage company Voyager Digital Holdings, Inc. filing for chapter 11 bankruptcy shortly before the Celsius Debtors, on July 1, 2022, and July 5, 2022, respectively.[11]

28. On June 12, 2022, in response to customer withdrawal demands and increasing volatility in the cryptocurrency markets, Celsius paused all withdrawals from its platform to prevent further erosion of value (the "**Pause**"). Hundreds of thousands of customers who still had assets on Celsius's platform were left without recourse, unable to withdraw or sell their coins. The Pause also extended to institutional borrowers, leading some to take action detrimental to the Celsius Estates, while others were permitted to continue transacting with Celsius and close out their loan books as Celsius hurtled toward bankruptcy.

C. **The Celsius Chapter 11 Cases**

29. On the Celsius Petition Date, the Celsius Debtors, other than GK8 Ltd, GK8 UK Limited, and GK8 USA LLC (collectively, the "**GK8 Debtors**"), filed voluntary petitions for relief in the NY Bankruptcy Court under chapter 11 of the Bankruptcy Code. On December 7, 2022, the GK8 Debtors filed voluntary petitions in the NY Bankruptcy Court under chapter 11 of the Bankruptcy Code. All of the Celsius Chapter 11 Cases were consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).[12]

---

[11] *See In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y, filed July 1, 2022); *In re Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y, filed July 5, 2022).

[12] *See In re Celsius Network LLC,* Docket Nos. 53, 1648.

30.     On July 27, 2022, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.[13]    On September 29, 2022, the NY Bankruptcy Court entered an order directing the appointment of an examiner.[14]    Following the examiner's issuance of a final report of her examination, on April 4, 2023, the NY Bankruptcy Court entered an order discharging the examiner.[15]

31.     On November 9, 2023, the Court entered the Confirmation Order, pursuant to which the Court approved and confirmed the Plan (as amended, supplemented, or modified from time to time) for all of the Debtors.  On January 31, 2024, the Celsius Plan became effective.[16]  As part of the Plan, the Litigation Administrator ARM was appointed to prosecute, settle, or otherwise resolve any claims belonging to the Celsius Estates, to serve as the Celsius Estates' representative in certain litigation, and to monetize the Celsius Debtors' illiquid assets.[17]   The Litigation Administrator ARM is charged to maximize distributions to the stakeholders, including victims of Celsius's collapse.

**D.       The Digital Asset Lending Agreement and the Loan Term Sheets**

32.     Celsius Network Limited, as Lender, and Defendant Power Block Coin LLC, as Borrower, entered into a Digital Asset Lending Agreement ("**DALA**"), dated as of April 24, 2020 and attached as **Exhibit B**, pursuant to which Celsius would lend certain digital assets or fiat currency to Defendant from time to time as set forth in certain term sheets (the "**Loan Term**

---

[13]    *Id*, Docket No. 241.

[14]    *Id,*, Docket No. 923.

[15]    *Id,*, Docket No. 2364.

[16]    *Id.,* Docket No, 4298,

[17]    *See* Celsius Plan, Art. IV.L.

Sheets"), attached as **Exhibit C**, each subject to the terms and conditions of the DALA.[18]   The DALA permitted the Defendant to obtain Loans from Celsius on an "Open Deal" basis (*i.e.*, a loan with no designated maturity date payable by the Borrower or callable by the Lender at any time) or on a "Term Deal" basis (*i.e.*, a loan required to be repaid on a fixed maturity date).   To compensate Celsius for providing the Borrower with access to digital assets or fiat currency, the Borrower was required to pay to Celsius Borrow Fees in the same type of digital asset or fiat currency that comprised the Loan Amount.

33.     As a condition of each Loan, Power Block Coin LLC was required to transfer an agreed upon amount and type of digital assets or fiat currency to Celsius as set forth in the applicable Loan Term Sheet (the "**Credit Support Assets**").   Celsius had the right to use or dispose of the Credit Support Assets in its sole discretion.   The parties agreed that the proportional value in U.S. dollars of the Loan Amount to the Credit Support Assets would be maintained within certain parameters during the term of the Loan.   If the proportional U.S. dollar value of the Credit Support Assets to the Loan Amount rose above or fell below the agreed parameters, either the Lender or the Borrower, as applicable, would make a balancing transfer to bring the proportional value back to the initial level at the time of the Loan (a "**Balancing Transfer**").   When a borrower had multiple loans outstanding under a master loan agreement, Celsius would evaluate any obligation it had to make Balancing Transfers on a portfolio-wide basis, considering all the loans then outstanding under the applicable master loan agreement.   Upon the Borrower's redelivery of any Loan Amount, together with any accrued and outstanding Borrow Fees, the DALA obligated Celsius to transfer to the Borrower digital assets or fiat currency in the kind and amount of the

---

[18]   All capitalized terms in this section not otherwise defined herein, shall have the meanings ascribed to them in the DALA.

12

outstanding Credit Support Assets, after taking into account any Balancing Transfers (a "**Closing Transfer**").

