**GREENBERG TRAURIG, LLP**
Annette W. Jarvis (Utah #1649)
Carson Heninger (Utah #17410)
Abigail J. Stone (Utah # 19083)
222 South Main Street, Suite 1730
Salt Lake City, UT 84101
Telephone: (801) 478-6900
Email: jarvisa@gtlaw.com
    carson.heninger@gtlaw.com
    abigail.stone@gtlaw.com

**BAKER MCKENZIE**
Nicholas O. Kennedy (admitted *pro hac vice*)
Texas Bar No. 24087841
1900 N. Pearl Street, Suite 1500
Dallas, TX 75201
Telephone: +1 214 978 3000
Facsimile: +1 214 978 3099
nicholas.kennedy@bakermckenzie.com

Mark D. Bloom (*pro hac vice* forthcoming)
FL Bar No. 303836
1111 Brickell Ave., Suite 1000
Miami, FL 33131
Telephone: 305-789-8927
Facsimile: 305-789-8953
mark.bloom@bakermckenzie.com

*Attorneys for Zhouyang "Mason" Song*

**GREENBERG TRAURIG, LLP**
Annette W. Jarvis (Utah #1649)
Carson Heninger (Utah #17410)
Abigail J. Stone (Utah # 19083)
222 South Main Street, Suite 1730
Salt Lake City, UT 84101
Telephone: (801) 478-6900
Email: jarvisa@gtlaw.com
    carson.heninger@gtlaw.com
    abigail.stone@gtlaw.com

**WHITE & CASE LLP**
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  gregory.pesce@whitecase.com
    laura.baccash@whitecase.com

*Attorneys for Blockchain Recovery Investment Consortium, LLC, Litigation Administrator and Complex Asset Recovery Manager, as Representative for the Post-Effective Date Celsius Debtors; and Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Celsius Debtors.*

ACTIVE 700722024v1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>POWER BLOCK COIN, L.L.C.,<br><br>Debtor. | Case No. 24-bk-23041-JTM<br><br>Chapter 11<br><br>Judge Joel T. Marker |

**OBJECTING CREDITORS' MOTION FOR IMMEDIATE APPOINTMENT
OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Pursuant to 11 U.S.C. §§ 1181(b) and 1102(a)(3), Zhouyang "Mason" Song ("Song"); Blockchain Recovery Investment Consortium, LLC, as Representative for the Post-Effective Date Celsius Debtors ("Blockchain"); and Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Celsius Debtors ("Meghji") (collectively, the "Objecting Creditors"), each a creditor and party in interest in this Chapter 11 case, by and through undersigned counsel, hereby respectfully submit this *Objecting Creditors' Motion for Immediate Appointment of Committee of Creditors* (the "Motion"), on the basis that cause exists for the Court to direct for the United States Trustee to solicit and appoint an official committee of unsecured creditors in this Chapter 11 case.  In support of this Motion, the Objecting Creditors state as follows:

**RELIEF SOUGHT AND BASIS FOR RELIEF**

1.     Separately pending before the Court are objections filed by the United States Trustee and the Objecting Creditors to the Debtor's election under Subchapter V of Chapter 11 of the Bankruptcy Code [Doc. Nos. 85, 88] (the "Subchapter V Objections").  By making that election, the Debtor was able to evade the appointment of an official committee of unsecured creditors that is required under 11 U.S.C. § 1102(a)(1) in a typical Chapter 11 case.  By contrast,

ACTIVE 700722024v1

11 U.S.C. §§ 1181(b) and 1102(a)(3) provide that, in a Subchapter V case, a court may order the creation of a committee "for cause."

2. Here, cause exists to direct the immediate appointment of a committee, both because of the serious doubts raised in the Subchapter V Objections regarding the Debtor's qualification under Subchapter V, and because the filings in this case raise substantial questions about the Debtor's extensive relationships and prepetition transactions with its parent company, Blue Castle Holdings, Inc. ("Blue Castle"), and other insiders and affiliates, which call for the independent investigation typically conducted by a committee.

