**GREENBERG TRAURIG, LLP**
Annette W. Jarvis (Utah #1649)
Michael F. Thomson (Utah #9707)
Carson Heninger (Utah #17410)
Abigail J. Stone (Utah #19083)
222 South Main Street, Suite 1730
Salt Lake City, UT 84101
Telephone: (801) 478-6900
Email: jarvisa@gtlaw.com
thomsonm@gtlaw.com
carson.heninger@gtlaw.com
abigail.stone@gtlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 24-bk-23041-JTM |
| POWER BLOCK COIN, L.L.C. | Chapter 11 |
| Debtor | Judge Joel T. Marker |

## COMBINED CHAPTER 11 PLAN AND DISCLOSURE STATEMENT PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The Official Committee of Unsecured Creditors (the "Committee") proposes the following liquidating plan (this "Plan") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## SUMMARY

**THE FOLLOWING SUMMARY IS FOR CONVENIENCE ONLY AND IS QUALIFIED ENTIRELY BY THE TERMS OF THIS PLAN.**

1

The Committee seeks your consent to its Plan in this case under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") under which the Debtor will be liquidated to pay its debts in such a way as to maximize the value of its estate for the benefit of the Holders of General Unsecured Claims. To maximize the value of the Debtor's estate and liquidate its financial affairs, the Committee hereby submits and solicits your acceptance of this Plan.

Generally, the Plan provides for:

- the transfer and vesting of all of the Estate assets, including all Debtor Causes of Action and Avoidance Actions of the Debtor, in a Liquidating Trust for the purpose of monetization and distribution to Holders of Allowed Claims;

- the designation of a Liquidating Trustee appointed by the Committee to wind down the Debtor's affairs, pay and reconcile Claims, and administer the Plan in an efficient manner;

- the payment in full of all Administrative Expense Claims and Priority Claims in accordance with applicable law and the terms of this Plan; and

- the cancellation of the existing Equity Interests of the Debtor.

The Liquidating Trust will be administered by a third-party trustee with no prior connections to or affiliations with the Debtor or any insider.  The Liquidating Trustee will be appointed by the Committee and shall be prohibited from hiring any of the Debtor's current or former directors, officers, employees, independent contractors, professionals or other Persons associated with the Debtor, with the exception that, at the Liquidating Trustee's discretion, he or she may retain one individual with institutional knowledge of the Debtor to assist in the liquidating process.  Under section 1141 of the Bankruptcy Code, all pre-Petition Date Claims will be extinguished, discharged, and replaced by the obligations under the Plan.

**SOLICITATION OF THE PLAN WILL ONLY BE UNDER THE APPROVED DISCLOSURE STATEMENT, APPROVED BALLOTS, AND APPROVED FORMS OF**

**NOTICE ACCOMPANYING AN ORDER BY THE BANKRUPTCY COURT APPROVING SOLICITATION OF YOUR VOTE ON THE PLAN.**

**Summary of Plan Treatment**

The treatment of Claims and Equity Interests in each class are summarized as follows:

**SUMMARY OF CLAIMS AGAINST THE DEBTOR**

| Class | Type of Allowed Claim or Equity Interest: Holders Name | Impairment/Voting | Recovery/Treatment |
|---|---|---|---|
| 1 | Secured Claims | Unimpaired<br>Not Entitled to Vote<br>Deemed to Accept | Holders of Secured Claims shall receive such treatment rendering the Claim Unimpaired under Section 1124 of the Bankruptcy Code |
| 2 | Priority Claims | Unimpaired<br>Not Entitled to Vote<br>Deemed to Accept | Holders of Priority Claims will receive payment in full in cash the later of 20 days after the Effective Date or when such Claim is Allowed. |
| 3 | General Unsecured Claims | Impaired<br>Entitled to Vote | Holders of General Unsecured Claims will receive their pro rata distributions from the Liquidating Trust when such proceeds become available, after all costs of administration of the Liquidating Trust, including Liquidating Trust Expenses, are paid until no further proceeds are available. |
| 4 | Subordinated Claims | Impaired<br>Entitled to Vote | Holders of Subordinated Claims will receive their pro rata distributions from the Liquidating Trust when such proceeds become available, after all costs of administration of the Liquidating Trust and Allowed General Unsecured Claims are paid in full and no further proceeds are available. |
| 5 | Equity Interests | Impaired<br>Deemed to Reject | All existing Equity Interests will be cancelled. |

**All Holders of Claims and Equity Interests should refer to Articles 3 through 4 of this Plan for information regarding their precise treatment**. The Committee is seeking confirmation of the Plan. The Committee will only solicit acceptance of the Plan from all Holders of Class 3 General Unsecured Claims and Class 4 Subordinated Claims, but any party in interest may object or voice their support for the Plan by filing a pleading voicing their objection or support in the Bankruptcy Court. The Committee will distribute this Plan with the approved Disclosure Statement to all parties in interest on the Solicitation Date, which will be used in support of confirmation at a hearing scheduled by the Bankruptcy Court (the "Confirmation Hearing"). The Committee submits that the Plan contains adequate information for all parties in interest to make an informed judgment as to whether they will support or object to the Plan and, if entitled to vote, to vote to accept or reject the Plan, including information regarding the risks associated with the Plan, alternatives to the Plan, feasibility of the Plan, effect of and remedies upon default, and the rights of Holders of Claims and Equity Interests.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**ARTICLE 1**
**DEFINITIONS**

**A. Defined Terms**

Capitalized words not otherwise defined in this Plan have the following meanings:

1.1 **Administrative Expense Claim** means any Claim arising from the administration of the Debtor's Chapter 11 Case as provided in section 503 of the Bankruptcy Code or that is entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, without limitation, the following fees and expenses Allowed pursuant to an order of the Bankruptcy Court: (a) fees

and expenses of the Debtor's professionals, (b) fees and expenses of any Subchapter V Trustee, and (c) fees and expenses of the Committee's professionals.

1.2 **Administrative Expense Claim Bar Date** means 30 days after the Effective Date.

1.3 **Administrative Expense Claim Objection Date** means 30 days after the Administrative Expense Claim Bar Date.

1.4 **Allowed** or **Allowance** means with respect to Claims, (a) any Claim (i) for which a Proof of Claim has been timely filed on or before the applicable Claims Bar Date or (ii) that is listed in the Debtor's schedules (as amended and on file on the docket as of the Effective Date) as not disputed, not contingent, and not unliquidated whether or not a Proof of Claim has been timely filed; provided, that, in each case, any such Claim shall be considered Allowed only if and to the extent that no objection to the Allowance thereof has been filed by the Claims Objection Deadline or such an objection has been withdrawn or the Claim has been thereafter amended to address the objection; (b) any Claim Allowed by a final non-appealable order; or (c) any Claim Allowed pursuant to the Plan if not otherwise subject to an objection filed prior to the Claims Objection Deadline. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

1.5 **Avoidance Action** means all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or its estate (or any one of them) under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 502(d), 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code and other similar state or federal statutes and common law, including fraudulent transfer claims and causes of action.

1.6 **Ballots** means each of the ballot forms distributed to Holders for, among other things, voting on the acceptance or rejection of the Plan.

1.7 **Bankruptcy Code** means title 11 of the United States Code as in effect on the Petition Date.

1.8 **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure (as applicable to the Chapter 11 Cases) promulgated under section 2075 of the Judicial Code, and the general, local, and chambers rules of the Bankruptcy Court.

1.9 **Bankruptcy Court** means the United States Bankruptcy Court for the District of Utah, Central Division.

1.10 **Beneficiaries** means the Holders of Claims who are the beneficiaries of the Liquidating Trust.

1.11 **Blue Castle** means Blue Castle Holdings, Inc., a Delaware corporation, which is the Debtor's sole holder of its Equity Interests.

1.12 **Blue Castle Note** means that certain promissory note dated August 8, 2023, by and between Debtor as holder, and Blue Castle, as maker, in the principal amount of $1,400,000.00 with a Maturity Date of August 6, 2028.

1.13 **Brown Adversary Proceeding** means that certain adversary proceeding filed by the Debtor on January 2, 2025, in the U.S. Bankruptcy Court for the District of Utah, Case No. 25-02000.

1.14 **Business Day** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

1.15 **Cash** means cash and cash equivalents, including bank deposits, checks and other similar items in legal tender of the United States of America.

1.16 **Celsius** means Celsius Network LLC and its affiliated debtors, including and as applicable, Mohsin Y. Meghji, as Litigation Administrator, and Blockchain Recovery Investment Consortium, LLC, as Litigation Administrator and Complex Asset Recovery Manager, on behalf of Celsius Network LLC and its affiliated post-effective date debtors in the jointly-administered chapter 11 cases with lead Case No. 22-10964 (MG) (Bankr. S.D.N.Y.), whether before or after the petition date in those cases.

1.17 **Chapter 11 Case** means the case under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

1.18 **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code, the value of which is determined as of the Petition Date.

1.19 **Claims Bar Date** means, with respect to the Debtor, the last dates for filing Proofs of Claims for the applicable Creditor as established by the Bankruptcy Court, specifically December 17, 2024, for Claims held by a government unit and August 29, 2024, for all other Claims.

1.20 **Claims Objection Deadline** means the date that is 180 days after the Effective Date of the Plan.

1.21 **Claims Register** means the official register of Claims filed in the Chapter 11 Case.

1.22 **Committee** means the statutory committee appointed under section 1102(a) of the Bankruptcy Code.

1.23 **Confirmation Date** means the date that the Confirmation Order becomes a final, non-appealable order and on which no stay of the Confirmation Order is in effect.

1.24    **Confirmation Hearing** means the hearing that is scheduled by the Bankruptcy Court to consider confirmation of the Plan as it may be convened and continued by the Bankruptcy Court from time to time.

1.25    **Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan.

1.26    **Creditor** means a Holder of a Claim.

1.27    **Debtor** means Power Block Coin, L.L.C., a Utah limited liability company dba SmartFi, which serves as the debtor in possession in the Chapter 11 Case, with "Debtor" referencing the Debtor irrespective of whether the reference is to a time that is either before or after the Effective Date and, to the extent applicable, the successor of the Debtor including the Liquidating Trustee.

1.28    **Debtor Affiliates** means all "affiliates" of the Debtor, as defined by Section 101(2) of the Bankruptcy Code, and includes, without limitation, (i) Blue Castle, (ii) SmartFi Lending, LLC, (iii) RE Developers, LLC, (iv) Solara, (v) BCH Management Services, LLC, (vi) Global Funding, LLC, and (vii) Willow Creek, LLC.

