# EXHIBIT B

Communication from Debtor's Counsel, dated October 8, 2025

| | |
|---|---|
| **From:** | Brian M. Rothschild |
| **To:** | Kuhn, Peter J. (USTP); Melinda Willden; Jarvis, Annette (Shld-SLC-RSS); Stone, Abigail (Assoc-SLC-RSS) |
| **Cc:** | Robert Loh |
| **Subject:** | PBC - Explanations of Accounting and Fireblocks Access |
| **Date:** | Wednesday, October 8, 2025 12:27:34 PM |
| **Attachments:** | image001.png |
| | emailsignaturelogonotext_c4fe8a58-60ec-4e55-8f78-be04efb3833d.png |

**\*EXTERNAL TO GT\***

Dear Committee and U.S. Trustee:

I write to provide information requested by the Committee and proposals to give the Committee and its professionals further direct access to answer their own questions in the future regarding the Debtor's cryptocurrency assets and balances on the notes receivable.

### Database Access – Cryptocurrency Tracking

The Committee has requested access to the "live database" of the Debtor's cryptocurrency holdings and asked for "statements" presumably from the institution that holds the cryptocurrency.  There is no such "live" database, and there is no institution that institutes statements of the Debtor's cryptocurrency holdings.  The crypto database is essentially a ledger kept by the debtor on a hard drive in which the Debtor records transactions as they are requested executed on Fireblocks third-party wallet.  The Fireblocks institutional wallet, in turn, as a non-custodial tech provider, **does not generate customer statements or do any native reporting**, instead referring customers to tax/ accounting partners to produce that information if needed.  In addition, all transfer and balance information is publicly available on the public blockchain.  (See email from Fireblocks account representative)

The Debtor, as was pointed out repeatedly in our prior correspondence and briefing, provided the Committee a copy of the SQL database, which can be used to search for all historical customer transactions on the Debtor's trading platform since its inception to the approximately Nov. 27, 2024. This date is significant because the court ordered the platform to cease operation to conserve Debtors assets by reducing expenses. The committee has been given access to that data base which has not changed since that date.  There are a handful of subsequent transactions since Nov 27, 2024 that are recorded on a spreadsheet in lieu of the trading platform.  These transactions and assets are not part of the Debtor's assets. We can provide that updated spreadsheet on a going forward basis to allow for full transparency in conducting reconciliation for accounting purposes.  **Please let us know if you want us to upload the most recent spreadsheet each month into the SharePoint folder**.

### Proposal to Cash In and/or Separately Hold Debtor's Cryptocurrency

Much of the confusion by the Committee appears to be as a result of the Debtor's cryptocurrency being held on the same Fireblocks wallet as its customers' cryptocurrency.  The obvious thing to do, therefore, is to sell the Debtor's cryptocurrency for US dollars, transfer it to the Hillcrest Bank account, and hold it there.   Alternatively, the Debtor could transfer it to a more retail exchange like Coinbase or other platform that does generate statements that the Committee would be used to seeing.  Another solution would be to have the Debtor transfer its cryptocurrency to "cold storage" separate from customer cryptocurrency.  That way, there would no longer be any confusion when Committee professionals see use of the Debtor's wallet: they would not it is not the Debtor's cryptocurrency.  Please let us know if you want to explore these options.  I believe they would prevent a lot of confusion.

### Explanation Regarding MOR Accounting for Customer Cryptocurrency Transactions and BCH Note Receivable

To make it easier to track, the Debtor will provide a more detailed explanation of the debits and credits to the BCH Note.  I, as an attorney, was unable in real-time to apprehend or explain to the Court the differences we were seeing in the BCH Note Receivable.  I now understand them to be the difference between accrual-based and cash-based accounting.  Each month, the Debtor uses the accrued expenses to reduce the amount of the note receivable from Blue Castle and then add the interest amount to get the ending balance we report on the MOR.

