**GREENBERG TRAURIG, LLP**
Annette W. Jarvis (Utah #1649)
Carson Heninger (Utah #17410)
Abigail J. Stone (Utah # 19083)
222 South Main Street, Suite 1730
Salt Lake City, UT 84101
Telephone: (801) 478-6900
Email: jarvisa@gtlaw.com
        carson.heninger@gtlaw.com
        abigail.stone@gtlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Case No. 24-bk-23041 |
| POWER BLOCK COIN, LLC., | Chapter 11 |
| Debtor. | Judge Cathleen D. Parker |

**OBJECTION TO DEBTOR'S *EX PARTE***
**MOTION TO CONVERT CASE TO CHAPTER 7**

The Official Committee of Unsecured Creditors (the "Committee") of the debtor and debtor-in-possession, Power Block Coin, LLC (the "Debtor"), respectfully submits this *Objection* ("Objection") to the Debtor's Ex Parte *Motion to Convert Case to Chapter 7* (the "*Ex Parte Motion*") [Doc. No. 422]. Contrary to the Debtor's assertions, it does not have an absolute right to convert this case. The Committee, the largest creditor, and the United States Trustee all expressed their support for a Chapter 11 trustee prior to the filing of the *Ex Parte* Motion, as the appointment of a Chapter 11 trustee would bring significant benefits to the estate that the Debtor ignores and

fails to address. Thus, the *Ex Parte* Motion should be denied because it is not in the best interests of the parties. In support of this Objection, the Committee respectfully states as follows:[1]

## I.      INTRODUCTION

Since the beginning of this case, the Debtor's acts have demonstrated a pattern of working for the benefit of itself, its affiliates, and its principals—not the best interest of creditors or the estate. In a continuation of that saga, the Debtor now seeks to bypass the united view of the Committee, U.S. Trustee, and a major creditor in favor of the appointment of a Chapter 11 trustee and pursue its own agenda for conversion to Chapter 7.

The Court should not give deference to the Debtor, especially when Judge Marker already found and stated on the record after a hearing eleven months ago that the Debtor "has not shown that it has the ability to operate this estate in a way that's beneficial to creditors with transparency and good faith." [Doc. No 243], audio file at 21:45.[2] As articulated herein, the Debtor does not have an absolute right to convert to Chapter 7, and there are significant benefits to the appointment of a Chapter 11 trustee that would benefit nearly all parties to this case, including (i) a trustee with greater cryptocurrency expertise than a panel Chapter 7 trustee, (ii) less wasted time getting a trustee up to speed with the help of the Committee and its professionals, and (iii) the ability to pursue the Committee's pending plan, including the appointment of a plan trustee who will have more ability to navigate around the *in pari delicto* defense. Therefore, the Debtor's *Ex Parte* Motion should be denied.

---

[1] The Debtor's argument that the Court can and should enter the *Ex Parte* Motion without any hearing or objection period is also erroneous. But because the Court set the *Ex Parte* Motion for hearing and offered an objection period, the Debtor's points on this matter are now moot and the Committee will not address them in this Objection.

[2] Audio recording of hearing on the Debtor's motion to extend exclusivity period, held before the Honorable Judge Joel T. Marker on December 17, 2024.

## II.    RELEVANT FACTUAL BACKGROUND

1.    On June 20, 2024 (the "<u>Petition Date</u>"), the Debtor commenced this case by filing for bankruptcy under Chapter 11 of the Bankruptcy Code, improperly electing to proceed under Subchapter V despite the existence of claims against it in excess of $192 million. [Doc. No. 1].[3]

2.    On October 9, 2024, the Court sustained objections to the Debtor's election to proceed under Subchapter V, thus rendering this case a traditional Chapter 11 case. [Doc. No. 190].

3.    On October 24, 2024, the U.S. Trustee appointed the Committee to serve as the Official Committee of Unsecured Creditors for the Debtor. [Doc. No. 199].

4.    On November 18, 2024, the Debtor filed a motion to extend the exclusivity period for it to file and solicit support for a plan. [Doc. No. 213].