34.    Pursuant to the DALA, Celsius and Power Block Coin LLC entered into loans, including, without limitation, the loans designated in the Loan Term Sheets as numbers 2424, 2447, 2493A, 1982-E, 2498A, and 2493B.

### E.    The Avoidable Transfers

35.    During the Transfer Period, CNL and/or one or more of the Celsius Debtors transferred to Defendant Avoidable Transfers in an aggregate gross amount valued at no less than approximately $54,256,669.86 as part of the Institutional Lending Program.    Details of such Avoidable Transfers are set forth on **Exhibit A**.    These details include:

- a description of the transfer, including the suspected corresponding loan number where identifiable;[19]

- the type of asset (*e.g.*, BTC, ETH, USDC);

- the transaction date; and

- the transaction amount, which is the approximate value of the transferred asset in USD as of June 14, 2024.[20]

36.    Celsius is presumed to be insolvent under the Bankruptcy Code at the time of each of the Avoidable Transfers.

37.    Further, in April, May, and June of 2022, the value of Celsius liabilities far exceeded the value of its assets, rendering it insolvent under the Bankruptcy Code.

---

[19]    Celsius sought to match Avoidable Transfer to corresponding loan numbers where possible, however, such loan numbers are provided to assist in identifying the transfers only.    Celsius does not warrant that each of the loan numbers correspond to the Avoidable Transfers and will endeavor to confirm such information during the course of this Adversary Proceeding.

[20]    As noted *supra*, the Litigation Administrator ARM has provided the market value of the various assets as of June 14, 2024 in USD for Avoidable Transfers.    In doing so, Plaintiff does not waive, and expressly reserves, any and all arguments with respect to the proper valuation date of the Avoidable Transfers and/or the form of recovery on any judgments.

38.    In addition to being balance sheet insolvent, Celsius also was unable to pay its debts when they came due and did not have adequate capital to operate its business.  The liquid assets that Celsius held in April, May, and June of 2022 were only a fraction of the liquid assets necessary to operate the business, rendering it insolvent under the Bankruptcy Code on a cash flow and adequacy of capital basis.

**F.    The Litigation Administrator ARM's Due Diligence**

39.    After the creation of the Litigation Administrator ARM, Plaintiff undertook a detailed investigation of the Debtors' books and records to understand what possible Avoidable Transfers may have occurred.  Plaintiff reviewed the Celsius Debtors' books and records and identified that Defendant potentially has new value in transfers or other transactions that would qualify as new value under section 547(c)(4) of the Bankruptcy Code.  However, the subsequent new value defense is an affirmative defense, for which Defendant bears the burden of proof under section 547(g) of the Bankruptcy Code.  Factors such as the appropriate valuation date of such new value may affect the ultimate net of new value amount, if any.  Accordingly, Defendant bears the burden of proof to establish it is entitled to this new value.

40.    Plaintiff also reviewed the ordinary course of business defense, and asserts it is not applicable to the Avoidable Transfers.  The vast majority of the demands made by Defendant during the Transfer Period were a response to the acute market volatility, occurring after the Terra Luna Collapse and after Celsius's regulatory problems became notorious.  To the extent that Defendant asserts that any Avoidable Transfers were demands that were ordinary as compared to prior demands of Defendant, Plaintiff puts Defendant to its burden of proof to establish it is entitled to this defense.

41.    In accordance with section 547(b) of the Bankruptcy Code, Plaintiff has analyzed available information and asserts that the Avoidable Transfers are avoidable and recoverable

pursuant to sections 547 and 550(a) of the Bankruptcy Code as set forth in **Exhibit A**. Plaintiff reasonably believes all of the Avoidable Transfers are avoidable, subject to Defendant's known or reasonably knowable affirmative defenses under section 547(c) of the Bankruptcy Code, and Defendant's successful establishment of these defense(s) pursuant to section 547(g) of the Bankruptcy Code.

42.     Plaintiff seeks to avoid all of the transfers of an interest of the Celsius Debtors in any property made by the Celsius Debtors to Defendant during the Transfer Period.

**FIRST CAUSE OF ACTION**
**(Avoidance of Avoidable Transfers — 11 U.S.C § 547(b) — Defendant)**

43.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

44.     During the 90 days prior to the Celsius Petition Date, the Celsius Debtors made the Avoidable Transfers to, and/or for the benefit of, Defendant in the asset type, approximate value, and transfer types set forth on **Exhibit A**, which is incorporated by reference herein.

45.     Defendant was a creditor of the Celsius Debtors within the meaning of section 101(1) of the Bankruptcy Code at the time of each Avoidable Transfer.

46.     According to the books and records of the Celsius Debtors, the Avoidable Transfers were made to, and/or for the benefit of, Defendant because each Avoidable Transfer either reduced or fully satisfied a debt or debts then owed by the Celsius Debtors to Defendant.

47.     The Avoidable Transfers were made for, or on account of, antecedent debts owed by the Celsius Debtors to Defendant with respect to which each such Avoidable Transfer relates.