3. The Debtor's filings to date—particularly its statements and schedules [Doc. No. 39] (the "Statements and Schedules")—reflect that it has 274 unsecured creditors. While the Statements and Schedules mark most of these creditors' claims as "$Unknown," the Debtor's Statements elsewhere demonstrate that these claims run into the tens or even hundreds of millions of dollars. The sheer number of claims, and their likely amounts, merit the appointment of an official committee to represent and advance the interests of creditors generally. A committee is also needed to undertake an independent investigation into critical questions regarding this case, including: (i) the Debtor's pre- and post-petition management, investment, and disposition of estate funds; (ii) the rapid decline in the Debtor's assets in the year preceding bankruptcy; (iii) the abrupt transition of the Debtor's business model from a diversified cryptocurrency business to a questionable and less-than-transparent unsecured lending business; (iv) large insider loans with inadequate documentation and terms; and (v) potential estate claims and causes of action regarding the foregoing, which will inure to the benefit of all unsecured creditors.[1]

---

[1] Indeed, all of the first-day relief sought by the Debtor was calculated to benefit its insiders: (i) the retention of counsel whose close ties with the Debtor's parent company and CEO violate the "disinterestedness" standard that governs the engagement of professionals by a debtor in possession;

4. On these substantial bases, the Objecting Creditors seek the immediate appointment of a creditors' committee. Additionally, should this case convert from Subchapter V to a regular Chapter 11 case (as the Objecting Creditors believe it should), the Objecting Creditors submit that the committee should remain constituted so that any progress it has made in its duties can be preserved and carried forward.

## JURISDICTION

5. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## FACTUAL BACKGROUND

8. In the interest of judicial economy, the Objecting Creditors incorporate by reference the facts set forth in their Subchapter V Objection, and do not repeat those facts here.

## LEGAL STANDARD

9. The purpose and responsibilities of a creditors' committee include: (i) consulting with the trustee or debtor in possession concerning the administration of the case; (ii) investigating the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; and (iii) performing such other services as are in the interest of those represented. *See* 11 U.S.C. § 1103(c). The appointment of a committee does not apply in a Subchapter V case unless the court "for cause orders otherwise." 11 U.S.C.

---

(ii) extension of the automatic stay to protect the Debtor's CEO from pending and future litigation (which the Court properly found to be unwarranted); and (iii) approval of a cash management and payment system under which the estate's cash and cash equivalents are held in the name of and subject to the control of its parent, which charges an exorbitant transaction service fee for the Debtor to access those assets. These facts, from the very start of the case, further call for an independent committee to ensure the Debtor's ability to discharge its duties to unsecured creditors without undue control and influence by its parent.

4

§ 1181(b); *see also* 11 U.S.C. § 1102(a)(3) (stating that a court may appoint a committee in a Subchapter V case "for cause"). In other words, the decision to appoint a committee in a Subchapter V case is "within the discretion of the court." *In re Wildwood Villages, LLC*, 2021 WL 1784408, at *4 (Bankr. M.D. Fla. May 4, 2021).

10. The term "for cause" is not defined in §§ 1181 or 1102, and case law interpreting these sections is scarce. However, the phrase "for cause" is used in other sections of the Bankruptcy Code, and the meaning found in those sections and case law can be informative when interpreting §§ 1181(b) and 1102(a)(3). *See In re Piazza*, 719 F.3d 1253, 1264 (11th Cir. 2013) ("…[T]he Bankruptcy Code must, when possible, be interpreted such that 'equivalent words have equivalent meaning,'" and interpreting "for cause" in one section to mean "something different than what it means elsewhere in the Bankruptcy Code would create unnecessary incoherence.").

11. The few cases that do discuss "cause" for appointing a committee in a Subchapter V case identify factors such as the amount of the debtor's debt, the need for oversight in the case, and potentially improved recoveries for creditors. *In re Wildwood Villages, LLC*, 2021 WL 1784408, at *4 ("The Court can envision possible scenarios where a creditors' committee or a class claim may be an efficient and appropriate vehicle in a Subchapter V case, particularly while the debt limits are set at a higher level."); *In re Bonert*, 619 B.R. 248, 254 (Bankr. C.D. Cal. 2020) (holding that a creditors' committee appointed before the case was converted to a Subchapter V case could remain if it could "demonstrate that its continued existence will improve recoveries to creditors, will assist in the prompt resolution of this case, and is necessary to provide effective oversight of the Debtors."). All of these factors exist here.

5

**ARGUMENT**

12.     Cause exists to appoint a creditors' committee in this case because, as set forth in the Objecting Creditors' Subchapter V Objection: (i) the Debtor has many creditors with substantial debt, who require representation in this case; (ii) major questions exist regarding the Debtor's management of estate funds and assets, which require oversight; and (iii) the Debtor has several ongoing relationships with its insiders, as well as a recent, unexplained change in business and recent, poorly documented loans and transfers to insiders, which require investigation and could result in valuable claims that would improve unsecured creditor recoveries.  If the Court sustains the Subchapter V Objections, the committee should remain constituted to continue its work in a traditional Chapter 11 case.