1.29    **Debtor Causes of Action** means any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, arising on, prior to, or after the Petition Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, including Avoidance Actions, asserted, or which may be asserted, by or on behalf of the Debtor and/or its estate, as the case may be, whether or not pending on the Effective Date or prosecuted thereafter against any Person, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted; provided, further, that for the avoidance of doubt, Debtor Causes of Action include (i) all claims asserted in any pending adversary proceeding, including all causes of action or counterclaims or potential causes of action against Song; (ii) all causes of action and potential causes of action to pierce the corporate veil with respect to the Debtor and its Debtor Affiliates; (iii) all causes of action and potential causes of action for substantive consolidation with respect to the Debtor and its Debtor Affiliates; (iv) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (v) the right to object to or otherwise contest Claims or Interests; (vi) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (vii) any claims or defenses, including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (viii) any Avoidance Action; (ix) the Brown Adversary Proceeding; (x) any Debtor rights associated with the Celsius Parties' adversary proceedings; and (xi) any claims against the Debtor's Insiders, including but not limited to claims for actual fraud, gross negligence, willful misconduct, violation of fiduciary duties, etc.

1.30    **Disbursement Agent** means either the Liquidating Trustee or the Entity or Entities selected by the Liquidating Trustee to make or facilitate the Distributions contemplated under the Plan.

1.31    **Disputed** means, with respect to any Claim or Equity Interest, any claim or Equity Interest that has not been Allowed.

1.32    **Disputed Claims Reserve** means any reserve or account or fund for Claims that are Disputed, contingent, or have not yet been Allowed, or where the Holder is or may be subject to an Avoidance Action.

1.33    **Distribution** means any transfer under the Plan of Cash or other property to a Holder of an Allowed Claim.

1.34    **Effective Date** means the first business day fourteen (14) days after the Confirmation Date, provided that the Confirmation Order is not stayed or reversed.

1.35    **Entity** means has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.36    **Equity Interest** means the common stock of the Debtor, which is 100 percent owned by Blue Castle.

1.37    **Estate** means the chapter 11 estate of the Debtor, as is appropriate in the context, created by the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.38    **Excluded Party** means each of the following: (a) Aaron Tilton; (b) Brad Jones; (c) Tom Retson; and (d) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan as a released party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute an Exculpated Party in any capacity hereunder.

1.39    **Exculpated Parties** mean, collectively, and in each case solely in its capacity as such: (a) the Committee, (b) the Liquidating Trustee, (c) the Liquidating Trust, or (i) with respect to any Person described in the foregoing clauses (a) through (c), such Person's respective attorneys, financial advisors, investment bankers, or any of such Person's successors and assigns; provided, however, that persons included in clause (i) shall not include any Person who is a current or former director, officer, member, shareholder, employee, or affiliate of the Debtor, including any Excluded Party.

1.40    **File or Filed** means file or filed with the Bankruptcy Court in the Chapter 11 Case, or, with respect to the filing of a Proof of Claim (including for any Administrative Expense Claim).

1.41    **Final Order** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not

been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be Filed relating to such order shall not cause such order to not be a Final Order.

1.42    **General Unsecured Claim** means any Claim that is not an Administrative Expense Claim, Priority Claim, Secured Claim, and that is not given priority under section 507(a) of the Bankruptcy Code or otherwise is subject to subordination under section 510 of the Bankruptcy Code.

1.43    **Holder** means the holder of a Claim or Equity Interest of the Debtor on the Voting Record Date, or, in the case of an Administrative Expense Claim, such later date on which such Administrative Expense Claim is Allowed.

1.44    **Insider Claims** shall mean all Claims of any kind or nature, whether secured or unsecured, liquidated or unliquidated, fixed or contingent, matured or unmatured, including any claims arising under section 502(h) of the Bankruptcy Code or any claims that would otherwise be entitled to administrative priority under the Bankruptcy Code, that are made by an insider, as defined by Section 101(31) of the Bankruptcy Code and any Claims by the Debtor Affiliates and officers, directors, and equity-holders of the Debtor and the Debtor Affiliates.  Insider Claims shall also include all Claims asserted by (i) Aaron Tilton; (ii) Brad Jones; and (iii) Tom Retson.

1.45    **Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.46    **Liquidating Trust** shall mean the Liquidating Trust established on the Effective Date in accordance with the terms hereof and the Liquidating Trust Agreement.

1.47    **Liquidating Trust Advisory Board** means the board comprised no less than three (3) and no more than seven (7) members each of whom shall be appointed by the Committee in accordance with the Liquidating Trust Agreement, vested with the powers and responsibilities set forth therein.  The initial members of the Liquidating Trust Advisory Board shall be the current members of the Committee who agree to serve on the Liquidating Trust Advisory Board. Notwithstanding anything to the contrary herein, if the Committee votes to authorize a party to provide funding for the Plan before the Effective Date pursuant to Section 8, the Committee can also authorize a change in the composition of the Liquidating Trust Advisory Board and the

number of members of such Board, including by agreeing to allow such funder to appoint a majority of the members of the Liquidating Trust Advisory Board.

1.48    **Liquidating Trust Agreement** shall mean the Liquidating Trust Agreement entered into pursuant to the Plan and the Confirmation Order, substantially in the form included in the Plan Supplement as Exhibit 1 (as may be amended, supplemented, or modified from time to time), in substance acceptable to the Debtor and the Committee.

1.49    **Liquidating Trust Assets** mean the Debtor's Retained Assets, including, but not limited to, Cash, Retained Causes of Action and any and all other personal and real property, all of which shall be transferred or assigned to the Liquidating Trust on the Effective Date, free and clear of any liens or claims that might otherwise have existed in favor of any party.

1.50    **Liquidating Trust Expenses** shall mean all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated (collectively, the "Expenses") incurred by the Liquidating Trust or the Liquidating Trustee after the Effective Date or in connection with the implementation of the Plan, the administration of the post-confirmation Estate and the implementation of the Liquidating Trust, including, but not limited to: (a) the Liquidating Trustee's Expenses in connection with administering and implementing the Plan, including any taxes incurred by the Liquidating Trust or the Liquidating Trust Assets and accrued on or after the Effective Date; (b) all fees which accrue after the Effective Date which are payable to the U.S. Trustee under 28 U.S.C. § 1930(a)(6); (c) the Liquidating Trustee's Expenses in making the Distributions required by the Plan, including paying Allowed Administrative Expense Claims, paying taxes and filing tax returns; (d) any Expenses incurred by the Liquidating Trust or the Liquidating Trustee; (e) the Expenses of independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals and other Persons) providing services to the Liquidating Trustee; and (f) the fees and expenses of any Disbursing Agent selected by the Liquidating Trustee to act as its agent in making Distributions.

1.51    **Liquidating Trust Interest** means a beneficial interest in the Liquidating Trust entitling the Holder thereof to the Distribution from the Liquidating Trust as provided for in the Plan and in the Liquidating Trust Agreement.

1.52    **Liquidating Trustee** shall mean (a) a disinterested, third-party trustee chosen by the Committee, subject to approval by the Bankruptcy Court, as the initial Liquidating Trustee under the Liquidating Trust, and (b) any successor trustee appointed under this Plan or the Liquidating Trust Agreement. On and after the Effective Date, the Liquidating Trustee shall be authorized to hire outside professionals and experts to assist with the administration of the Liquidating Trust without the approval of the Bankruptcy Court. However, for the avoidance of any doubt, the Liquidating Trustee shall not hire any of the Debtor's current or former directors, officers, employees, independent contractors, professionals, or other Persons associated with the

Debtor, with the exception that, at the Liquidating Trustee's discretion, he or she may retain one individual with institutional knowledge of the Debtor to assist in the liquidating process.

1.53     **Paid in Full** means payment of the face amount of the Claim in addition to interest (which rate shall be based on the contractual rate or, in the absence of contract, the federal judgment rate).

1.54     **Person** means an individual, corporation, business trust, estate, trust (including a statutory trust), partnership, limited liability company, or association.

1.55     **Petition Date** means June 20, 2024, the date on which the Debtor filed its petition for relief under chapter 11 commencing the Debtor's Chapter 11 Case.

1.56     **Plan** means this Plan of Liquidation under Chapter 11 of the Bankruptcy Code, including all exhibits and supplements hereto.

1.57     **Plan Supplement** means the exhibits and supporting documents to this Plan, which shall be filed on the Bankruptcy Court docket and which are incorporated in this Plan by reference.

1.58     **Priority Claim** means a Claim that is entitled to priority in payment under section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

1.59     **Priority Tax Claim** means a Claim that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code; provided, however, that any Claim on account of any penalty arising with respect to or in connection with a Priority Tax Claim that does not compensate the Holder for actual pecuniary loss shall be treated as a General Unsecured Claim.

1.60     **Pro Rata** means a proportionate share of the total distribution made at any particular time under this Plan to the holders of Allowed Claims in a Class, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claims in such Class.

1.61     **Proof of Claim** means a proof of claim filed with the Bankruptcy Court.

1.62     **Related Party** means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, affiliated investment funds or investment vehicles, managed accounts or funds, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants,

representatives, and other professionals and advisors and any such Entity's respective heirs, executors, estates, and nominees.

1.63    **Retained Assets** means any and all of the Debtor's assets other than assets expressly otherwise provided for in the Plan. This shall include all of the Debtor's documents, records, books, ledgers, files, and all other business data, documents, and records. For the avoidance of doubt, Retained Causes of Action constitute Retained Assets.

1.64    **Retained Causes of Action** means Debtor Causes of Action that are not waived, relinquished, exculpated, released, compromised, or settled pursuant to this Plan or a Bankruptcy Court order.

1.65    **Secured** or **Security Interest** means a Lien on property in which the Debtor has an interest or that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, which secures a Claim, to the extent of the value of the Claim Holder's interest in the Debtor's interest in such property or to the extent of the amount subject to such valid right of setoff, as applicable, as determined under section 506 of the Bankruptcy Code.

1.66    **SmartFi Lending Note** means that certain promissory note dated September 30, 2023, by and between Debtor as holder, and Smartfi Lending, LLC, a Utah limited liability company, as maker, in the principal amount of $1,768,830.05 with a Maturity Date of September 29, 2028.

1.67    **Solara** means Solara Communities, LLC fka SmartFi Toquerville, LLC, a Utah limited liability company.

1.68    **Solara Note** means that certain promissory note dated March 17, 2022, by and between the Debtor as holder, and Solara, as maker, in the principal amount of $17,400,000.00 with a Maturity Date of March 17, 2032.

1.69    **Solicitation Date** means [●], 2025, the date on which the Plan, Ballots, and Plan Supplement were mailed to Holders of Claims and Equity Interests to solicit their votes on the Plan.

1.70    **Song** means Zhouyang Song, an individual, who is currently engaged in the Song Lawsuit (defined in Section 2.1) against the Debtor in the United States District Court for the District of Utah, Civil No. 2:23-cv-00175-TC-JCB.