For August, the reduction of the BVH Note for accrued expenses were $5,464.79.

The detail of that is as follows:

| | | | |
|---|---|---|---|
| Dues and Subscriptions | | 905.59 | Inter Co eliminations for AUG 2025 |
| Professional Fees:Accounting and Audits | | 1,500.20 | Inter Co eliminations for AUG 2025 |
| Professional Fees:Legal Fees | | 254.00 | Inter Co eliminations for AUG 2025 |
| Professional Fees:Legal Fees | | 2,805.00 | Inter Co eliminations for AUG 2025(Ampleo) |

$905.59 - Appriver, Email service for PBC

$1,500.20 - Amount paid to Sinan Causevic for accounting services

$254 - Quarterly amount paid to the US Trustee

$2,805 - Ampleo Fees approved by the court.  $10K was paid by a retainer previously on file, and this was the outstanding balance that was paid.

Moving forward, the Debtor can either continue to reduce the BCH Note by the accrued expenses, or if it is easier, the Debtor can use the actual cash paid out of the designated BCH Hillcrest bank account to reduce the note.  **The Debtor is happy to do whatever is easiest for the Committee and the U.S. Trustee to track, see, and understand.**

### Explanation of Customer Crypto Transactions Being Reported in MORs

On May 26, 2024, a PBC customer requested a withdrawal in USD.  They wanted PBC to sell their BTC and convert it to USD and send them the USD.  As PBC was not bankable and didn't have a bank account, stable coins were transferred to an affiliate wallet, converted to USD and deposited into a BCH bank account with the intention of sending USD to a new PBC Bank account and then to the customer.  PBC was unsuccessful at opening a new bank account, and on July 18, the Debtor informed the client it was unable to perform USD transactions as this was prohibited by BCH's bank account terms.  The client then said it would be ok if the Debtor transferred them their requested BTC crypto withdrawal.  Under the Cash Management Agreement, the USD from converted crypto was left in the BCH bank account for potential future withdrawal requests so as to not further complicate accounting and transactions, those USD amounts are not assets of PBC's estate.

Liquidity will be made available as requests come in from clients by converting the USD back to cryptocurrency such as BTC or stable coin and returned to clients.

As BCH needs to account for and report all transactions, when the stable coin was liquidated, these assets still belonged to PBC clients.  However, these assets were client assets, not part of the estate.  Therefore, to record the amount that were client assets and still an obligation of PBC, the note receivable from BCH was increased.  So, although the note receivable on PBC's books was increased by $240k as those assets need to be returned to clients upon their request, $240k of the Note Receivable from PBC is not an asset of the estate.  The asset value is determined by subtracting $240k from the total note value plus applicable interest.
  None of this, again, was property of the Debtor's estate, and therefore none of it should have been recorded in the MORs or affected the balance of the BCH Note.  **We are happy to go over this on a Teams call if that would be helpful.**

We hope this answers the Committee's and the US Trustee's questions.  We are happy to again get on a Teams call with or without attorneys (or with Huron) to go over these or any other questions the Committee or the U.S. Trustee has.

Sincerely,

Brian



**Brian M. Rothschild**
Attorney at Law
Admitted in California, Idaho, and Utah
**Parsons Behle & Latimer**
201 South Main Street, Suite 1800  •  Salt Lake City, Utah 84111
Main +1 801.532.1234  •  Direct +1 801.536.6762  •  Fax +1 801.536.6111

parsonsbehle.com  •   BRothschild@parsonsbehle.com  •   vCard

**CONFIDENTIALITY NOTICE:**  This electronic mail message and any attachment(s) are confidential and may also contain privileged attorney-client information or work product.  The message is intended only for the use of the addressee.  If you are not the intended recipient, or the person responsible to deliver it to the intended recipient, you may not use, distribute, or copy this communication.  If you have received the message in error, please immediately notify us by reply electronic mail or by telephone at +1 801.532.1234, and delete this original message.