5.    On December 17, 2024, at the hearing on the Debtor's motion to extend exclusivity, the Honorable Judge Marker denied the Debtor's motion and stated that "the Debtor has not shown that it has the ability to operate this estate in a way that's beneficial to creditors with transparency and good faith." [Doc. No. 243], audio file at 21:45.

6.    On January 30, 2025, the Committee filed its own plan [Doc. No. 254], followed by an amended version of that plan and a disclosure statement on March 7, 2025. [Doc. No. 273, 274].

---

[3] A later filing by the Debtor states that "the total value of claims . . . asserted" in this case is $192,521,332.36. ([Doc. No. 350] at 5).

7.      On March 14, 2025, the Committee filed a motion to approve the adequacy of its disclosure statement. [Doc. No. 277]. A hearing on this motion was continued multiple times, and is currently set for November 18, 2025. [Doc. No. 355].

8.      On October 21, 2025, the Committee filed its *Motion to Appoint Chapter 11 Trustee* (the "Chapter 11 Trustee Motion") [Doc. No. 413] and set the matter for hearing before this Court on November 18, 2025.

9.      On November 4, 2025, creditor Zhouyang "Mason" Song filed his declaration and joinder to the Chapter 11 Trustee Motion (the "Song Joinder") [Doc. No. 416]. As stated in the Song Joinder, Mr. Song holds the "single largest claim in this Chapter 11 case." *See* Song Joinder, ¶ 1.

10.     On November 5, 2025, the United States Trustee ("U.S. Trustee") filed its *Response to the Chapter 11 Trustee Motion* (the "U.S. Trustee's Response"), adding additional factual evidence in support of the Chapter 11 Trustee Motion. [Doc. No. 418].

11.     On November 7, 2025, the Debtor filed the *Ex Parte* Motion to convert the case to Chapter 7.

### III.     BASIS FOR OPPOSING THE MOTION

12.     In the *Ex Parte* Motion, the Debtor argues that, pursuant to Bankruptcy Code § 1112(a) and Federal Rule of Bankruptcy Procedure 1017(f),[4] it may seek conversion to Chapter 7 "as a matter of course" and through an *ex parte* motion. *See Ex Parte* Motion at 1–2. However, "Section 1112(a) does not give debtors an absolute right to convert." *In re Kearney,* 625 B.R. 83,

---

[4] Any further references to code sections or rules made herein, unless otherwise noted, shall be to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and to the Federal Rules of Bankruptcy Procedure, respectively.

86 (B.A.P. 10th Cir. 2021). Instead, a court must consider whether it would immediately reconvert the case based on what will most benefit creditors and/or "all parties in interest." *Id.* at 99–100. The competing relief requested in the Chapter 11 Trustee Motion also highlights the need to consider the best interests of creditors and the estate. *See In re Giuliani*, 661 B.R. 493, 500 (Bankr. S.D.N.Y. 2024).

13.     There are significant benefits to appointing a Chapter 11 trustee over a Chapter 7 trustee here, and such relief has been supported not only by the Committee, but by the largest creditor and by the U.S. Trustee, as shown by the Song Joinder and the U.S. Trustee's Response. Therefore, the Debtor's *Ex Parte* Motion should be denied.

### IV.    ARGUMENT

**A. Conversion to Chapter 7 Is Not a Matter of Right But Is Governed by the Best Interests of Creditors and Parties.**

14.     The 10th Circuit B.A.P. has rejected the idea that a debtor has an absolute right to convert a Chapter 11 case to Chapter 7 under § 1112(a). *See In re Kearney,* 625 B.R. at 86. In *In re Kearney,* the court noted that, in addition to the limits set forth in § 1112(a), subsection (f) places another limit on a debtor's right to convert: that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 1112(f). Therefore, "if a bankruptcy court finds that it would immediately dismiss a chapter 7 case or reconvert it to chapter 11 [under Section 706(b)], it need not go through the 'procedural anomaly' of conversion before taking that step, but can instead deny conversion on that basis." *In re Kearney,* 625 B.R. at 97.