48.     The Avoidable Transfers were made while the Celsius Debtors were insolvent. As discussed, *supra*, upon information and belief each Avoidable Transfer during the Transfer Period was made while Celsius Debtors were insolvent within the meaning of sections 101(32) and

15

547(b)(3) of the Bankruptcy Code.  Notwithstanding the foregoing, Plaintiff is also entitled to the presumption of insolvency for each Avoidable Transfer made during the Transfer Period pursuant to section 547(f) of the Bankruptcy Code.

49.     Each of the Avoidable Transfers was made on account of a demand by Defendant, and as described above, was made outside the ordinary course of business.

50.     The Avoidable Transfers enabled Defendant to receive more than it would have received if (a) the Celsius Chapter 11 Cases were a case under chapter 7 of the Bankruptcy Code, (b) the Avoidable Transfers had not been made, and (c) Defendant received payment of such debt(s) to the extent provided by the provisions of the Bankruptcy Code.

51.     By reason of the foregoing, each Avoidable Transfer should be avoided and set aside as a preferential transfer pursuant to section 547(b) of the Bankruptcy Code.

## SECOND CAUSE OF ACTION
### (Recovery of Avoidable Transfers— 11 U.S.C § 550 — Defendant)

52.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

53.     Plaintiff is entitled to avoid the Avoidable Transfers pursuant to section 547(b) of the Bankruptcy Code.

54.     Defendant was the initial transferee of the Avoidable Transfers, the immediate or mediate transferees of such initial transferee, or the person(s) for whose benefit the Avoidable Transfers were made.

55.     As of the date hereof, the Defendant has not repaid all or a part of the value of the Avoidable Transfers or returned the Avoidable Transfers.

56.     Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant, for the benefit of the Celsius Estates, the property transferred in the Avoidable

16

Transfers or the value of such transferred property, plus interest thereon to the date of payment and the costs of this action.

**THIRD CAUSE OF ACTION**
**(Disallowance of Defendant's Claims — 11 U.S.C. § 502(d) — Defendant)**

57.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

58.     As alleged above, Defendant is the initial, immediate and/or mediate transferees of transfers avoidable under section 547 of the Bankruptcy Code and the persons from whom property is recoverable under section 550 of the Bankruptcy Code.

59.     As of the date hereof, the Defendant has not repaid all or a part of the value of the Avoidable Transfers or returned the Avoidable Transfers.

60.     By reason of the foregoing facts and pursuant to section 502(d) of the Bankruptcy Code, any Claims of Defendant that have been or may in the future be asserted in the Celsius Chapter 11 Cases should be disallowed unless and until Defendant relinquishes to Plaintiff the property transferred or pays to Plaintiff the value of such transferred property, for which and to the extent that the Court has determined Defendant is liable pursuant to section 550 of the Bankruptcy Code.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Defendant as follows:

(a)     Pursuant to section 547(b) of the Bankruptcy Code, avoiding each of the Avoidable Transfers;

(b)     Pursuant to section 550(a) of the Bankruptcy Code, directing Defendant to relinquish to Plaintiff the property transferred in the Avoidable Transfers or pay to Plaintiff an amount to be determined at trial that is not less than the full amount of the Avoidable Transfers;

17

(c)     Disallowing any Claim of Defendant pursuant to section 502(d) of the Bankruptcy Code;

(d)     Awarding pre-judgment interest at the maximum legal rate running from the date of Plaintiff's first demand to Defendant to return all Avoidable Transfers to the date of judgment with respect to this Complaint (the "**Judgment**") herein;

(e)     Awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full;

(f)     Awarding Plaintiff costs of suit incurred herein, including, without limitation, attorneys' fees, costs, and other expenses incurred in this action, to the fullest extent allowed by applicable law;

(g)     Requiring Defendant to pay forthwith the amount of the Judgment; and

(h)     Ordering such other and further relief as the Court may deem just and proper.

DATED: July 13, 2024

**GREENBERG TRAURIG, LLP**

_/s/ Carson Heninger_
Annette W. Jarvis
Carson Heninger

– and –

**WHITE & CASE LLP**
Samuel P. Hershey (*pro hac vice* forthcoming)
Joshua D. Weedman (*pro hac vice* forthcoming)
Barrett Lingle (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  sam.hershey@whitecase.com
        jweedman@whitecase.com
        barrett.lingle@whitecase.com

– and –

18

**WHITE & CASE LLP**
Keith H. Wofford (*pro hac vice* forthcoming)
Kyle M. Ferrier (*pro hac vice* forthcoming)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* forthcoming)
Laura Baccash (*pro hac vice* forthcoming)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  gregory.pesce@whitecase.com
            laura.baccash@whitecase.com

– and –

**WHITE & CASE LLP**
Stephen Moeller-Sally (*pro hac vice* forthcoming)
75 State Street
Boston, Massachusetts 02109
Telephone: (617) 979-9300
Facsimile: (617) 979-9301
Email: ssally@whitecase.com

*Counsel to Blockchain Recovery Investment
Consortium, LLC, Litigation Administrator and
Complex Asset Recovery Manager, as Representative
for the Post-Effective Date Celsius Debtors*

19