**A.  The Debtor Has Many Creditors and Large Debts Which Warrant Further Oversight**

13.     Subchapter V cases were intended to "streamline the reorganization and rehabilitation process for small business debtors." *In re Ikalowych*, 629 B.R. 261, 267 (Bankr. D. Colo. 2021).  Specifically, Subchapter V cases "lower[] the Chapter 11 bar for confirmation of a plan" and "simplif[y] some of the more cumbersome aspects of standard Chapter 11 cases by eliminating unsecured creditors' committees and disclosure statements."  *Id.*   However, Subchapter V cases were also intended to be available only for debtors with relatively low debt caps, with the cap originally starting at $2,725,625 before it was temporarily raised during the COVID-19 pandemic to $7,500,000 and then lowered again to $3,024,725 the day after the Debtor filed for bankruptcy.  *See* 11 U.S.C. § 101(51D) (2024).[2]

---

[2] The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), enacted on March 27, 2020, amended § 1182(1) to change the definition for Subchapter V purposes by temporarily increasing the debt cap to $7,500,000.   § 1113(a), Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020).   The COVID-19 Bankruptcy Relief Extension Act of 2021 amended the CARES Act to extend the increased debt limit for an additional year.  § 2(a)(1), Pub. L. No. 117-5, 135 Stat. 249 (Mar. 27, 2021).  The Bankruptcy Threshold Adjustment and Technical Corrections Act (Act), which became law on June 21, 2022, further extended

6

14. Although the Debtor lists only $1,679,550.68 of outstanding debt on its Statements and Schedules, there is ample evidence to suggest that the Debtor's debt load is much higher than what was intended for a Subchapter V case—and in fact runs into the tens if not hundreds of millions of dollars. The Debtor lists 274 unsecured creditors on its Statements and Schedules, but appears to mask the amount of debt it owes to those creditors by marking over 200 of them with claims that are purportedly "unknown" in value. However, the Debtor listed over $67,631,684.00 of Crypto Interest Payable and Crypto Collateral Payable on its balance sheet mere months before filing for bankruptcy. The large number of creditors and the large amount of money the Debtor owes them merit the appointment of a committee to represent those creditors' interests.

15. Additionally, the claims held by Mr. Song and the Celsius Creditors each individually exceed the debt limit of $7,500,000. Indeed, these three claims alone total approximately $161,542,600, which is a far larger sum than can be handled "swiftly" in a Subchapter V case. These facts establish cause that a committee protecting the rights of the Debtor's many creditors—including its substantial creditors—is warranted.[3]

**B. The Debtor's Management of Funds Raises Many Questions Warranting Investigation**

16. As noted in the Subchapter V Objections, many concerning facts regarding the Debtor's questionable use and misuse of estate resources necessitate oversight and investigation by a committee.

---

the increased debt limit through June 21, 2024. § 2, Pub. L. No. 117-151, 136 Stat. 1298 (June 21, 2022). The Debtor filed its bankruptcy petition on June 20, 2024, which means this higher limit of $7,500,000 is applicable to the Debtor's case.

[3] Moreover, as set forth in the Subchapter V Objections, the fact that the Debtor appears to have claimed Subchapter V eligibility by underreporting and failing to calculate the amount of its liabilities also constitutes cause to appoint a committee.

ACTIVE 700722024v1

17.   As stated in the Subchapter V Objection, Mr. Song gave the Debtor approximately 434 Bitcoin as collateral for a loan in early 2023.  It is safe to assume that, given its line of business, the Debtor also held Bitcoin belonging to other investors at that time.  However, in the Debtor's Statements and Schedules, the Debtor claims to have only $11,025.52 worth of Bitcoin as of the Petition Date (*i.e.*, less than one Bitcoin).  This is startling, considering that the trading value of Bitcoin on the Petition Date was $65,100.00, and Mr. Song individually provided more than 400 Bitcoin to the Debtor a little over a year ago.

18.   The Debtor also withdrew assets from the Celsius Debtors in 2022 that are now worth more than $133,000,000.  However, again, nearly all those funds appear to have been dissipated, as the Debtor lists assets totalling only $26,353,220.08 on its Statements and Schedules.