1.71    **Subordinated Claims** means any Claim: (i) subject to subordination under Section 510(b) of the Bankruptcy Code, (ii) all Insider Claims, and (iii) all claims equitably subordinated by the Bankruptcy Court after notice and hearing.

1.72    **Unsecured** means a Claim that is not Secured.

1.73    **U.S. Trustee** means the United States Trustee for the District of Utah.

1.74    **U.S. Trustee Fees** means all fees required to be paid to the United States Trustee under 28 U.S.C. § 1930(a)(6), if any, that accrue until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

1.75    **Voting Record Date** means the date that is fourteen (14) days before the first date scheduled by the Bankruptcy Court for the Confirmation Hearing.

1.76    **Unimpaired** means, with respect to a Class of Claims or Interests, a Class of Claims or Equity Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

### B.  Rules of Interpretation, Application of Definitions, and Rules of Construction

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Utah, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action,

order, or approval of the Bankruptcy Court or any other Entity; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (16) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.  Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### D.  References to Monetary Figures

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**ARTICLE 2**
**DISCLOSURE STATEMENT**[1]

### 2.1  Debtor's History and Bankruptcy Filing

### A.  The Debtor's Business

The Debtor has asserted the following regarding its business, and the Committee neither adopts nor admits these statements due to lack of information:

Power Block Coin, d/b/a SmartFi, is a Utah limited liability company that provided crypto-based financial services, which historically have included cryptocurrency exchange, savings, crypto-based lending, crypto information, token creation and offering, alternative currencies, and cryptocurrency investment. The Debtor asserts that it operated a platform for its clients through its website portal at (smartfi.com). The Debtor also asserts that it generated revenue through interest

---

[1] As a preliminary matter, the Committee notes that, despite frequent and repeated requests to the Debtor and the Debtor's affiliates for records and documents regarding the Debtor, many such documents either allegedly do not exist or have not been provided to the Committee. Thus, this Disclosure Statement contains the information that the Committee has been able to ascertain, and that the Debtor has been willing to provide.

on loans denominated in dollars and cryptocurrencies, trading and hedging, and fees assessed on certain transactions on its platform.

The Debtor states that it has more recently diversified into more traditional lending, including lending on real estate development and other types of financial services. However, as explained more fully below, this "traditional lending" has been to the Debtor's Insiders at below-market rates and does not appear to be sustainable as a business model.

### B. Events Precipitating this Bankruptcy Proceeding

The Debtor has asserted the following regarding its business, and the Committee neither adopts nor admits these statements due to lack of information:

Beginning in 2022, the worldwide cryptocurrency markets experienced a rapid collapse and have been in a period of high instability ever since. The Debtor asserts that it had de-risked some of its holdings prior to the collapse. For example, the Debtor asserts that it did not do business or had ceased doing business with certain large cryptocurrency exchanges that collapsed such as CoinBase, FTX, and Celsius, but was still reliant on certain cryptocurrencies in its portfolio for liquidity.

The Debtor states that it had (and still has) significant, although illiquid, loans in its portfolio, including a large real estate loan to Solara, an affiliate that is developing real property in Toquerville, Utah. The Solara Note has an original principal balance of $17,400,000.00, an interest rate of 5 percent, and a maturity date of March 17, 2032. Following a default by the third-party borrower that owned the real property, Solara foreclosed on the real property, and it is now developing the real property. The Solara Note, which is arguably one of the Debtor's largest known assets, is illiquid and not in default. More details on the Solara Note and property are set forth below.

The Debtor also loaned money to another affiliate, SmartFi Lending.

The Debtor asserts that, with a significant amount of the Debtor's assets tied up in illiquid, long-term instruments, and the cryptocurrencies it normally relied on for liquidity experiencing collapse or instability, the Debtor struggled to maintain liquidity necessary to continue its operations.

On June 20, 2024, the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code, commencing this Chapter 11 Case. The Debtor remains in possession of its Estate. However, it has ceased to operate its cryptocurrency platform.

### C. Debtor's Banking Issues

The Debtor has asserted the following regarding its business, and the Committee neither adopts nor admits these statements due to lack of information:

In approximately December of 2023, the Debtor's banking institutions closed the Debtor's accounts, which complicated the Debtor's ability to manage its cash and payments. The Debtor

15

further asserts that while the Debtor continued to hold and exchange cryptocurrencies on its platform, it had to establish new mechanisms to pay its dollar-denominated operational expenses and take payments of dollar-denominated assets such as loans.

As a workaround, the Debtor asserts that it entered into the Services Agreement dated as of December 1, 2023, with Blue Castle whereby Blue Castle, using its own bank accounts, pays for certain of the Debtor's obligations such as professionals' fees, utilities attributable to the Debtor, and third-party payables on behalf of the Debtor whenever U.S. dollars are required. Further, the Debtor states that Blue Castle also provides certain goods and services such as management services, utilities, office space, internet server hosting costs for the Debtor's cryptocurrency exchange platform and website, and the like.

The Debtor asserts that it has no employees, but rather, all work necessary for the operation of the Debtor is provided by Blue Castle employees under the Services Agreement. According to the Debtor, Blue Castle manages the Debtor through its employees. Blue Castle likewise pays these employees' benefits, payroll taxes, workers' compensation insurance premiums, and other costs of employment.

According to the Debtor, in exchange for facilitating payments, management of the Debtor, and the other services under the Service Agreement, Blue Castle charges the Debtor 10 percent of the disbursements as a fee. To pay the expenses, allocated costs, and 10 percent fee, the Debtor either transfers cryptocurrencies to Blue Castle or reduces the balance of the Blue Castle Loan to account for its payment obligations under the Services Agreement.

### D. The Debtor's Assets

Based on investigation by the Committee's financial advisor and the documents and information produced by the Debtor, it appears that the Debtor's assets include (a) the outstanding notes owed to the Debtor based on various loans made by the Debtor and (b) cryptocurrency inventory. These assets, and their outstanding amounts and terms, are outlined below:

| Notes Receivable | Amount (USD) |
|---|---:|
| Blue Castle Holdings Inc | 1,161,249 |
| Solara Communities LLC | 18,232,018 |
| Smartfi Lending LLC | 1,819,617 |
| David Aguirre | 1,253 |
| Zhuoyang (Mason) Song | 3,786,505 |
| Joseph Haiek | 5,924 |
| Nissa Gay | 67,572 |
| Wiliam Pangman | 143,961 |
| Gabriel Rodriguez | 260,879 |
| Michael Bjorkman | 238,220 |
| Ashton Godfrey | 26,846 |

16

| | |
|---|---:|
| Alex Haiek | 40,233 |
| Timmy Sanders | 1,212 |
| Daniel Spisso | 527,080 |
| Anna Wade | 12,788 |
| **Total Notes Receivable** | **$ 26,325,360** |

| Crypto Inventory | Amount (USD) |
|---|---:|
| Crypto - BCH | 1,670 |
| Crypto - LTC | 5,514 |
| Crypto - LINK | 1,424 |
| Crypto - DOGE | 2,117 |
| Crypto - USD Stable Coins | 5,548 |
| Crypto - ETH | 562 |
| Crypto - BTC | 11,026 |
| **Total Crypto Inventory** | **$27,861** |
| **Total Assets** | **$26,353,220** |

*Based on Statements of Assets & Liabilities, as of 6/20/24*

## E. The Debtor's Liabilities and Claims Against the Debtor

**Liabilities reported by Debtor:**

| Nonpriority Unsecured Claims | Amount (USD) |
|---|---:|
| Banks, Timothy James | 53,596 |
| Brewer, Michael D | 74,650 |
| Brewer, Song | 304,869 |
| Buttell, Jeremy | 55,416 |
| Miller, Kevin | 58,105 |
| Morley, McKay | 176,734 |
| Nuttall, Christopher Scott | 61,857 |
| Oster, Ryan | 187,106 |
| Peterson, Andrew Dodd | 268,648 |
| All others (265 claimants) | 438,570 |
| **Total** | **$1,679,551** |

*Based on Statements of Assets & Liabilities, as of 6/20/24*

**Claims submitted by creditors post-petition:**

| Creditor | Amount Claimed (USD) | Secured Claimed (USD) |
|---|---:|---:|
| Celsius Network LLC and its affiliated debtors | 79,032,564 | |
| Celsius Network LLC and its affiliated debtors | 54,256,670 | |
| Song, Zhouyang | 28,248,674 | 3,378,094 |
| Brown, Lynn | 10,000 | |
| Jason Brown, Daniel Stadelmann, Lynn Brown | 1,858,261 | |
| Michael Alber | 370,121 | |
| NEWMAN, MICHELE | 4,435 | |
| Buchanan Ingersoll & Rooney PC | 21,990 | |
| Buchanan Ingersoll & Rooney PC | 21,990 | |
| Gay, Nissa | 253,480 | |
| Hemmert, Dan | 71,263 | |
| Artur Machalski | 6,055 | |
| Scribner, Douglas | 19,412,751 | |
| Fish, Ryan | 100,000 | |
| CARLSON, DAVID | 5,233,342 | |
| DUSTIN, CHIELI | 338,981 | |
| Dominic Baker | 68,864 | |
| Timothy James Banks | 53,596 | |
| Daniel Spisso Gonzalez | 2,536,096 | |
| Dominic Baker | 68,864 | |
| Bjorkman, Michael | 553,337 | |
| **Total** | **$192,521,332** | **$3,378,094** |

*Based on PBC Claims Register 24-23041 as of 12/17/24*

**F. Pending Litigation**

Celsius filed two adversary proceedings against the Debtor for preferential transfers. *See Meghji v. Power Block Coin, LLC*, Case No. 24-02093 (Bankr. D. Utah) and *Celsius Network LLC, et al. v. Power Block Coin, LLC*, Case No. 24-02094 (Bankr. D. Utah) (the "Celsius Adversary Proceedings"). These adversary proceedings have been stayed for the time being.

The Debtor also has a pending lawsuit against creditor Mason Song in the United States District Court for the District of Utah (Case 2:23-cv-00175-TC-JCB) (the "Song Lawsuit"). The Debtor alleges that Mr. Song owes the Debtor money for failing to repay a loan on its maturity date, while Mr. Song contends that the Debtor violated its duty to him by failing to return his

Bitcoin and by failing to simply offset the outstanding balance of his loan against the Bitcoin held by the Debtor for Mr. Song. This litigation was stayed on the Petition Date.

Additionally, there is an ongoing litigation against the Debtor and Aaron Tilton being litigated in U.S. District Court for the Western District of Pennsylvania, stylized as *Jason Brown, et al., v. Power Block Coin, LLC d/b/a Smartfi and Aaron Tilton,* Case No. 2:23-CV-00554-WSH-CBB. While this litigation has been stayed as to the Debtor, it is ongoing as to Mr. Tilton.