15.     Pursuant to the legislative history of § 706(b), the court found that the best standard for weighing conversion (or immediate reconversion) under § 706(b)—and by extension, whether

5

or not to grant the debtor's Chapter 7 conversion motion—is what will most benefit "all parties in interest." *Id.* at 99. *See also In re Daughtrey,* 896 F.3d 1255, 1276 (11th Cir. 2018) (similarly rejecting Chapter 7 debtor's argument that it had an "absolute right" to convert to Chapter 11 under § 706(a) (which is similar to § 1112(a)) and confirming denial of debtor's motion to convert based on cause for immediate reconversion or dismissal); *In re With Purpose, Inc.,* 2025 WL 271469, at *12, *18 (Bankr. N.D. Tex. Jan. 22, 2025) (similarly denying debtor's motion to convert from Chapter 7 to 11 because "cause would exist to reconvert the case" and conversion was "not in the best interest of creditors").

16.     In another case with a factual scenario similar to this case, the committee of unsecured creditors moved for the appointment of a Chapter 11 trustee and the Debtor countered with a motion to covert, followed by a filing consenting to dismissal or seeking conversion in the alternative. *In re Giuliani,* 661 B.R. at 496. The court held that the debtor did not have an absolute right to convert the case from Chapter 11 to Chapter 7. *Id.* at 500. Given the "competing requests for relief" at play, the court then applied the guidance of § 1112(b), which contemplates conversion to Chapter 7, dismissal, and the appointment of a Chapter 11 trustee, and exercised its discretion to determine what was in the best interest of creditors, ultimately settling on dismissal based on the circumstances presented in that case. *Id.* at 500, 507.[5]

17.     Under either standard set forth in the cases above, the appointment of a Chapter 11 trustee is the best outcome. The current dueling motions to appoint a Chapter 11 trustee versus convert to Chapter 7 best parallel the facts of *In re Giuliani* and the best interest of creditors and

---

[5] Of course, dismissal is not a viable option here. No party in interest has requested dismissal, which would serve only to benefit the Debtor and its insiders and affiliates who conducted and received a series of pre-and post-petition transfers that are best pursued by a Chapter 11 trustee as described further herein.

6

estate standard found in § 1112(b), which considers the options of both Chapter 7 conversion and the appointment of a Chapter 11 trustee.[6] However, to the extent that the Court finds that the "best interest of all parties" standard in *In re Kearney* under § 706(b) governs, the result is still the same: appointment of a Chapter 11 trustee is in the best interest of creditors, as well as all other parties to this case.

18.     The Debtor's effort to convert the case serves only to inject further delay into a case in which it has made no meaningful progress toward an exit from bankruptcy for nearly 18 months since the misguided filing under Subchapter V. Even if this case were converted to Chapter 7, creditors would still have the option to seek reconversion back to Chapter 11 under § 706(b) and renew or file a further motion to appoint a Chapter 11 trustee and pursue the Committee's pending plan.

19.     This is not to mention that the Committee filed its Chapter 11 Trustee Motion before the *Ex Parte* Motion. The Committee's Chapter 11 Trustee Motion, if granted, would preclude the Debtor from moving for conversion pursuant to Bankruptcy Code § 1112(a) because the Debtor would no longer be a debtor in possession. Therefore, the Court should both consider the Committee's Chapter 11 Trustee Motion first and apply the standards of § 1104, including whether "such appointment is in the interest of creditors."

---

[6] Section 1112(b) calls for conversion or dismissal of the case "for cause" unless "the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." One of the enumerated "causes" set forth in § 1112(b)(4) is "gross mismanagement" of the estate, which is also grounds for "cause" under § 1104(a)(1) and which the Committee has already established in its Chapter 11 Trustee Motion. Therefore, with "cause" established under both § 1104 and § 1112(b)(4), the Court may move on to the consideration of what is in the best interest of creditors and the estate.