19.   These facts constitute the prepetition equivalent of a "substantial or continuing loss to or diminution of the estate," which the Bankruptcy Code defines as "cause" in the context of conversion or dismissal of a Chapter 11 case.  *See* 11 U.S.C. § 1112(b)(4)(A).  The appointment of a committee would allow investigation into the Debtor's near-total drop in assets, including the investigation of any potential estate causes of action that may compensate creditors for the loss of their property.  The committee would also provide oversight to ensure that the Debtor better manages its assets going forward, in accordance with its fiduciary duties to unsecured creditors.

**C. The Debtor's Connections with Its Insiders Also Warrant Investigation and Oversight**

20.   Finally, the Debtor has several ongoing financial relationships with insiders that should be investigated—first, to ensure fairness and transparency in the Debtor's bankruptcy case, and second, to determine whether the estate possesses any claims against insiders that could create value for unsecured creditors who, based on the numbers provided by the Debtor, stand to get nothing absent a committee identifying additional sources of value.

8

21.     As discussed in the Objecting Creditors' Subchapter V Objection, the Debtor extended two prepetition loans to its parent company, Blue Castle.   The Debtor's Cash Management Motion states that, prior to the Petition Date, Blue Castle paid for all of the Debtor's operating expenses in exchange for a setoff of this prepetition loan.  This process is how the Debtor proposes to fund its business post-petition.  [Doc. No. 7].

22.     However, as noted in the Subchapter V Objections, the Debtor has provided little information about its relationship with Blue Castle and the terms of the loan.  Further, this appears to be an impermissible setoff under Section 553 of the Bankruptcy Code.  A committee would provide the necessary oversight and investigation regarding this loan, its treatment post-petition, and the relationship between the Debtor and Blue Castle more broadly.

23.     Furthermore, the Debtor also has an ongoing financial relationship in connection with an approximately $17 million loan with Solara Communities LLC, which is wholly owned by Blue Castle and is also an insider of the Debtor.  In addition to its substantial size, the loan seems to be below-market and outside the ordinary course of the Debtor's business.  These facts further call for investigation and transparency, which a committee would provide.

24.     Additionally, the Debtor reports only approximately $25 million of assets—not nearly enough to satisfy its hundreds of millions of dollars of liability.  Yet, before the Petition Date, the Debtor received hundreds of millions of dollars of transfers from Song and the Celsius Creditors alone.  A committee needs to investigate what happened to these assets and what claims might arise in connection with their dissipation.

25.     Given the questionable conduct that the Objecting Creditors have already identified *without* discovery, it is clear that a committee, with the investigative powers and discovery rights attendant to such a body, must thoroughly investigate the Debtor's prepetition conduct and any

ACTIVE 700722024v1

estate claims against insiders, which could increase the pool of distributable assets, to the benefit of all unsecured creditors.

### D. The Committee Should Remain if the Subchapter V Election is Rejected

26.     If a committee is appointed, and the Debtor's case is then converted to a regular Chapter 11 case (as it should be), the committee can and should continue to serve in the Chapter 11 case, which would provide efficiency and continuity.  It would also avoid disrupting the committee's progress in any investigation and oversight that it has undertaken, and allow the committee to maintain its momentum without losing any ground.

27.     Time is of the essence, as the process to appoint a committee is lengthy.  It would be in the best interest of all creditors to begin this process quickly and ensure that any committee that is appointed shall remain in place if this case converts to a traditional Chapter 11 case, as the Objecting Creditors submit that it should.

### CONCLUSION

WHEREFORE, because cause exists under Sections 1181(b) and 1102(a)(3), a committee of creditors should be appointed in this case immediately.

*[Signature Page Follows]*

10

DATED this 1st day of August, 2024.

**GREENBERG TRAURIG, LLP**

*/ s / Annette W. Jarvis*
Annette W. Jarvis
Carson Heninger
Abigail J. Stone

**BAKER MCKENZIE**
Nicholas O. Kennedy (admitted *pro hac vice*)
Mark D. Bloom (*pro hac vice* forthcoming)

*Attorneys for Zhouyang "Mason" Song*

**WHITE & CASE LLP**
Samuel P. Hershey (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)

*Attorneys for Blockchain Recovery Investment
Consortium, LLC, Litigation Administrator and
Complex Asset Recovery Manager, as
Representative for the Post-Effective Date Celsius
Debtors; and Mohsin Y. Meghji, Litigation
Administrator, as Representative for the Post-
Effective Date Celsius Debtors.*