On January 2, 2025, the Debtor filed an adversary proceeding against Jason Brown and others in the U.S. Bankruptcy Court for the District of Utah, Case No. 25-02000.

## 2.2    Bankruptcy Proceedings

On June 20, 2024 (the "Petition Date"), the Debtor commenced this proceeding by filing for bankruptcy under Chapter 11 of the Bankruptcy Code, improperly electing to proceed under Subchapter V. [Doc. No. 1].

On August 1, 2024, the United States Trustee filed an objection to the Debtor's election to proceed under Subchapter V. [Doc. No. 85].

On August 1, 2024, certain creditors, including Mason Song and Celsius, filed a joinder to the United States Trustee's objection and added their own objection to the Debtor's election to proceed under Subchapter V. [Doc. No. 88].

On September 18, 2024, the Debtor filed a Plan of Reorganization under Chapter 11, Subchapter V. [Doc. No. 184, amended at Doc. No. 185].

On October 9, 2024, the Court sustained objections to the Debtor's election to proceed under Subchapter V, thus rendering this case a traditional Chapter 11 proceeding. [Doc. No. 190].

On October 24, 2024, the United States Trustee appointed the Committee to serve as the Official Committee of Unsecured Creditors for the Debtor. [Doc. No. 199].

On November 18, 2024, the Debtor filed a motion to extend the exclusivity period for it to file and solicit support for a plan. [Doc. No. 213].

On December 11, 2024, the Committee filed an objection to the Debtor's exclusivity motion. [Doc. No. 237].

On December 16, 2024, the Debtor filed its First Amended Plan of Reorganization (the "Amended Plan"). [Doc. No. 242].

After a hearing held on December 17, 2024, the Court denied the Debtor's exclusivity motion and terminated exclusivity, thus authorizing other parties to file proposed plans in this proceeding. An order to this effect was entered on December 19, 2024. [Doc. No. 245].

### 2.3     **Debtor's Conduct During this Bankruptcy Proceeding**

**A.**     <u>**Outstanding Questions About Debtor's Financials**</u>

During the Committee's investigations, it has uncovered many issues that raise concerns about the Debtor's management of this case and the Debtor's ability to finance and successfully reorganize under its proposed Amended Plan.

First, there are factual questions and concerns regarding the Debtor's loss/failure to account for millions of dollars in cryptocurrency assets. For example, as set forth in the *Objecting Creditors' (I) Joinder to the United States Trustee's Objection and (II) Objection To Debtor's Designation as a Debtor Under 11 U.S.C. § 1182 and Election to Proceed Under Subchapter V* [Doc. No. 88], as of January 2, 2023, the Debtor held at least 434 Bitcoin belonging to creditor Mason Song. Further, the lawsuits filed by Celsius allege the receipt by the Debtor of assets now worth $133,289,233.61 in the 90-day period leading up to July 13, 2022. [Doc. Nos. 50, 51]. Despite these massive inflows of cryptocurrency, the Debtor's Balance Sheet reports only $164,043.00 in "Crypto Inventory" as of March 31, 2024, and the Debtor's Statements and Schedules claim that the Debtor had only $27,860.57 of cryptocurrency as of the Petition Date. [Doc. No. 39].

The Debtor and its parent, Blue Castle, have yet to provide a fulsome or satisfying explanation for this drastic dissipation of assets.

In conjunction with this unexplained loss of assets, the Debtor has also failed to identify and preserve avoidance claims for the benefit of creditors. The assets, identified above, were presumably transferred to someone within the two years preceding the Debtor's bankruptcy filing. However, the Debtor has yet to identify or take any action to pursue any avoidance claims for the recovery of these assets and has made no indication that it intends to do so.

Finally, the Debtor is essentially "negotiating" with itself with respect to the assets it has available to fund its Amended Plan, meaning there is a complete lack of disinterestedness in the transactions. The key assets that the Debtor lists are notes owed to the Debtor by affiliates and insiders. However, SmartFi Lending, Solara Communities, LLC, and Blue Castle are all affiliates and insiders of the Debtor, and are controlled, to one extent or another, by Mr. Tilton. Mr. Tilton is an officer and director of Blue Castle Holdings, Inc., and the Debtor, SmartFi Lending, and Solara Communities LLC are all sub-entities of Blue Castle. Thus, the Debtor is negotiating with itself on both sides of these outstanding loans and notes, which raises significant questions of the Debtor's objectivity and disinterestedness.

The Debtor's notes and loans that it has with its insiders and affiliates are also not market rate loans. They are on terms that are not market and not protective of the Debtor's rights and raise concerns about possible fraudulent transfer claims. For example, in the Debtor's Amended Plan, the Debtor lists the face value of its three biggest notes receivable as approximately $21 million; however, the Debtor lists the liquidation value of these same three notes as only approximately $2.5 million. *See* Debtor's Amended Plan, [Doc. No. 242] at 22. The Debtor's Amended Plan also

states that the Debtor made these loans "at favorable interest rates to the Debtor's affiliates." *Id.* This large discrepancy between face and liquidation value, as well as the lower interest rates, raise serious concerns about whether the value the Debtor is receiving in return from these notes and loans is reasonable.

**B.      The Solara Note and Related Real Property**

The Debtor has also not been forthright about its primary known asset—namely, a loan made to its affiliate Solara to lend to a purchaser of a piece of real property in Southern Utah (the "Real Property").

The Debtor loaned a significant amount of money (the "Solara Note") to Solara Communities, LLC ("Solara"), which money was then used to purchase and develop the Real Property. *See* [Doc. No. 185] at 11. Despite being used to purchase and develop the Real Property, the Debtor's loan to its affiliate Solara is unsecured. As stated above, Solara is an affiliate of the Debtor and is controlled by Mr. Tilton.

The Debtor's affiliate and owner of the Real Property, Solara, recently authorized a $2,000,000 deed of trust on the Real Property on November 19, 2024, for the benefit of Silverback Capital Partners, LLC. The Debtor was clearly aware of this deed of trust, as Mr. Tilton executed the deed of trust on behalf of Blue Castle Holdings, Inc. This very recent encumbrance shows that the Debtor has not taken preemptive steps to protect the Debtor's interest in the Real Property, and by extension, the interests of creditors, as the Debtor has never secured its interest in the Real Property or in the Solara Note. Further, the Debtor did not give notice of this deed of trust to the Committee, and the Committee again discovered this information on its own by doing a title search on the Real Property.

In sum, the Debtor's various actions (or inactions) raise significant concerns about allowing the Debtor to control its reorganization process. Thus, the Committee's Plan proposes a liquidation process conducted by a disinterested Liquidating Trustee, which the Committee believes will be in the best interest of creditors.

### 2.4      Summary of Committee's Plan

In order to facilitate an orderly and equitable resolution for all creditors, the Debtor's assets and operations would be placed into a Liquidating Trust. A disinterested, qualified trustee will be engaged, selected in accordance with the Plan, and will serve in a fiduciary capacity to protect the interests of all creditors while maximizing recoveries.

The Liquidating Trust will include an initial board which shall be comprised of 3-7 members appointed in accordance with the terms of this Plan. The Liquidating Trustee shall be required to consult with and obtain the approval of this Liquidating Trust Advisory Board for all major decisions, including any litigation, settlements, asset sales, and any other actions outside the ordinary course of business. Terms of the Liquidating Trust (including governance protocols and

decision-making authority) will be determined, in consultation with the trustee, to ensure appropriate oversight by the Liquidating Trust Advisory Board.

The Liquidating Trustee will have the right to operate the Debtor's business and to pursue all causes of action held by the Debtor, including all claims available under Ch. 5 of the Bankruptcy Code, all analogous state law claims, avoidance claims, claims against insiders (actual fraud, gross negligence, willful misconduct, violation of fiduciary duties, etc.), and claims for substantive consolidation. Additionally, the Liquidating Trustee may settle any and all claims held by the Debtor against third parties, including Insiders. While the Committee does not yet have the documents necessary to enable it to propose any such settlements, the Liquidating Trustee will be authorized to investigate and pursue such settlements, to the extent that they are in the best interests of creditors.

The Liquidating Trustee will have the power to object to any claims and litigate/settle any claim disputes to determine the final allowable value of a claim.

All Administrative Expense Claims and Priority Claims will be Paid In Full. All Holders of General Unsecured Claims and Subordinated Claims will receive their pro rata distributions from the Liquidating Trust when such proceeds become available, after all costs of administration of the Liquidating Trust, including Liquidating Trust Expenses, are paid until no further proceeds are available. The existing Equity Interests of the Debtor shall be cancelled.

The Liquidating Trustee will be vested with all Retained Assets and have full authority to liquidate or operate the business of the Debtor, thus succeeding to all rights, claims, and interests of the Debtor. The Liquidating Trustee shall have no obligation to pay any expenses of the Debtor incurred after the Effective Date and no such expenses shall be paid by the Retained Assets, including post-Effective Date expenses of the Debtor's counsel and professionals.

The Liquidating Trustee will have discretion to retain Committee's professionals and any professional retained by a member of the Committee. After the Effective Date, the Liquidating Trustee will also be authorized to hire and employ other outside professionals and experts to assist in the administration of the Liquidating Trust without requiring the approval of the Bankruptcy Court. The Liquidating Trustee shall pay all such professionals pursuant to the terms set forth in the applicable professional's engagement letter, which shall be payable from the Retained Assets, without requiring the approval of the Bankruptcy Court.

The Bankruptcy Court will retain authority over any causes of action or disputes associated with the Plan and the efforts of the Liquidating Trustee.

The Liquidating Trustee will set aside additional money in a "Disputed Claims Reserve" for those claims that are currently being disputed, above and beyond the known and approved claims. If these claims are allowed, the reserve money will be paid out to those claimants. If the claims are not allowed, the reserve money will be paid out pro rata to the general unsecured creditors. Procedures will be put in place to allow for partial payments of claims.

The Committee has continued to negotiate with the Debtor and the Debtor Affiliates. During the pendency of this proposed Plan, the Committee will continue to have ongoing discussions with the Debtor and the Debtor Affiliates regarding the Solara Note and other estate assets to see if a settlement can be reached as to these assets that the Committee believes is in the best interest of creditors.  Accordingly, the Committee reserves the right to amend this Plan in accordance with 11 U.S.C. § 1127 in the event a settlement the Committee supports can be reached.

**The Plan provides for releases and exculpations for the Committee and its professionals. The Plan also enjoins any further claims or causes of action by any parties against the Retained Assets after the Effective Date, pursuant to the terms of this Plan.**

The Plan does not, however, provide any releases for the Debtor or the Debtor's officers, directors, and affiliates.

The initial funding of the Liquidating Trust will be determined after further investigation into the Debtor's financial situation. However, one source of funding is that the remaining amount on the Blue Castle Note will be turned over to the Liquidating Trust.