20.    The Committee, the U.S. Trustee, and Mr. Song have all communicated their support for the appointment of a Chapter 11 trustee. The preferences of the Debtor alone—a debtor who Judge Marker already found had not shown that it could act in the best interest of creditors—should not govern when nearly all other key parties have expressed a contrary preference. Indeed, the express preference of a creditors' committee for appointment of a Chapter 11 trustee over conversion can be a key factor in determining what is in the best interests of parties. *See In re Sillerman,* 605 B.R. 631, 657 (Bankr. S.D.N.Y. 2019) (finding cause under both §§ 1104 and 1112(b) and appointing Chapter 11 trustee rather than converting case to Chapter 7 in part because of the preference of creditors' committee).[7]

21.    Therefore, contrary to the Debtor's *Ex Parte* Motion, the Debtor's preference for conversion to Chapter 7 does not, and should not, dictate the outcome of the *Ex Parte* Motion. Given the oppositional manner in which the Debtor has conducted this case—first opposing the efforts of its two largest creditors to defeat the filing under Subchapter V and obtain appointment of the Committee, and then consistently opposing the actions of the Committee—the Court should give little weight to the Debtor's preference and focus on the best interests of the parties before it. Indeed, the filing of the Debtor's *Ex Parte* Motion after the Committee, U.S. Trustee, and largest creditor all made filings supporting appointment of a Chapter 11 trustee represents another effort to frustrate and overcome the will of other parties in interest.

---

[7] The committee in *In re Sillerman* brought a motion for appointment of a Chapter 11 trustee or conversion in the alternative but expressed its preference for a Chapter 11 trustee. *In re Sillerman,* 605 B.R. at 657. Here, however, the Committee has asked for only one option—appointment of a Chapter 11 trustee—and has been supported by both the largest creditor and the U.S. Trustee. Thus, there is even greater reason here to give deference to the Committee's preference.

**B. Appointment of a Chapter 11 Trustee Is In the Best Interest of All Parties.**

22.     There are at least three key benefits that can be recognized with a Chapter 11 trustee that make such an appointment in the best interest of all parties.[8]

23.     *First*, because the U.S. Trustee has flexibility in whom to appoint as a Chapter 11 trustee, the U.S. Trustee could work with the Committee[9] to appoint a Chapter 11 trustee with significant cryptocurrency experience and expertise, which would be valuable in helping the trustee trace and understand the Debtor's cryptocurrency transactions both pre- and post-petition. This would help all parties, as an experienced trustee could trace and pursue claims more efficiently and bring value back into the estate. A panel Chapter 7 trustee would not necessarily have such expertise in the cryptocurrency industry.[10]

24.     The Committee has already vetted experienced candidates who could potentially serve as the Chapter 11 trustee. Before filing its proposed Chapter 11 plan, the Committee interviewed and vetted potential candidates to serve as a liquidating trustee. Each candidate possessed substantial bankruptcy and cryptocurrency experience, and certain candidates have still expressed interest in serving in this position.

25.     The Debtor argues that the assets in the estate, including the cryptocurrency, "are ordinary assets that are routinely administered by chapter 7 trustees." *Ex Parte* Motion at 3. However, this contention fails to acknowledge the complicated cryptocurrency transactions and

---

[8] It should be noted that, through the *Ex Parte* Motion, the Debtor itself has acknowledged the need for an independent trustee in this case. Therefore, the only question before the Court is whether such a trustee should be appointed under Chapter 11 or upon conversion to Chapter 7.

[9] *See* 11 U.S.C. § 1104(d), requiring "consultation with parties in interest" in appointment of Chapter 11 trustee.

[10] Of course, creditors now serving on the Committee could exercise the right to elect a Chapter 7 trustee under § 702 of the Bankruptcy Code, but that process would serve only to build further delay into a process that already has lingered too long.

tracking that characterize the Debtor's business and estate—not to mention the Debtor's poor records and recordkeeping. As the Committee has stated, the Debtor's records are so convoluted that it is practically impossible to fully understand where and why the Debtor transferred cryptocurrency, let alone verify the appropriateness of those transfers. A trustee with cryptocurrency experience and understanding would have a much better chance of deciphering these transactions and verifying that all value belonging to the estate was properly returned to it.