11

## <u>CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)</u>

I hereby certify that on the 1st day of August 2024, the foregoing was electronically filed with the Court and served via the Court's CM/ECF system upon all parties who receive service upon electronic filing:

- **James W. Anderson**   jwa@clydesnow.com, gmortensen@clydesnow.com
- **Simeon J Brown**   sbrown@parsonsbehle.com
- **Matthew James Burne**   matthew.burne@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Deborah Rae Chandler**   dchandler@aklawfirm.com
- **Carson Heninger**   heningerc@gtlaw.com, carson-heninger-5642@ecf.pacerpro.com,Candy.Long@gtlaw.com
- **Annette W. Jarvis**   jarvisa@gtlaw.com, longca@gtlaw.com
- **Peter J. Kuhn**   Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Joli A. Lofstedt**   joli@jaltrustee.com, ecf.alert+LofstedtUTB@titlexi.com,brenda@jaltrustee.com
- **Darren B. Neilson**   dneilson@parsonsbehle.com
- **Walter A Romney**   war@clydesnow.com, gmortensen@clydesnow.com
- **Brian M. Rothschild**   brothschild@parsonsbehle.com, ecf@parsonsbehle.com;docket@parsonsbehle.com
- **Landon S. Troester**   lst@clydesnow.com, rcondos@clydesnow.com
- **United States Trustee**   USTPRegion19.SK.ECF@usdoj.gov
- **Melinda Willden tr**   melinda.willden@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

## <u>CERTIFICATE OF SERVICE BY MAIL OR OTHER MEANS</u>

I hereby certify that on August 1, 2024, I caused to be served a true and correct copy of the foregoing document as follows:

**Mail Service: First-class U.S. mail, postage pre-paid, addressed to:**

Laura Baccash
111 South Wacker Drive
Suite 5100
Chicago, IL 60606

CFO Solutions, LLC dba Amplo
13601 W McMillan Rd
#102 PMB 320
Boise, ID 83713

ACTIVE 700722024v1

Alexander S Chang
201 S. Main St Ste 1800
Salt Lake City, UT 84111

Samuel P. Hershey
1221 Avenue of the Americas
New York, NY 10020

Nicholas Kennedy
1900 N. Pearl Street
Suite 1500
Dallas, TX 75201

Christopher L. Perkins
Eckert Seamans Cherin & Mellott, LLC
919 E. Main Street
Suite 1300
Richmond, VA 23213

Gregory F. Pesce
111 South Wacker Drive
Suite 5100
Chicago, IL 60606

**From the List of 20 Largest Unsecured Creditors [Doc. No. 41]:**

Celsius Network LLC Restructuring
410 Exchange, Ste.100
Irvine, CA92602

Scribner, Douglas
12825 SW 62nd Ave
Pinecrest FL 33156

Carlson, David
2229 BLACKSTONE CT
EAST WENATCHEE WA 98802

Song, Zhouyang
c/o Nick Kennedy - Baker McKenzie
1900 N. Pearl Street, Suite 1500
Dallas, TX 75201

13

Zilka, Amy
5025 Crown St
MINNETONKA MN 55345


Spisso, Daniel
Urb. Terrazas del Country, Ave
Auyantepui Res. Casablanca Apto 5D ,
Valencia, Carabobo Venezuela 2001

Bagamaspad, Alan Mariano
7813 Rhea Ave
Raseda, CA 91335

Oster, Ryan
3887 MESA DR 101
OCEANSIDE, CA 92056

Rodriguez, Gabriel
335 South Biscayne Blvd
Miami FL 33131

Bagamaspad, Ellen A
7813 Rhea Ave
Reseda, CA 91335

Bjorkman, Michael
1516 East Thompson Blvd
Ventura CA 93001

Pangman, William
3564 Sabaka Trail
Verona WI 53593

Jones, Brad
624 S 100 W
Orem UT 84058

Dustin, Chieli
653 W DUNNING CT
DRAPER UT 84020

Brewer, Song
2310 W 850 N
Layton UT 84041

14

Petersen, Andrew Dodd
503 E Perry Hollow Dr
Mapleton UT 84664

Daily, Linda
4 Dutch Lane
Bridger MT 59014

Gay, Nissa
422 Green River St
Oxnard CA 93036

Morley, Mike T
775 West 1200 North, Suite 100
Springville UT 84663

Morley, McKay
775 West 1200 North, Suite 100
Springville UT 84663

Date: August 1, 2024

*/ s / Candy Long*

15

ACTIVE 700722024v1