### 2.5     Liquidation Analysis

The Committee has repeatedly asked the Debtor and the Debtor's affiliates for business plans, financial records, and other documentation to help the Committee's financial advisors calculate a Liquidation Analysis of the Plan versus a Chapter 7 liquidation. However, due to a combination of (1) the Debtor's failure to provide sufficient records, (2) the incomplete nature of the Debtor's financial and business records, and (3) the failure of the Debtor's affiliates to provide sufficient records, the Committee's financial advisors cannot create or calculate a full liquidation analysis at this time. However, because this is a liquidating plan that does not require the payment of a Chapter 7 Trustee's fees, the Committee has a good faith belief that this Plan will provide at least as much recovery on General Unsecured Claims as a Chapter 7 liquidation.

### ARTICLE 3
### TREATMENT OF DEBTOR'S ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### 3.1     Unclassified Claims

Consistent with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified in this Plan.

### 3.2     Administrative Expense Claims

Each Holder of an Allowed Administrative Expense Claim under section 503 of the Bankruptcy Code will be Paid In Full in cash by the Liquidating Trustee on the later of (a) the Effective Date or (b) the date that such Administrative Expense Claim becomes an Allowed

Administrative Expense Claim or upon such other terms as may be agreed upon by the Holder of the Administrative Expense Claim and the Liquidating Trustee.

Holders of Administrative Expense Claims that are required to File and serve a request for payment of such Administrative Expense Claims that do not File and serve such a request by the Administrative Expense Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor, the Liquidating Trust, and each of the foregoing party's property, and such Administrative Expense Claims shall be deemed terminated as of the Effective Date without the need for any objection from the Debtor or the Liquidating Trustee, as applicable, or any notice, action, order or approval of the Bankruptcy Court or any other Entity.

3.3     **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim will be Paid In Full in cash by the Liquidating Trustee on the Effective Date.

3.4     **U.S. Trustee Fees**

All U.S. Trustee Fees will accrue and be timely Paid In Full without prior approval by the Bankruptcy Court pursuant to 28 U.S.C. § 1930 until the case is closed by a final decree, dismissed, or converted to another chapter of the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date or promptly when as billed, whichever is sooner.  The U.S. Trustee does not need to file a Proof of Claim. The Debtor will be charged and will pay all U.S. Trustee Fees.

## ARTICLE 4
## CLASSIFICATION OF DEBTOR'S CLAIMS AND EQUITY INTERESTS

4.1     **Class 1. Secured Claims**

Class 1 consists of all Allowed Secured Claims, including those Claims that have a right to setoff under Section 553 of the Bankruptcy Code.

4.2     **Class 2. Priority Claims**

Class 2 consists of all Allowed Priority Claims.

4.3     **Class 3. General Unsecured Claims**

Class 3 consists of all General Unsecured Claims and Claims arising from agreements that were (a) Secured prior to the Petition Date but not properly perfected, or (b) unperfected as of the Petition Date.

4.4      **Class 4. Subordinated Claims**

Class 4 consists of all Subordinated Claims.

4.5      **Class 5. Equity Interests**

Class 5 consists of all Equity Interests.

**ARTICLE 5**
**TREATMENT OF DEBTOR'S CLAIMS AND EQUITY INTERESTS**

**A.  Treatment of Classified Claims and Equity Interests**

Claims and Equity Interests will be treated as follows under this Plan:

5.1      **Class 1. Secured Claims**

Except to the extent that a holder of an Allowed Secured Claim agrees to less favorable treatment in exchange for full and final satisfaction, settlement, and release of each Allowed Secured Claim, each holder of an Allowed Secured Claim shall at the option of the Liquidating Trustee: (a) be Paid In Full, including the payment of any interest required to be paid under Section 506(b) of the Bankruptcy Code, including the right to setoff such claim under Section 553 of the Bankruptcy Code; (b) receive the collateral securing its Allowed Secured Claim; or (c) receive any other treatment that would render such Claim Unimpaired.

      **(a)      Impairment**

Class 1 is Unimpaired.

      **(b)      Voting**

Because Class 1 is Unimpaired, the Holders of Class 1 Secured Claims will not be entitled to vote on the Plan. Class 1 will be deemed to accept the Plan.

5.2      **Class 2. Priority Claims**

Holders of Priority Claims will receive, in full satisfaction of their Allowed Priority Claims, Cash from the Liquidating Trustee on the later of (a) 20 days after the Effective Date or (b) the date that such Priority Claim becomes an Allowed Priority Claim.

      **(a)      Impairment**

Class 2 is Unimpaired.

### (b)    Voting

Because Class 2 is Unimpaired, the Holders of Class 2 Priority Claims will not be entitled to vote on the Plan.  Class 2 will be deemed to accept the Plan.

### 5.3    **Class 3**. General Unsecured Claims

Holders of Allowed General Unsecured Claims will receive their Pro Rata distributions from the Liquidating Trust when such proceeds become available, after all costs of administration of the Liquidating Trust and Classes 1 and 2 are Paid In Full, until no further proceeds are available.

### (a)    Impairment

Class 3 is impaired.

### (b)    Voting

Because Class 3 is impaired, the Holders of Class 3 Claims will be entitled to vote on the Plan, and the Committee will solicit votes from Class 3.

### 5.4    **Class 4**. Subordinated Claims

Holders of Allowed Subordinated Claims will receive their Pro Rata distributions from the Liquidating Trust when such proceeds become available, after all costs of administration of the Liquidating Trust and all Allowed General Unsecured Claims are Paid In Full until no further proceeds are available.

### (a)    Impairment

Class 4 is impaired.

### (b)    Voting

Because Class 4 is impaired, the Holders of Class 4 Claims will be entitled to vote on the Plan, and the Committee will solicit votes from Class 4. However, for the avoidance of doubt, any vote cast by an Insider will not be included, pursuant to Section 1129(a)(10) of the Bankruptcy Code.

### 5.5    **Class 5**. Equity Interests

On the Effective Date, the existing Equity Interest will be cancelled.

### (a)    Impairment

Class 5 is impaired and conclusively deemed to reject.

### (b)     Voting

Because Class 5 is conclusively deemed to reject, the Committee will not solicit votes from the Class 5 Equity Interest Holders.

### B.  Special Provisions Governing Unimpaired Classes

Except as otherwise provided in this Plan, nothing in this Plan shall affect the Debtor's or the Liquidating Trust's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Claims.

### C.  Elimination of Vacant Classes

Pursuant to section 1129(a)(8) of the Bankruptcy Code, any Class of Claims or Equity Interests that does not have (a) a Holder of an Allowed Claim or Allowed Equity Interest or (b) a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan.

### D.  Acceptance or Rejection of the Plan

1.     **Presumed Acceptance**. Claims in Classes 1 and 2 are Unimpaired under the Plan. The Holders of such Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2.     **Voting Classe**s. Claims in Classes 3 and 4 are impaired under this Plan and the Holders of such Claims are entitled to vote to accept or reject this Plan. If Holders of Claims in a particular impaired Class of Claims are given the opportunity to vote to accept or reject the Plan, but no Holders of Claims in such impaired Class of Claims vote to accept or reject the Plan, then such Class of Claims shall be deemed to have accepted the Plan.

3.     **Deemed Rejection of Pla**n. Class 5 is impaired, and Holders of such Equity Interests shall receive no Distributions. The Holders in such Classes are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

### E.  Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Equity Interests and the respective Distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 510(a) or 510(b) of the Bankruptcy Code, or otherwise.

27

**F.  Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE 6**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,**
**AND DISPUTED CLAIMS**

6.1     **Preservation of Rights**

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date.  To the extent that any Claims are Allowed prior to the Effective Date under a final non-appealable order of the Bankruptcy Court, via Bankruptcy Rule 9019 or otherwise, such ruling or order shall be binding on all persons.  The Liquidating Trustee may litigate to judgment, settle, or withdraw objections to Disputed Claims.

6.2     **Liquidating Trustee's Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee, with the approval and oversight of the Liquidating Trust Advisory Board, shall have the sole authority to: (a) File, withdraw, or litigate to judgment objections to Claims; (b) settle or compromise any Disputed Claim subject to Bankruptcy Court approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure; provided, however, that for administrative convenience, the Liquidating Trustee, with the approval and oversight of the Liquidating Trust Advisory Board, will have authority to settle any Disputed Claim without approval of the Bankruptcy Court, or any Debtor Cause of Action resulting in a recovery of any amount; and (c) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice or any action, order, or approval by the Bankruptcy Court.

6.3     **Claims Estimation**

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any Claim under section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously objected to such Claim or whether the Bankruptcy Court ruled on any such objection.

The Bankruptcy Court shall retain jurisdiction to estimate any Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  In the event that the Bankruptcy Court estimates any such Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of

distributions), and the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### 6.4    Unperfected Security Interests

Any security interests that were unperfected, inadequately perfected, or improperly perfected as of the Petition Date are, in accordance with section 506(a) of the Bankruptcy Code, properly treated hereunder as General Unsecured Claims against the Debtor.  So long as this Plan remains in effect, the unperfected Creditors are hereby enjoined from taking any action to effect perfection of their security interests for any debt, including interest or other charges arising therefrom, and they will be treated and accept in full satisfaction for their Allowed Claims the treatment prescribed for Holders of Class 3 General Unsecured Claims, as applicable, hereunder.

### 6.5    Disputed Claims Reserve

On the Effective Date, the Liquidating Trustee, with the approval of the Liquidating Trust Advisory Board, shall establish a Disputed Claims Reserve with respect to Disputed Claims. Cash and property to be distributed on account of Disputed Claims shall be held by the Liquidating Trustee until such Claims are Allowed or disallowed by Final Order.  At the option of the Liquidating Trustee, Cash which is held in Disputed Claim Reserve may be deposited into one or more permitted investments approved by the Liquidating Trust Advisory Board pursuant to the terms of the Liquidating Trust Agreement. If a Disputed Claim shall be deemed Allowed, the holder shall receive a Pro Rata distribution from the Disputed Claims Reserve, based upon the Allowed amount of the Claim, in accordance with the procedures and priority set forth in Article 5 above. Any Cash or Liquidating Trust Assets remaining in the Disputed Claims Reserve after the resolution of all disputes by Final Order shall be distributed in accordance with the Plan.

### 6.6    Amendments to Claims/Late Claims

After the Confirmation Date, and except to the extent that the Claims Bar Date falls on a later date than the Confirmation Date, a Claim may not be Filed or amended without the authorization of the Bankruptcy Court. With such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim with the power solely to decrease, and not to increase, the face amount thereof.  Except as otherwise provided in this Section, any new or amended Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Liquidating Trustee, and the Liquidating Trustee will make no distribution on account thereof.