26.     *Second*, conversion to Chapter 7 would effectively be a step backwards in a case that has already dragged on for nearly 18 months, while a Chapter 11 trustee could better press forward without delay. Under a Chapter 7 case, the Committee would be disbanded, and a Chapter 7 trustee would have to learn the nuances of this case alone without the option to pursue a plan. However, a Chapter 11 trustee would benefit from the knowledge and experience of the Committee and its professionals, allowing a Chapter 11 trustee to acclimate to the case faster and help facilitate the Committee's pending plan [Doc. No. 273].

27.     As set forth in the Committee's Chapter 11 Trustee Motion, this case was significantly delayed by the Debtor's improper Subchapter V election, which delayed the appointment of a committee for several months. *See* Chapter 11 Trustee Motion at 3–4. The Debtor should not be permitted to cause any additional delays and further reduce the time available to investigate and make applicable avoidance claims in this case.

28.     *Third*, unlike a Chapter 7 trustee, a Chapter 11 trustee could help facilitate the Committee's pending plan, which is likely the quickest way to bring this case to a conclusion. No objections to the Committee's disclosure statement have been filed, and the Committee is working with the U.S. Trustee on potential revisions to the exculpation and indemnification language in the

10

disclosure statement and plan. The Debtor's *Ex Parte* Motion should not be used to derail a plan that is ready to be solicited to creditors in this Chapter 11 case and that has the Committee's support. *See In re Kearney,* 625 B.R. at 101–02 (noting that a confirmed creditor plan is a factor that courts can look at "to determine what will benefit all parties in interest"). While the Committee's plan has not yet been confirmed, it is ready to be solicited and acted on quickly.

29.     The Debtor tries to argue that the Committee's plan is not confirmable due to the large amount of administrative expenses in this case. *See Ex Parte* Motion at 10–11. However, this is exactly why the Committee's counsel has not yet filed a fee application—that is, to give a Chapter 11 trustee the latitude and initial capital they need to pursue claims, bring additional funds into the estate to pay the Debtor's remaining administrative fees, and work out a payment schedule for the Committee's administrative fees over time. Contrary to the Debtor's assertions, the Committee professionals have not "refused" to file a fee application and do not intend to hamstring a reasonable or viable plan or claims process. Quite the opposite—the Committee professionals have not filed fee applications because they want a trustee to have better odds of success in seeking recovery for the estate and bringing value back into the estate.

30.     The Debtor also tries to again undercut the Committee's position by claiming that the Committee reneged on a joint plan with the Debtor. *Ex Parte* Motion at 9. However, as the Committee has already stated, the parties left the mediation with agreement on only *some* of the many open issues that separated them, conditioned on the negotiation of final terms on which the

parties could not ultimately agree. The Committee stepping away from a potential settlement that left multiple issues open and unresolved does not automatically invalidate all other plan options.[11]

31.     Finally, a Chapter 11 trustee's facilitation of the Committee's plan would include the appointment of a liquidating trustee who will likely have better grounds and ability to navigate around the *in pari delicto* defense.[12] Given the known below-market transfers of assets by the Debtor to its affiliates (*see* Chapter 11 Trustee Motion at 15–16), this greater ability to avoid the *in pari delicto* defense may be important in pursuing claims for the estate and maximizing recovery for creditors.

32.     In summary, all these advantages would make it more likely for a Chapter 11 trustee to bring additional value into the estate and increase the recovery available for creditors. An independent trustee with specific cryptocurrency knowledge would also benefit other parties, as such a trustee would be better equipped to administer this case with expertise, experience, and efficiency. Finally, a Chapter 11 trustee's ability to continue pursuing the Committee's plan, with full access to all information held by the Debtor (if in the best interest of creditors), is likely the quickest resolution to this case and brings value to parties as well.

---

[11]  The good faith of the Committee in entering into and conducting those negotiations can hardly be questioned, given the multiple continuances of the hearing to consider the Committee's disclosure statement during efforts to try and reach a settlement with the Debtor.