### 6.7    Time to File Objections to Claims

Any objections to the Allowance of a Claim shall be in writing and must be Filed on or before the Claims Objection Deadline, subject to the extension of the deadline for objecting to such Claims by order of the Bankruptcy Court.  The Liquidating Trustee will have sole authority to prosecute any objection until it is resolved by a final non-appealable order of the Bankruptcy

Court unless the Liquidating Trustee (a) compromises and settles such objection to a Claim or (b) withdraws such objection.

### 6.8   No Distribution Pending Allowance

No distribution will be made on account of any Disputed Claim unless and until such Claim is Allowed.

### 6.9   Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes Allowed, Distributions, if any, shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim becomes a Final Order, the Disbursing Agent or the Liquidating Trustee shall provide to the Holder of such Claim the Distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE 7
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.1   Assumed Executory Contracts and Unexpired Leases

Except as otherwise set forth herein, as of the Effective Date, all executory contracts of the Debtor shall be deemed rejected unless such contract (a) was previously assumed or rejected by the Debtor in this Chapter 11 case; (b) previously expired or terminated pursuant to its terms or applicable law; or (c) is the subject of a motion to assume or reject filed under section 365 of the Bankruptcy Code pending as of the Effective Date.

Assumption of any executory contract or unexpired lease pursuant to this Plan or otherwise shall, upon satisfaction of the applicable requirements of Section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption. Any Claim listed in the Schedules and any Proofs of Claim filed with respect to any executory contract or unexpired lease that has been assumed prior to the Effective Date shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other entity.

### 7.2   Rejected Executory Contracts and Unexpired Leases

The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases not expressly assumed in the Plan upon entry of the Confirmation Order. A Proof

of Claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than ten (10) days after the entry of the Confirmation Order.

## ARTICLE 8
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 8.1   Plan Objective

The Plan's objective is to transfer all Retained Assets, including the Retained Causes of Action, to the Liquidating Trust. The Liquidating Trustee will administer the Liquidating Trust and liquidate such Retained Assets, including the resolution of any Retained Causes of Action. The Plan divides Holders of Claims and Equity Interests into unclassified Claims and Classes of Claims and Equity Interests based on the Holders' legal rights and interests, and the Liquidating Trustee will distribute the proceeds of the Retained Assets to Holders of Allowed Claims in satisfaction of the Debtor's obligations under this Plan. Holders of Equity Interests will not receive or retain anything on account of their Equity Interests.

### 8.2   Funding of the Plan Prior to the Effective Date

To the extent that the Committee determines that funding for the Plan is necessary prior to the Effective Date, the Committee may vote to allow any party to provide such funding, including any member of the Committee. The Committee is authorized to negotiate the terms on which such funding can be provided, which may include the rights set forth in Section 1.47 above.

### 8.3   Settlement of Retained Causes of Action.

The Liquidating Trustee may investigate, pursue, and settle any Retained Causes of Action, including any such actions against third parties or Insiders of the Debtor, with the approval of the Liquidating Trust Advisory Board. Any settlement under $1,000,000 may be pursued without the approval of the Bankruptcy Court.  Proposed settlements exceeding $1,000,000 will be subject to approval by the Bankruptcy Court after notice and a hearing.

### 8.4   Conditions to Plan Effectiveness

As a condition to the effectiveness of this Plan, on or prior to the Effective Date, each of the following must occur:

1.     all actions, documents, and agreements necessary to implement the Plan shall be effected or executed;

2.     the Debtor will have received all authorizations, consents, rulings, opinions, or other documents that are determined by the Debtor to be necessary to implement the Plan;

31

3.      the Liquidating Trust Agreement shall be final and approved, the Liquidating Trustee shall be appointed, and the Liquidating Trust shall be funded in accordance with the Plan; and

4.      the Debtor shall have made all Distributions required to be made pursuant to the Plan on or before the Effective Date.

### 8.5    Waiver of Conditions

The Committee may, in its reasonable discretion, waive any of the conditions set forth in Article 8.4 without notice and a hearing. If the Debtor or the Committee fail to assert the non-satisfaction of any such conditions, such failure will not be deemed a waiver of any other rights thereunder.

### 8.6    Effect of Failure of Conditions

If the consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by the Debtor, any Holders of Claims or Equity Interests, or any other Entity; (b) prejudice in any manner the rights of the Debtor, any Holders of Claims or Equity Interests, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders of Claims or Equity Interests, or any other Entity in any respect.

### 8.7    Corporate Action

Upon the Effective Date, all transactions and applicable matters provided for under the Plan will be deemed to be authorized and approved by the Debtor without any further action by the Debtor, the Debtor's shareholders, or the Debtor's board of directors.

### 8.8    Vesting of Assets and Rights

Unless otherwise expressly provided under this Plan, on the Effective Date, the Retained Assets will vest in the Liquidating Trust free and clear of all claims, liens, encumbrances, charges, and other interests. On and after the Effective Date, the transfer of the Retained Assets from the Estate to the Liquidating Trust will be deemed final and irrevocable and Distributions may be made from the Liquidating Trust. In connection with the foregoing: (a) on the Effective Date, the appointment of the Liquidating Trustee shall become effective and the Liquidating Trustee shall begin to administer the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement and the Plan and may use, acquire and dispose of Liquidating Trust Assets free of any restrictions imposed under the Bankruptcy Code; (b) the Confirmation Order will provide the Liquidating Trustee with express authority to convey, transfer and assign any and all of the Liquidating Trust Assets and to take all actions necessary to effectuate the same and to prosecute any and all Retained Causes of Action; and (c) as of the Effective Date, the Liquidating Trust Assets will be free and clear of all liens, claims, and interests of Holders of Claims and Equity Interests, except as

otherwise provided in the Plan. Additionally, any and all insurance rights of the Debtor shall be preserved and vested in the Liquidating Trust, including the right to purchase any tail policy coverage. Any rights of the Debtor to access information (including emails, documents or other information in the possession of a non-Debtor) shall also be preserved and shall be vested in the Liquidating Trust. Finally, any and all privileges and attorney-client protections held by the Debtor are transferred to the Liquidating Trust and Liquidating Trustee.

8.9    **Dissolution of the Debtor; Termination of Current Officers, Directors, Employees and Counsel**

From and after the Effective Date, the Debtor shall be dissolved and the Liquidating Trustee shall be authorized to take all action necessary to dissolve the Debtor or any of its wholly owned subsidiaries. On the Effective Date, the employment, retention, appointment, and authority of all officers, directors, employees, and professionals of the Debtor and the Committee shall be deemed to terminate.

8.10    **Liquidating Trust**

(a)    **Effectiveness of the Liquidating Trust**

On the Effective Date, the Liquidating Trust Agreement will become effective, and, if not previously signed, the Debtor and the Liquidating Trustee will execute the Liquidating Trust Agreement.

(b)    **Beneficiaries**

In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidating Trust will be the Holders of all Allowed Claims against the Debtor. The Holders of Allowed Claims will receive an allocation of the respective Liquidating Trust Interests as provided for in the Plan and the Liquidating Trust Agreement. The Holders of Liquidating Trust Interests will receive Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement. The Beneficiaries shall be treated as the grantors and owners of such Beneficiaries' respective portion of the Liquidating Trust.

(c)    **Implementation of the Liquidating Trust**

On the Effective Date, the Debtor, on behalf of the Estate, and the Liquidating Trustee shall execute the Liquidating Trust Agreement, which shall be substantially in the form included in the Plan Supplement, and take all such necessary actions to transfer the Retained Assets to the Liquidating Trust. From and after the Effective Date, the Liquidating Trustee will be authorized to, and shall, implement the Liquidating Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidating Trustee, including, without limitation, directing Distributions to Holders of Allowed Claims, objecting to Claims, prosecuting or otherwise resolving Retained Causes of Action, and causing Distributions from the Liquidating Trust to be made to the Beneficiaries.

**(d)      Transfer of Retained Assets**

As discussed in Article 8.8, unless otherwise expressly provided under this Plan, on the Effective Date, the Retained Assets will vest in the Liquidating Trust free and clear of all claims, liens, encumbrances, charges, and other interests. To the extent required to implement the transfer of the Retained Assets to the Liquidating Trust as provided for herein, all Entities and Persons shall cooperate with the Debtor, the Estate, and the Liquidating Trustee to assist the Debtor, the Estate, and the Liquidating Trustee to implement the transfers.

**(e)      Representative of the Estate**

The Liquidating Trustee will be appointed as the representative of the Estate and vested with the authority and power (subject to the Liquidating Trust Agreement) to, *inter alia*, (a) object to Claims against, and Equity Interests in, the Debtor; (b) administer, investigate, prosecute, settle, and abandon all Retained Causes of Action assigned to the Liquidating Trust; (c) make Distributions provided for in the Plan, including, but not limited to, on account of Allowed Claims; and (d) take such action as required to administer, wind down, and close the Chapter 11 Case. As the representative of the Estate, the Liquidating Trustee will succeed to all of the rights and powers of the Debtor, the Estate, and the Committee with respect to all Retained Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted for the Debtor, the Estate, and the Committee, as applicable, as the party in interest in all litigation pending on the Effective Date concerning the Retained Causes of Action.

**(f)      No Liability of the Liquidating Trustee**

To the maximum extent permitted by law, the Liquidating Trustee, its employees, officers, directors, agents, members or representatives, or professionals employed or retained by the Liquidating Trustee (collectively, the "Liquidating Trustee's Agents") will not have or incur liability to any Person or Entity for an act taken, or omission made, in good faith in connection with or related to Distributions made under the Plan or the Liquidating Trust Agreement, the administration of the Liquidating Trust, and the implementation of the Plan. The Liquidating Trustee and the Liquidating Trustee's Agents will in all respects be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan and the Liquidating Trust Agreement. Entry of the Confirmation Order constitutes a judicial determination that the exculpation provisions contained in Article 10 are necessary to, *inter alia*, facilitate confirmation and feasibility and to minimize potential Claims arising after the Effective Date for indemnity, reimbursement, or contribution from the Estate, the Liquidating Trust, or each party's respective property. Confirmation will also constitute a res judicata determination of, among other things, the matters included in the exculpation provisions of the Plan. Notwithstanding the foregoing, nothing herein or in Article 10 will alter any provision in the Liquidating Trust Agreement that provides for the potential liability of the Liquidating Trustee to any Person or Entity.

### (g)    Dissolution of the Committee

Until the Effective Date, the Committee shall continue in existence. As of the Effective Date, the Committee shall terminate and disband and the members of the Committee and the Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from their service as Committee members.

### (h)    Funding of the Post-Effective Date Expenses

All expenses related to implementation of the Plan incurred from and after the Effective Date will be expenses of the Liquidating Trust, and the Liquidating Trustee will disburse funds from the Liquidating Trust Assets for purposes of paying the Liquidating Trust Expenses of the Liquidating Trust without the need for any further order of the Bankruptcy Court. At a minimum, the initial funding of the Liquidating Trust will come from the outstanding balance on the Blue Castle Note, which shall be turned over to the Liquidating Trust on the Effective Date.