[12] The *in pari delicto* defense "may bar an action by a bankruptcy trustee against third parties who participated in or facilitated wrongful conduct of the debtor." *Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1276 (10th Cir. 2008). Specifically, Chapter 7 trustees, who stand in the shoes of the debtor, are subject to this defense by non-insider third parties when the trustees act "as successor to the debtor's interests included as property of the estate under 11 U.S.C. § 541." *Sender v. Simon*, 84 F.3d 1299, 1304, 1305 (10th Cir. 1996). A plan trustee or representative, on the other hand, is appointed and derives his/her power under § 1123(b)(3)(B) as a "representative of the estate" and should be primarily focused on the benefit of the debtor's unsecured creditors. *See In re Sweetwater*, 884 F.2d 1323, 1327 (1989). Thus, there is a stronger argument that a plan representative is not subject to the *in pari delicto* defense because he or she is getting authority to act not by stepping into the shoes of the debtor, but by enforcing claims for the benefit of the estate and creditors.

## V.   CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Debtor's *Ex Parte* Motion be denied, and that the Court grant such other and further relief as this Court deems just and necessary.

DATED this 14th day of November, 2025.

**GREENBERG TRAURIG LLP**

*/s/ Abigail Stone*
Annette W. Jarvis
Carson Heninger
Abigail J. Stone

*Counsel for the Official Committee of
Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)</u>

I hereby certify that on this 14th of November, 2025, I electronically filed the foregoing along with all attachments, with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system.

- **James W. Anderson**    jwa@clydesnow.com, gmortensen@clydesnow.com
- **Laura Elizabeth Baccash**    laura.baccash@whitecase.com, mco@whitecase.com
- **Mark D. Bloom**    mark.bloom@bakermckenzie.com
- **Simeon J Brown**    sbrown@parsonsbehle.com
- **Matthew James Burne**    matthew.burne@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Deborah Rae Chandler**    dchandler@aklawfirm.com
- **Carson Heninger**    heningerc@gtlaw.com, carson-heninger-5642@ecf.pacerpro.com,Candy.Long@gtlaw.com
- **Samuel P. Hershey**    sam.hershey@whitecase.com, mco@whitecase.com
- **Annette W. Jarvis**    jarvisa@gtlaw.com, longca@gtlaw.com
- **Michael R. Johnson**    mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Peter J. Kuhn**    Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Joli A. Lofstedt**    joli@jaltrustee.com, ecf.alert+LofstedtUTB@titlexi.com,brenda@jaltrustee.com
- **Artur Machalski**    artur.machalski@gmail.com
- **Elliott D. McGill**    emcgill@parsonsbehle.com
- **Darren B. Neilson**    dneilson@parsonsbehle.com
- **Christopher L. Perkins**    cperkins@eckertseamans.com
- **Gregory F. Pesce**    gregory.pesce@whitecase.com, mco@whitecase.com
- **Walter A Romney**    war@clydesnow.com, gmortensen@clydesnow.com
- **Brian M. Rothschild**    brothschild@parsonsbehle.com, ecf@parsonsbehle.com;docket@parsonsbehle.com
- **Jeffrey Weston Shields**    jshields@rqn.com, 5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com
- **Landon S. Troester**    lst@clydesnow.com, rcondos@clydesnow.com
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Melinda Willden tr**    melinda.willden@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

*/ s / Abigail Stone*

14

### CERTIFICATE OF SERVICE BY MAIL OR OTHER MEANS

I further certify that on November 14, 2025, I caused to be served a true and correct copy of the foregoing document as follows:

**Nikita Ash**
1221 Avenue of the Americas
New York, NY 10020-1095

**CFO Solutions, LLC dba Ampleo**
13601 W McMillan Rd
#102 PMB 320
Boise, ID 83713

**Kyle Ferrier**
300 South Biscayne Blvd.
Suite 4900
Miami, FL 33131

**Nicholas Kennedy**
1900 N. Pearl Street
Suite 1500
Dallas, TX 75201

**Colonel Michael D. Brewer**
8901 Beauchamp Dr
Alexandria, VA 22309

*/ s / Patricia Brown*