For the avoidance of doubt, the Liquidating Trustee shall have no obligation to pay any expenses of the Debtor incurred after the Effective Date and no such expenses shall be paid by the Retained Assets, including post-Effective Date expenses of the Debtor's counsel and professionals.

### (i)    Provisions Relating to the Federal Income Tax Compliance

A transfer to the Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to creditors to the extent creditors are Beneficiaries of the Liquidating Trust. For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274. Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the Liquidating Trust. The Beneficiaries of the Liquidating Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the Liquidating Trust.

### (j)    Successor Trustee

In the event that the Liquidating Trustee resigns, becomes incapacitated, is disqualified, dies, or becomes otherwise unable or unwilling to continue to serve in such capacity, then a successor shall be appointed according to the terms of the Liquidating Trust.  In the event no successor is available under the terms of the Liquidating Trust, the Bankruptcy Court shall appoint a successor Liquidating Trustee either *sua sponte* or upon motion of any interested party and notice to all creditors on the Debtor's mailing matrix.

### (k)    Liquidating Trust Advisory Board

On or after the Effective Date, the Liquidating Trust Advisory Board will be appointed in accordance with the terms of this Plan and the Liquidating Trust Agreement.  The rights, responsibilities, and duties of the Liquidating Trust Advisory Board are set forth in the Liquidating

Trust Agreement.    The Liquidating Trust Advisory Board shall monitor and oversee the Liquidating Trustee and the implementation of the Plan, subject to the terms of the Liquidating Trust Agreement.

### (l)    Termination of Liquidating Trust

The Liquidating Trust shall be discharged and the Liquidating Trust shall be terminated as soon as (1) all of the Liquidating Trust Assets have been liquidated or abandoned, (2) all duties and obligations of the Liquidating Trustee have been fulfilled in accordance with the Liquidating Trust Agreement, (3) all distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (4) payment of all fees, expenses, and taxes of the Liquidating Trust have been made.

### (m)    Destruction of Books and Records

Upon termination of the Liquidating Trust, the Liquidating Trustee may, without further order of the Bankruptcy Court, but subject to any applicable non-bankruptcy law relating to the retention of books and records, destroy any books and records that the Liquidating Trustee determines are no longer necessary for the implementation of the Plan.

### (n)    Filing Final Tax Returns

After the Effective Date, the Liquidating Trustee will prepare and timely file final tax returns for the Debtor.  The Liquidating Trustee may employ professionals without further orders of the Bankruptcy Court to assist him.

### 8.11    Retention and Re-vesting of Retained Causes of Action

The Liquidating Trustee will retain (or is hereby given) standing and authority to prosecute all Retained Causes of Action.  The Liquidating Trustee hereby expressly reserves and will retain or be re-vested with all Retained Causes of Action, and, therefore, in each case, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppels (judicial, equitable or otherwise), or laches shall apply to such Retained Causes of Action based on the Plan or the Confirmation Order upon or after the entry of the Confirmation Order or Effective Date, except where such Retained Causes of Action have been expressly released in the Plan or any final non-appealable order from the Bankruptcy Court.  In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee, with the approval of the Liquidating Trust Advisory Board, may enforce all rights to commence and pursue any Retained Causes of Action, and the Debtor's rights to commence, prosecute, or settle any such Retained Causes of Action shall be preserved, notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Retained Cause of Action against him, her, or it as any indication that the Liquidating Trustee on behalf of the Debtor will not pursue any available Retained Causes of Action against such Person.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtor may hold against any Person

36

shall vest in the Liquidating Trustee. The Liquidating Trustee shall, with the approval of the Liquidating Trust Advisory Board, bring all such Retained Causes of Action in the Bankruptcy Court, and jurisdiction over all such Retained Causes of Action shall vest in the Bankruptcy Court. The Liquidating Trustee will, with the approval of the Liquidating Trust Advisory Board, have and is hereby given authority to settle all Retained Causes of Action without prior approval of the Bankruptcy Court.

### 8.12   Cramdown/Non-Consensual Plan

If each impaired Class accepts the Plan, the Committee will proceed under the provisions of this Plan. If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Committee reserves the right (i) to confirm the Plan under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan to the extent necessary to obtain Confirmation.

### 8.13   Liquidation Analysis

Section 1129(a)(7) requires that each Holder of a Claim either accept the Plan, or such Holder shall receive under the Plan on account of its Claim an amount that is equal to or exceeds what such Holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Here, based on information and good faith belief, under the Plan each Holder of an Allowed General Unsecured Claim will receive at least as much as they would in a Chapter 7 liquidation. Accordingly, the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.

### 8.14   Provisions Governing Distributions

### (a)   Disbursing Agent

The Liquidating Trustee shall serve as the Disbursing Agent under the Plan or select another Entity to serve as the Disbursing Agent. Any Entity other than the Liquidating Trustee that acts as the Disbursing Agent for the Liquidating Trust will be an agent of the Liquidating Trustee and not a separate taxable Entity with respect to, among other things, the assets held, income received, or disbursements or Distributions made for the Liquidating Trustee. If ordered to by the Bankruptcy Court, the Liquidating Trustee will provide a bond in connection with the making of any Distributions pursuant to the Plan. The Disbursing Agent shall make all Distributions required under this Plan. The Disbursing Agent, if not the Liquidating Trustee, shall be authorized, after consultation with the Liquidating Trustee, to implement such procedures as it deems necessary to make Distributions pursuant to this Plan so as to efficiently and economically assure prompt and

proportionate Distributions. Procedures will be set forth in the Liquidating Trust Agreement to allow for the partial payment of Claims pursuant to settlement agreements or other mechanisms.

### (b)      Source of Distributions

The sources of all Distributions and payments under the Plan and the Liquidating Trust Agreement will be the Retained Assets, which shall include (1) Cash, which will be Cash transferred to the Liquidating Trust as of the Effective Date of the Plan and (2) proceeds from the liquidation by the Liquidating Trust of the Retained Assets (including the prosecution of the Retained Causes of Action) that were transferred to the Liquidating Trust, less Liquidating Trust Expenses.

### (c)      Distribution Dates

The Distribution Dates for the Distribution of Cash by the Liquidating Trust shall be selected by the Liquidating Trustee.

### (d)      Manner of Cash Payments

Cash Distributions made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank, or, if the Liquidating Trustee so elects in its discretion for Distributions to certain large claimants, by wire transfer from a domestic bank.

### (e)      Setoff and Recoupment

Notwithstanding anything to the contrary in the Plan, the Liquidating Trustee may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim or Debtor Cause of Action, any Claims or Retained Causes of Action that the Debtor or the Estate may have against the Entity holding the Allowed Claim or Debtor Cause of Action. The Debtor, the Estate, and the Liquidating Trust shall not waive or release any Claim or Retained Cause of Action against such Entities by failing to effect such a setoff or recoupment, by failing to assert any such matter prior to the Confirmation Date or the Effective Date, by allowing any Claim or Retained Cause of Action against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim or Debtor Cause of Action.

### (f)      No Postpetition Interest on Claims

Unless otherwise specifically provided for in a Final Order, the Plan, or the Confirmation Order, or required by applicable law, postpetition interest shall not accrue or be paid on any

prepetition Claims against the Debtor, and no Holder of a prepetition Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

**(g)    Claims Paid by Third Parties**

The Debtor or the Liquidating Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice or any action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Liquidating Trust. Subject to the last sentence of this paragraph, to the extent that a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trust on account of such Claim, such Holder shall, within two (2) weeks of receipt thereof, repay or return the Distribution to the Liquidating Trustee, to the extent that the Holder's total recovery on account of such Claim from the third-party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Liquidating Trust annualized interest at the federal judgment interest rate in effect as of the Petition Date (calculated as set forth in section 1961 of the Judicial Code) on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

**(h)    Claims Payable by Third Parties**

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice or any action, order, or approval of the Bankruptcy Court.

**(i)    No De Minimus Distribution**

Notwithstanding anything to the contrary contained in this Plan, the Liquidating Trustee shall not be required to distribute, and shall not distribute, Cash or other property to the holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $100.00. Any holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $100.00 shall be forever barred from asserting such Claim against the Estate.

**(j)    Fractional Cents**

When any payment of a fraction of a cent would otherwise be called for, the actual payment will reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of less than $0.005 and rounding up in the case of $0.005 or more); provided, however, that, in no event

39

will the Liquidating Trustee make a Distribution of less than $100.00 to any Holder of an Allowed Claim.

**(k)     No Distributions with Respect to Disputed Claims**

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim either becomes or is deemed to be an Allowed Claim for purposes of Distributions.

**(l)     Undeliverable or Unclaimed Distributions**

Distributions to Entities holding Allowed Claims will initially be made by mail as follows: (1) Distributions will be sent to the address, if any, set forth on a Filed Proof of Claim (as amended by any written notice of address change received by the Debtor prior to the Effective Date or the Liquidating Trustee no later than 10 Business Days prior to the date of any Distribution); or (2) if no such address is available, Distributions will be sent to the address (i) set forth on the Schedules or (ii) readily obtainable by a cursory review of the Debtor's other books and records. If neither (1) or (2) above provide the Liquidating Trustee with an address for the Holder of an Allowed Claim, the Distribution will be deemed to be undeliverable. If a Distribution is returned to the Liquidating Trustee as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Liquidating Trustee will make no further Distributions to the Holder of the Claim on which the Distribution is being made. Any Entity entitled to an undeliverable Distribution that does not, within 45 days after a Distribution is returned as undeliverable, provide the Liquidating Trustee with written notice (a) asserting its Claim to or Equity Interest in the undeliverable Distribution and (b) setting forth a current, deliverable address will be deemed to waive any claim to or interest in the undeliverable Distribution and will be forever barred from receiving the undeliverable Distribution or asserting any Claim against the Debtor, the Estate, the Liquidating Trust, or each of the foregoing parties' property. Any undeliverable Distributions that are not claimed hereunder will be distributed Pro Rata to other Holders of Allowed Claims in the same respective Class as the Holder of the undeliverable Distribution. Nothing herein requires the Liquidating Trustee to attempt to locate any Person or Entity holding an Allowed Claim whose Distribution is undeliverable.

**(m)     Record Date**

Unless a notice of transfer of Claim or Equity Interest has been filed with the Bankruptcy Court prior to the Record Date in accordance with Bankruptcy Rule 3001, the Disbursing Agent will rely on the Claims Register when determining Holders on the Record Date.

## ARTICLE 9
### MISCELLANEOUS AND GENERAL PROVISIONS

9.1    **Severability**

The provisions of the Plan, including, but not limited to, its injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor or the Liquidating Trustee consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

9.2    **Binding Effect**

The rights, obligations, limitations, and injunctions of, for, or against any Person named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such Person.

9.3    **Controlling Law**

Unless a different rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules) or in the subject instrument, the laws of the State of Utah govern this Plan and any agreements, documents, and instruments executed in connection with this Plan.

9.4    **Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be (or be deemed to be) an admission or waiver of any rights of the Debtor with respect to the Holders of Claims and Equity Interests unless and until the Effective Date has occurred.

9.5    **Successors and Assigns**

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator,

successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity or Person.

### 9.6      Entire Agreement

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 9.7      Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code; provided, however, that nothing herein shall prevent the Debtor or any other party in interest from arguing that substantial consummation of this Plan has occurred prior to the Effective Date.

### 9.8      Retention of Bankruptcy Court Jurisdiction

The Bankruptcy Court will retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code arising in or related to the Chapter 11 Case or this Plan, or that relates to any of the following:

(i)      consistent with Article 7, hereof, to resolve any matter related to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear and determine any Claim arising therefrom;

(ii)      to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan;

(iii)      to determine all motions, adversary proceedings, applications, and contested or litigated matters related to the Debtor's Chapter 11 Case or arising therefrom, that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidating Trustee prior to or after the Effective Date, including resolution of all Retained Causes of Action, including Avoidance Actions;

(iv)      to ensure that distributions to Holders of Allowed Claims are accomplished as provided in the Plan;

(v)      to hear and determine any timely objection to a Claim or Proof of Claim;

(vi)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(vii)   to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(viii)   to consider any modification of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(ix)   to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred by the Debtor's professionals, the U.S. Trustee, the Committee, and any other timely filed applications filed with the Bankruptcy Court for allowance of Administrative Expense Claims;

(x)   to hear and determine disputes arising in connection with (i) the Plan, or relating to it; (ii) the interpretation, implementation, or enforcement of the Plan; or (iii) the extent of any Person's obligations incurred in connection with or released under the Plan; but notwithstanding the preceding, if the Bankruptcy Court's potential resolution of any issues arising under this subsection (x) is otherwise governed by an express enforcement or dispute resolution provision in an agreement or contract that already exists by and between the Debtor and such party, then such provisions should govern;

(xi)   to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(xii)   to determine any other matter that may arise in connection with or that is related to the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection therewith, unless such agreements or documents contain express enforcement or dispute resolution provisions, in which case, such provisions should govern;

(xiii)   to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any matter relating to tax refunds, and any request by the Liquidating Trustee for an expedited determination of tax liability under section 505(b) of the Bankruptcy Code with respect to the Debtor);

(xiv)   to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(xv)   to enter a final decree closing the Chapter 11 Case.

### 9.9    Closing of the Chapter 11 Case

The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Case.

### 9.10    Conflicts and Inconsistencies

In the event of any conflict or inconsistency between and among the Plan, the Confirmation Order, the Disclosure Statement, or the Plan Supplement, the documents shall control in the following order: (a) the Confirmation Order; (b) the Plan; (c) the Plan Supplement; and (d) the Disclosure Statement.

### 9.11    Notices

All notices, requests, and demands to or upon the Debtor or the Committee shall be in writing (which may be by electronic mail), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to the following:

To the Debtor:

c/o Parson Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone:  801.532.1234
BRothschild@parsonsbehle.com

To the Committee:

c/o Greenberg Traurig, LLP
222 South Main Street, Suite 1730
Salt Lake City, UT 84101
Telephone: (801) 478-6900
Email: jarvisa@gtlaw.com

## ARTICLE 10
## EXCULPATION AND INJUNCTION PROVISIONS

10.1    **[Reserved.]**

10.2    **Exculpation**

As of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan, to the maximum extent permitted by applicable law, none of the Exculpated Parties shall have or incur liability to one another or against any Holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, related professionals or affiliates, or any of their successors or assigns, for any act or omission occurring or failing to occur after the Petition Date in connection with, relating to, or arising out of, the Chapter 11 Case, the negotiation and execution of this Plan, the Disclosure Statement, the Liquidating Trust Agreement, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, the management of the Liquidating Trust, the liquidation of the Liquidating Trust Assets, the administration of this Plan, and/or the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto, except fraud, willful misconduct, or gross negligence as determined by a Final Order.

Subject to the occurrence of the Effective Date, notwithstanding any other provision of this Plan, neither any Holder of a Claim or Equity Interest, nor other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, related professionals, agents or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any of the Exculpated Parties for any act or omission occurring or failing to occur after the Petition Date in connection with, relating to, or arising out of the Chapter 11 Case, the negotiation and execution of this Plan, the Disclosure Statement, the Liquidating Trust Agreement, the solicitation of votes for and the pursuit of confirmation of this Plan, the management of the Liquidating Trust, the liquidation of Liquidating Trust Assets, the consummation of this Plan, the administration of this Plan, and/or the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto, except fraud, willful misconduct or gross negligence as determined by a Final Order.  For the avoidance of doubt, nothing in this Article 10.2 shall limit or abrogate the obligations of the Debtor and Debtor Affiliates.

10.3    **Injunction**

AS OF THE EFFECTIVE DATE AND SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR EQUITY INTERESTS BASED UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE

RELATED TO THE DEBTOR, THE LIQUIDATING TRUST, OR THE CHAPTER 11 CASE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, OTHER THAN AS EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, REGARDLESS OF THE FILING, LACK OF FILING, ALLOWANCE, OR DISALLOWANCE OF SUCH CLAIMS OR EQUITY INTERESTS AND REGARDLESS OF WHETHER SUCH PERSON HAS VOTED TO ACCEPT THE PLAN, AND ANY SUCCESSORS, ASSIGNS OR REPRESENTATIVES OF SUCH PERSONS, SHALL BE PRECLUDED AND PERMANENTLY ENJOINED ON AND AFTER THE EFFECTIVE DATE FROM (A) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS AGAINST THE RETAINED ASSETS AND (B) THE CREATION, PERFECTION, OR ENFORCEMENT OF ANY LIEN OR ENCUMBRANCE OF ANY KIND WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS AGAINST THE RETAINED ASSETS. NOTHING IN THIS ARTICLE 10.3 SHALL BE CONSTRUED AS AN INJUNCTION WITH RESPECT TO THE LIQUIDATING TRUSTEE'S PURSUIT OF THE RETAINED CAUSES OF ACTION TRANSFERRED TO THE LIQUIDATING TRUST ON THE EFFECTIVE DATE.

AS OF THE EFFECTIVE DATE AND SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD, AGAINST ANY EXCULPATED PARTY, A CLAIM, OBLIGATION, SUIT, JUDGMENT, DEMAND, DAMAGES, DEBT, RIGHT, CAUSE OF ACTION, OR LIABILITY THAT IS EXCULPATED PURSUANT TO THE PLAN, ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGES, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, OR LIABILITY: (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; OR (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO ANY EXCULPATED PARTY.

## ARTICLE 11
## MODIFICATION AND AMENDMENTS OF PLAN

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Committee reserves the right to alter, amend, or modify the Plan before or after its substantial consummation.  Prior to the Effective Date, the Committee may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court.  Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as amended, modified, or supplemented, if the proposed amendment, modification, or supplement does not materially and adversely change the treatment of the Claim

of such Holder; provided, however, that any Holders of Claims who were deemed to accept the Plan because such Claims were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment, modification, or supplement, the treatment of such Unimpaired Claims continue to be Unimpaired.

## ARTICLE 12
## CONFIRMATION OF PLAN

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one (1) impaired Class of Claims. The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests. The Debtor reserves the right to modify the Plan in accordance with Article 11 to the extent that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Equity Interests to render such Class of Claims or Equity Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

Respectfully submitted,

Dated: January 30, 2025

_____

**The Official Committee of Unsecured Creditors**

/s/ *David Carlson*

By:   David Carlson
Title:  Chairman
      (*signed with permission*)

Dated: January 30, 2025 _____

**GREENBERG TRAURIG, LLP**

/s/ *Annette W. Jarvis*

By:   Annette W. Jarvis

*Attorneys for the Committee*

**CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

   I hereby certify that on this 30th day of January 2025, I electronically filed the foregoing **COMBINED CHAPTER 11 PLAN AND DISCLOSURE STATEMENT PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system.  I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system.

- James W. Anderson    jwa@clydesnow.com, gmortensen@clydesnow.com
- Laura Elizabeth Baccash    laura.baccash@whitecase.com, mco@whitecase.com
- Mark D. Bloom    mark.bloom@bakermckenzie.com
- Simeon J Brown    sbrown@parsonsbehle.com
- Matthew James Burne    matthew.burne@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- Deborah Rae Chandler    dchandler@aklawfirm.com
- Carson Heninger    heningerc@gtlaw.com, carson-heninger-5642@ecf.pacerpro.com,Candy.Long@gtlaw.com
- Samuel P. Hershey    sam.hershey@whitecase.com, mco@whitecase.com
- Annette W. Jarvis    jarvisa@gtlaw.com, longca@gtlaw.com
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- Peter J. Kuhn    Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- Joli A. Lofstedt    joli@jaltrustee.com, ecf.alert+LofstedtUTB@titlexi.com,brenda@jaltrustee.com
- Artur Machalski    artur.machalski@gmail.com
- Elliott D. McGill    emcgill@parsonsbehle.com
- Darren B. Neilson    dneilson@parsonsbehle.com
- Christopher L. Perkins    cperkins@eckertseamans.com
- Gregory F. Pesce    gregory.pesce@whitecase.com, mco@whitecase.com
- Walter A Romney    war@clydesnow.com, gmortensen@clydesnow.com
- Brian M. Rothschild    brothschild@parsonsbehle.com, ecf@parsonsbehle.com;docket@parsonsbehle.com
- Jeffrey Weston Shields    jshields@rqn.com, 5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com
- Abigail Jennifer Stone    abigail.stone@gtlaw.com
- Landon S. Troester    lst@clydesnow.com, rcondos@clydesnow.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Melinda Willden tr    melinda.willden@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

   **By U.S. Mail** – In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed R. Civ. P. 5(b):

Nikita Ash
1221 Avenue of the Americas
New York, NY 10020-1095

CFO Solutions, LLC dba Amplo
13601 W McMillan Rd
#102 PMB 320
Boise, ID 83713

Alexander S Chang
201 S. Main St Ste 1800
Salt Lake City, UT 84111

Kyle Ferrier
300 South Biscayne Blvd.
Suite 4900
Miami, FL 33131

Nicholas Kennedy
1900 N. Pearl Street
Suite 1500
Dallas, TX 75201

*/ s / Candy Long*

## <u>LIST OF EXHIBITS</u>

| Ex No. | Document Name |
|---|---|
| A | [RESERVED] |