Jason R. Naess (ISB #8407)
Assistant United States Trustee
Peter J. Kuhn (USB #3820)
Melinda P. Willden (USB #8533)
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
Washington Federal Bank Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111
Telephone: (801) 524-5734
Facsimile: (801) 524-5628
E-mail: Peter.J.Kuhn@usdoj.gov
 Melinda.Willden@usdoj.gov

Attorneys for Gregory M. Garvin
Acting United States Trustee, Region 19

---

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 24-23041 |
| POWER BLOCK COIN, LLC | Chapter 11 |
| Debtor. | Hon. Cathleen D. Parker |

**ACTING UNITED STATES TRUSTEE'S MOTION FOR AN ORDER TO DISGORGE INTERIM FEES PAID AND TO PROHIBIT FUTURE PAYMENTS OF ATTORNEY FEES FROM THE ESTATE DUE TO DEBTOR'S COUNSEL'S FAILURE TO DISCLOSE THE SOURCE OF PAYMENT OF ATTORNEY FEES AND FAILURE TO DISCLOSE A CONNECTION AND POTENTIAL CONFLICT**

TABLE OF CONTENTS

I.    STATEMENT OF JURISDICTION AND RELEVANT FACTS ......................................... 3

    A.    Jurisdiction ............................................................................................................... 3

    B.    Relevant Facts .......................................................................................................... 3

II.    ARGUMENT .................................................................................................................... 7

    A.    The Cash Management Motion Proposed a Unique Funding Structure for the Debtor's
Bankruptcy Case. ............................................................................................................... 8

    B.    Counsel Failed to Disclose the Source of Payment of Attorney Fees as Required by 11
U.S.C. § 329(a) and Bankruptcy Rule 2016 ...................................................................... 9

        1.    Counsel Was Required to Disclose that Attorney Fees Were Paid from an Unscheduled
Estate Asset ...................................................................................................................... 9

        2.    Counsel Should Be Ordered to Disgorge the Attorney Fees Already Paid and be
Denied Further Compensation from the Bankruptcy Estate ............................................. 14

            i. The Failure to Disclose the Source of Fees Had a Substantial Negative Impact on the
Bankruptcy Estate ....................................................................................................... 16

    C.    Counsel Failed to Disclose the Joint Defense Agreement. ...................................... 18

        1.    Debtor's Counsel Had a Duty to Disclose the Joint Defense Agreement Pursuant to 11
U.S.C. §§ 327, 328, and Bankruptcy Rule 2014. ........................................................... 18

        2.    The Appropriate Remedy is to Order Counsel to Return All Fees Paid and Deny
Further Compensation from the Bankruptcy Estate ........................................................ 21

III.   CONCLUSION ............................................................................................................... 22

The Acting United States Trustee for Region 19, through his counsel, files this Motion for an Order to Disgorge Interim Fees Paid and to Prohibit Future Payments of Attorney Fees from the Estate Due to Debtor's Counsel's Failure to Disclose the Source of Payment of Attorney Fees and Failure to Disclose Potential Connections and Conflicts ("Motion") for failing to disclose the source of payment of attorney fees awarded by this Court in the Order Authorizing Payment of Allowed Fees and Expenses of First Interim Application of Parsons Behle & Latimer entered at Dkt. #238 as required by 11 U.S.C. § 329(a) and Bankruptcy Rules 2014 and 2016; and for failing to disclose a Joint Defense Agreement as required by Bankruptcy Rule 2014. In support of this Motion, the U.S. Trustee states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  STATEMENT OF JURISDICTION AND RELEVANT FACTS

#### A.  Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151; 157(a) & (b)(1), 1334(a) & (b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for this Motion is 11 U.S.C. §§ 327, 328, 329, and 330. The Federal Rules of Bankruptcy Procedure that are applicable to this Motion are Bankruptcy Rules 2014 and 2016.

#### B.  Relevant Facts

1.  Power Block Coin, LLC ("Debtor"), a cryptocurrency company, filed a voluntary petition ("Petition") for relief under Chapter 11 of the Bankruptcy Code on June 20, 2024 ("Petition Date").

2.  The Debtor is wholly owned by Blue Castle Holdings, Inc. ("Blue Castle").

3.  Aaron Tilton is the Chief Executive Officer of the Debtor and Blue Castle.

4.  Brad Jones is the Chief Financial Officer of the Debtor and Blue Castle.

3

5.  On the Petition Date, the Debtor filed its Application for Order Authorizing Employment of Parsons Behle & Latimer ("Parsons" or "Debtor's Counsel") at Dkt. #2 (the "Parsons Employment Application"). *See* **Exhibit 1**.

6.  The Parsons Employment Application is supported by the Declaration of Brian M. Rothschild ("Rothschild Declaration") filed at Dkt. #3. *See* **Exhibit 2**.

7.  On the Petition Date, the Debtor filed a Motion For an Order (1) Authorizing Continued Use of Debtor's Payment System Through Services Agreement with Blue Castle Holdings, Inc., (2) Waiving Certain Investment and Deposit Guidelines, and (3) Granting Related Relief ("Cash Management Motion") at Dkt. #7. *See* **Exhibit 3**.

8.  On the Petition Date, the Debtor filed the Declaration of Aaron Tilton in Support of First Day Relief ("Tilton Declaration") at Dkt. #8. *See* **Exhibit 4**.

9.  On December 1, 2023, the Debtor entered into a Management Services Agreement ("Management Services Agreement") with Blue Castle, whereby Blue Castle, using its own bank accounts, pays for certain Debtor obligations such as professionals' fees, utilities attributable to the Debtor, employee payroll, and third-party payables on behalf of the Debtor.  *See* **Exhibit 4** at ¶¶ 14 and 15; *see also* the copy of the Management Services Agreement attached as **Exhibit 5**.

10. Tilton signed the Management Services Agreement in his capacity as President and CEO of Blue Castle. Jones signed the Management Services Agreement in his capacity as Manager of the Debtor. Under the Management Services Agreement, Blue Castle pay the costs and expenses of the Debtor from its bank accounts and then reduces the balance of the Blue Castle Note to account for the payment.  *See* **Exhibit 4** at ¶ 15; **Exhibit 5**.

11. According to the Tilton Declaration, the Debtor loaned $1,400,000 to Blue Castle ("Blue

4

Castle Loan") on August 7, 2023 which is memorialized in the "Blue Castle Note". With the accrual of interest, payments, and credits under the Management Services Agreement, the balance on the Blue Castle Loan as of the Petition Date is approximately $1,161,248.94. *See* **Exhibit 4** at ¶ 37.

12. On July 2, 2024, the U.S. Trustee filed an objection to the Cash Management Motion ("UST Objection to Cash Management Motion") at Dkt. #27. *See* **Exhibit 6**.

13. On July 4, 2024, the Debtor filed its Schedules and Statement of Financial Affairs ("Schedules" and "SOFA") at Dkt. #39. *See* **Exhibit 7**.

14. At a hearing on the Cash Management Motion and the objections thereto, the Court granted the Cash Management Motion per the terms stated on the record and on September 16, 2024, entered the order granting the Cash Management Motion as modified ("Cash Management Order") at Dkt. #181. *See* **Exhibit 8**.

15. On October 24, 2024, the U.S. Trustee filed a Notice of Appointment of Creditors' Committee ("Committee") at Dkt. #199.[1]

16. On October 9, 2024, Debtor's Counsel filed the First Application for Interim Compensation at Dkt. #189 requesting an award of $179,005.50 in attorney fees and $12,867.96 in expenses for services performed between the Petition Date and September 30, 2024 ("First Fee Application"). *See* **Exhibit 9**.

17. On October 28, 2024, creditor Mason Song filed a Limited Objection to the First Fee Application ("Creditor Objection to the First Fee Application") at Dkt. #201. *See* **Exhibit**

---

[1] The Debtor elected to proceed under Subchapter V when this case was filed and thus, no Committee was initially appointed. After the U.S. Trustee and creditors objected to the Sub V Election, the Court held an evidentiary hearing. The Court sustained the objections to the Debtor's Subchapter V status. The Committee was appointed shortly thereafter.

**10**. Song questioned whether the Debtor had the means to pay administrative expenses.

18. On November 21, 2024, the Court conducted a hearing on the First Fee Application. The Court approved the First Fee Application per the terms stated on the record and scheduled a continued hearing for December 11, 2024 to allow the Debtor time to file a supporting declaration regarding its ability to pay. *See* **Exhibit 11**.

19. On December 10, 2024, the Debtor filed the Declaration of Brad Jones in Support of Blue Castle Holdings, Inc.'s Wherewithal to Pay Fees under the Management Services Agreement and This Court's Order on Cash Management ("Jones Declaration") at Dkt. #234. *See* **Exhibit 12**.

20. On December 12, 2024, the Court entered an Order Authorizing Payment of the First Fee Application ("Order Authorizing Payment of Fees") at Dkt. #238. *See* **Exhibit 13**.

21. On April 8, 2025, Debtor's Counsel filed the Second Interim Application of Parsons Behle & Latimer, Counsel to Debtor, for Allowance of Compensation and Reimbursement of Expenses ("Second Fee Application") requesting an award of $137,786.50 in attorney fees and $2,548.74 in expenses for the period between October 1, 2024 and March 31, 2025 at Dkt. #302. *See* **Exhibit 14**.

22. On June 6, 2025, the Court entered an order referring the Debtor and the Committee to mediation to address the Second Fee Application and the current disclosure statement. *See* Dkt. #328.

23. On June 27, 2025, the Debtor and the Committee participated in a mediation conducted before Judge Peggy Hunt ("Mediation").

24. On July 11, 2025, the Committee filed its Limited Objection to Second Interim Application of Parsons Behle & Latimer, Counsel to Debtor, for Allowance of

Compensation and Reimbursement of Expenses ("Committee Objection to Second Fee Application) at Dkt. #343.

25. The Court held a hearing on July 17, 2025 ("Hearing on Second Fee Application") and approved the Second Fee Application per the terms stated on the record. Debtor's Counsel was to upload an order. It does not appear that an order approving the Second Fee Application was ever uploaded.

26. In early September 2025, the Committee reached out to the U.S. Trustee with a concern regarding the payment of administrative expenses and information regarding a connection that Debtor's Counsel had not previously disclosed.

27. On November 14, 2025, the U.S. Trustee filed the Acting United States Trustee's Response to the Notice of Conversion of Case to Chapter 7 at Dkt. #432 to gather into one place a list of the deficiencies in the Schedules and SOFA. *See* **Exhibit 15**.

28. The Debtor has filed Monthly Operating Reports ("MOR(s)") throughout this case.

29. The January 2025 MOR filed at Dkt. #272 is incomplete. Among other omissions, it does not attach the Hillcrest Bank Statement, the bank reconciliation report, nor the required accounting of the Blue Castle Note.

30. The U.S. Trustee brought this omission to Debtor's Counsel's attention by email on September 23, 2025. *See* **Exhibit 16**. To date, the missing information has not yet been filed on the docket or produced to the U.S. Trustee.

## II.   **ARGUMENT**

Attorneys who represent debtors must file with the court a statement of compensation paid, and the source of such compensation. *See* 11 U.S.C. § 329(a); *see also* Bankruptcy Rules 2014 and 2016. "The disclosure obligation is a continuing one. Rule 2016(b) requires attorneys

to submit supplemental statements 'within 14 days after any payment or agreement not previously disclosed.'" *In re Stewart*, 970 F.3d 1255, 1258 (10th Cir. 2020).

Congress has charged the U.S. Trustee to oversee employment applications and fee applications, and object when necessary. *See* 28 U.S.C. § 586(a)(3)(A)(i) and (I). The disinterestedness standard for employment of counsel in a Chapter 11 case is given in 11 U.S.C. § 327(a) and is further enforced by the statute stating that compensation may be denied to an attorney employed under Section 327 if the attorney, "at any time" during the case "is not a disinterested person, or represents or holds an interest adverse to the interest of the estate." 11 U.S.C. § 328(c). To enforce this standard, the Court and other parties in interest must rely on the attorney to disclose **all** connections, including connections which may not be disqualifying, or which may not create an actual conflict of interest. "The Tenth Circuit has strictly interpreted counsel's duty under Section 327(a) and Rule 2014(a) to mandate disclosure of potential, as well as actual, conflicts of interest. The duty to disclose any conflict continues throughout counsel's representation of the debtor-in-possession." *Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434, 456 (D. Utah 1998) (*citing In re Interwest Bus. Equip., Inc,* 23 F.3d 311, 317 (10th Cir. 1994); *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 849-50 (BAP 10th Cir. 1997); *In re Amdura Corp.* 139 B.R. 963 (Bankr. D. Colo. 1992)).

Debtor's Counsel has failed to disclose the source of the compensation paid to Parsons. Debtor's Counsel has also failed to disclose a potential conflict or connection which arose during the bankruptcy case. For these failures, the U.S. Trustee asks the Court to order Parsons to disgorge all fees already paid, and to deny any further compensation from the bankruptcy estate.

### A. The Cash Management Motion Proposed a Unique Funding Structure for the Debtor's Bankruptcy Case.

The Debtor has explained that, in December 2023, the Debtor's banking institutions

closed its accounts. Following the failures of other cryptocurrency exchanges such as CoinBase, FTC, and Celsius Network, many traditional banking institutions ceased providing business banking services to crypto-related business. *See* **Exhibit 3** *and* **Exhibit 4** at ¶ 13-16. As a workaround, the Debtor entered into the Management Services Agreement dated December 1, 2023 with Blue Castle, under which Blue Castle agreed to pay the Debtor's obligations when payments were required in dollars. The Debtor's costs were accounted for on the internal ledgers by "reduc[ing] the balance of the Blue Castle [Note]" by the amount of the Debtor's expenses. **Exhibit 4** at ¶ 16.

The U.S. Trustee objected to the Cash Management Motion. *See* **Exhibit 6.** After negotiations, the Debtor and Blue Castle agreed that the only amounts that could be deducted from the Blue Castle Note would be the costs of legal and accounting professionals (on approved fee applications) and subscription and auditing expenses of approximately $4,500 per month ("Allowed Payments"). The Debtor sought Court approval to use a Blue Castle bank account to facilitate payments. The bank account dedicated to the Debtor's expenses was opened at Hillcrest Bank in Blue Castle's name (the "Hillcrest Bank Account" and "Hillcrest Bank Statements").

Per the Cash Management Order, the Debtor was ordered to file the Hillcrest Bank Statements with each MOR, and to include an accounting of the remaining balance of the Blue Castle Note. *See* **Exhibit 8**. The Debtor has filed Monthly Operating Reports, and, with the exception of the January 2025 MOR, has included the Hillcrest Bank Statements and the accounting of the Blue Castle Note.

**B. Counsel Failed to Disclose the Source of Payment of Attorney Fees as Required by 11 U.S.C. § 329(a) and Bankruptcy Rule 2016.**

    **1. Counsel Was Required to Disclose that Attorney Fees Were Paid from an Unscheduled Estate Asset.**

11 U.S.C. § 329(a) requires an attorney who is representing a debtor to file with the court

"a statement of the compensation paid or agreed to be paid … and the source of such compensation." Bankruptcy Rule 2016(a)(1)(A) requires an attorney to state in the fee application "the source of the paid or promised compensation."

In the First Fee Application, Debtor's Counsel specifically requested that the fees be paid through the financial structure set up in the Management Services Agreement and approved by the Court in the Cash Management Order:

> That the Debtor be authorized and directed under 11 U.S.C. §§ 330 and 331 to immediately pay the entire allowed amount from the Debtor's estate and, specifically, through the use of the Management Services Agreement via Blue Castle Holdings, Inc., pursuant to the Order Authorizing Continued Use of Debtor's Cash Management System Through Services Agreement With Blue Castle Holdings Inc. and Granting Related Relief, ECF 183.

The proposed order attached to the First Fee Application also referenced the Management Services Agreement and the Cash Management Order. *See* **Exhibit 9** at pp.7, 11.

One of the issues raised in the Creditor Limited Objection to First Fee Application was whether cash was actually available to make the payment. *See* **Exhibit 10** at ¶¶ 6, 15. To reassure the Court and creditors that Blue Castle had the wherewithal to make the payment, the Debtor drafted and filed the Jones Declaration. The Jones Declaration attached a screenshot showing that Blue Castle's bank account at Wells Fargo had a balance of $512,153.75 as of December 5, 2024. The Jones Declaration **(Exhibit 12)** at ¶ 4 further states that:

> This amount is available to be paid to BCH's account that is separately maintained for the payment of the Debtor's administrative expenses as approved by the Court's Order Authorizing Continued Use of Debtor's Cash Management System Through Services Agreement with Blue Castle Holdings, Inc. and Granting Related Relief (ECF 181).

When the Court entered its Order Authorizing Payment of Fees on December 12, 2024, it specified (**Exhibit 13** at ¶ 1):

> The Debtor is authorized, through the use of the Debtor's parent Blue Castle Holdings, Inc., to pay the full amount of Parsons Behle's administrative expense

claim pursuant to the Order (1) Authorizing Continued Use of Debtor's Cash Management System Through Services Agreement with Blue Castle Holdings Inc. and (2) Granting Related Relief (ECF 181).

Based on these three clear and specific statements of the source of attorney compensation, all parties expected and assumed that the payment to Debtor's Counsel of $191,873.46 in fees and costs would be funneled through the Hillcrest Bank Account and the amount paid would be deducted from the Blue Castle Note. This did not happen.

Attorneys are required to make full disclosures about compensation arrangements and timely update the Court when changes are made. "Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient." *In re Wright*, 591 B.R. 68, 90 (Bankr. N.D. Okla. 2018). In ferreting out what might have occurred when Debtor's Counsel was paid, the U.S. Trustee made the following discoveries:

- In September 2024, the Debtor apparently received two checks from Canada "related to theft recovery from years ago" (the "Checks"). Added together, the Checks were worth approximately USD $208,790.15. The funds could not be deposited as the checks were made out to the Debtor and the Debtor does not have a bank account. A similar note appeared with the October and November MORs. *See* **Exhibit 17**. After that, there is no mention of the checks from Canada in the MORs or anywhere else on the docket. The Debtor's Schedules do not disclose a claim for theft recovery.

- Despite the fact that Parsons was paid in December 2024, the MORs for January 2025 through July 2025 report that no compensation had been awarded to or paid to Parsons. *See* Dkt. #272, 281, 311, 325, 334, 347, and 352.

- The January 2025 MOR does not contain the Hillcrest Bank Statement which would, if

the procedures in the Cash Management Order were followed, show a transfer of funds from Blue Castle's bank account at Wells Fargo into the Hillcrest Bank Account, and a payment to Parsons made from the Hillcrest Bank Account.

- The balance of the Blue Castle Note reported in the December 2024 MOR is $1,116,245.76. The balance of the Blue Castle Note reported in the February 2025 MOR is $1,195,707.75. (The balance of the Blue Castle Note for January 2025 was not filed.) Far from reducing the balance of the Blue Castle Note in the amount paid to Debtor's Counsel, the Blue Castle Note actually increased by $78,461.99 between December 2024 and February 2025.

The U.S. Trustee contacted Debtor's Counsel regarding these issues. This resulted in the August 2025 MOR including an accurate statement of the Debtor's professional fees and expenses for the first time. *See* Dkt. #369. Debtor's Counsel also included with the August 2025 MOR a Trust Details Report (Dkt, #367-7) which appears to be a statement from Parsons trust account ("Parsons Trust Report") showing that $190,970.46 had cleared on December 16, 2024. *See* **Exhibit 18**. The payment was not offset against the Blue Castle Note. Parsons did not file an updated Disclosure of Attorney Compensation to disclose a different postpetition payment arrangement, as required by 11 U.S.C. § 329(a) and Bankruptcy Rule 2016.

In October 2025, the U.S. Trustee contacted Blue Castle about the payment and was finally able to confirm that the Checks were used to pay Parsons' attorney fees. Emails dating back to October 2024 show that Jones was working with counsel in Canada regarding a claim for theft recovery. Debtor's Counsel, both Brian Rothschild and Tim Smith, were copied on the communications in October 2024. *See* **Exhibit 19**.

On December 6, 2024, Mr. Jones sent an email to Mr. Hershman, asking that the funds be

wired to Parsons Behle & Latimer[2]. *See* **Exhibit 19** at p.8. Four days later, Mr. Jones signed the Jones Declaration which attached a screenshot showing that Blue Castle's bank account at Wells Fargo had a balance of $512,153.75 as of December 5, 2024 which was available to pay administrative costs. Mr. Jones should have been aware that the Checks were being directed to Parsons Trust Account when he signed the Jones Declaration since he was the one who directed Mr. Hershman to wire the funds to Parsons' trust account. Attorneys at Parsons were also aware of this apparent inconsistency: Mr. Smith was copied on the email that Mr. Jones sent to Mr. Hershman on December 6, 2024, and four days later, Mr. Rothschild's ECF account was used to file the Jones Declaration on the docket.

If the Debtor intended to use another method to pay attorney fees instead of the Cash Management System, then the Debtor had the responsibility to inform all parties and seek the Court's permission. Debtor's Counsel had an independent responsibility to the Court and all parties in this case to accurately inform them of "the source of the paid or promised compensation" pursuant to Bankruptcy Rule 2016(a)(1)(C) and 11 U.S.C. § 329(a).

Compensation disclosures must be reported in the manner required by the statute and rules. "[I]t is not the court's job to search through the record to find all relevant facts relating to an attorney's employment." *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 849 (B.A.P. 10th Cir. 1997). The court in *Smitty* rejected the attorney's argument that he disclosed a retainer by listing in on the SOFA. "If we accepted this argument, we would nullify the § 329 and Rule 2016(b) disclosure requirements." *Id*. The exhibit to an MOR made a reference to an estate asset that was not listed on the Schedules, and the U.S. Trustee had to follow up with the Debtor and Blue Castle to determine that this asset had been used to pay attorney fees. This is not adequate

---

[2] Attorney Timothy Smith at Parsons was copied on this email.

disclosure of the source of compensation. *See* 11 U.S.C. § 329(a); Bankruptcy Rule

2016(a)(1)(C); *see also In re Sandpoint Cattle Co.*, LLC, 556 B.R. 408, 422 (Bankr. D. Neb.

2016) ("[W]henever an attorney's fee arrangement with a debtor changes or whenever he or she

receives a retainer or other form of compensation not previously disclosed, the attorney must file

a supplemental disclosure of compensation.").

### 2. Counsel Should Be Ordered to Disgorge the Attorney Fees Already Paid and be Denied Further Compensation from the Bankruptcy Estate.

When an attorney fails to comply with Bankruptcy Rule 2016, the remedy is to deny

compensation from the bankruptcy estate, including ordering that fees previously paid be

disgorged.

> An attorney who neglects to disclose all compensation arrangements, and all connections in a bankruptcy case, risks the forfeiture of all fees awarded from the bankruptcy estate. The fragility of the system is found in the fact that many of the required disclosures are difficult if not impossible to police, at least in a cost-effective manner. As a result, sanctions must sting hard: The bankruptcy system functions on the premise that the overwhelming majority of those who utilize it are honest, that those who are dishonest are not likely to be caught, and that the penalties for dishonesty are severe. The lesson of the case law discussed above is that imposition of the least possible sanction as the standard for violations of § 329(a) and Bankruptcy Rule 2016(b) would not be effective in assuring compliance. Or, to put the matter another way, the least possible sanction to assure compliance by others is generally disgorgement of the entire fee.

*In re Stewart*, 970 F.3d 1255, 1265-66 (10th Cir. 2020) (internal quotation marks, alterations,

and citations omitted).

The history of the *Stewart* case is instructive. A bankruptcy court judge ordered an

attorney to pay a $25,000 sanction for failing to disclose the amount and source of fee payments,

but did not deny all fees, which totaled approximately $350,000. The Tenth Circuit BAP

affirmed, concluding that this was not an abuse of discretion. *See In re Stewart*, 600 B.R. 425

(10th Cir. BAP 2019) *overturned by In re Stewart,* 970 F.2d 1255 (10th Cir. 2020). The

bankruptcy court considered mitigating factors, such as whether the attorney's nondisclosure was

14

egregious, the reason for the attorney's noncompliance with the disclosure requirements, how much harm was done and if the harm was mitigated, and the attorney's experience level. *See In re Stewart*, 600 B.R. at 435. While the BAP found that to be persuasive and affirmed, the Tenth Circuit disagreed with the BAP's conclusion. The Tenth Circuit noted that, "It should come as no surprise that this circuit, and, at least until now, the lower courts in this circuit, have also consistently affirmed the denial of all fees for § 329(a) violations." *In re Stewart*, 970 F.3d 1255, 1265 (10th Cir. 2020) (collecting cases). Further, "Other circuits have similarly supported the full disgorgement or denial of fees for § 329(a) violations." *Id*. at 1264 (collecting cases). The Tenth Circuit held that full disgorgement of the entire fee "should be the default sanction, and there must be sound reasons for anything less." *Id*. at 1267. Any mitigating factors "must be compelling ones." *Id*.

The difficulty in policing disclosures is evident in this case. The First Fee Application, the Jones Declaration, and the Order Authorizing Payment of Fees all anticipated that the attorney fees would be paid through the Hillcrest Bank Account and the amount would be deducted from the balance from the Blue Castle Note. If a different method was to be used, it was the Debtor's responsibility to inform the Court and other parties.

An attorney who fails to disclose the source of compensation "forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received. The Court may sanction failure to disclose regardless of actual harm to the estate." *In re S. Station, LLC*, 464 B.R. 46, 59 (Bankr. D. Utah 2011). "Even if this failure [to appropriately disclose compensation] was negligent or inadvertent, it is sufficient, in itself, to deny all fees." *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 849 (B.A.P. 10th Cir. 1997).

The U.S. Trustee informed Debtor's Counsel of the questions surrounding the source of

15

payment by at least mid-September 2025. In the months since then, he has not filed an updated

Disclosure of Attorney Compensation. This continuing failure to obey the Bankruptcy Code and

Rules is grounds for a penalty. *See In re Sandpoint Cattle Co., LLC*, 556 B.R. 408, 426 (Bankr.

D. Neb. 2016) ("Further, [Counsel]'s failure to disclose was not a "technical breach"—it never

amended its disclosure. [Counsel] has represented debtors in Chapter 11 bankruptcy cases for

more than 30 years and knows or should know the statutes and rules applicable to attorney

compensation.").

In *Hansen, Jones & Leta P.C. v. Segal,* 220 B.R. 434 (D. Utah 1998), the Utah District

Court affirmed the bankruptcy court's decision to deny all fees to an attorney because the

attorney failed to disclose $620 paid to his law firm from a source other than the one specified in

his employment application. *See id*. at 469 ("The disclosure rules impose an independent

responsibility upon counsel. 'Thus, failure to comply with the disclosure rules is a sanctionable

violation, even if proper disclosure would have shown that the attorney had not actually violated

any Bankruptcy Code provision or any Bankruptcy Rule.'" (*citing In re Park-Helena Corp.,* 63

F.3d 877, 880 (9th Cir. 1995)). The attorney in *Segal* was required to, but did not, supplement his

Rule 2016(b) disclosure. Despite the *de minimis* amount of the payment, the court denied all

fees. *Id*. Full disclosure of compensation arrangements is the requirement, even if the amount is

*de minimis*, even if the failure to disclose was negligent or inadvertent, and even if the disclosure

violation does not result in any actual harm to the estate.

i. **The Failure to Disclose the Source of Fees Had a Substantial Negative
Impact on the Bankruptcy Estate.**

Disgorgement of all fees is further warranted in this case because Debtor's Counsel's

failure to disclose the source of compensation has had a substantial impact on this case. "The

purpose of the disclosure is to allow any party in interest to make an independent judgment about

16

the effect on the estate of any given payment." *In re Sandpoint Cattle Co., LLC*, 556 B.R. 408, 421 (Bankr. D. Neb. 2016). The Debtor had no cash under its own control; all payments went through Blue Castle. The Checks were thus the only cash assets that the Debtor controlled entirely on its own. The fact that over 90% of the cash assets in the Debtor's estate were to be used to pay Debtor's Counsel should have been brought to everyone's attention.

The disclosure of the source of compensation, the Checks, would also have alerted other parties that the Schedules and SOFA were missing material items. If the Debtor's claim for theft recovery had been left off the Schedules, then what other items might have been overlooked? Revelations about other assets and transactions continued to dribble out piecemeal. For a summary of the inaccuracies in the Schedules and SOFA, *see* **Exhibit 15.** Debtor's Counsel was alerted to the existence of the Checks by at least October 2024[3]. Had the Schedules been amended, or the use of the Checks to pay attorney fees in December 2024 had been disclosed, the investigation into the Debtor's incompetence and gross mismanagement could have been launched nearly a year ago, and action taken to remove the debtor-in-possession, thus protecting the bankruptcy estate and reducing the administrative costs incurred over the past year.

Full disgorgement of all fees is warranted in this case due to Debtor's Counsel's failure to update all parties, including the Court, on the unscheduled estate assets that were used to pay his fees. While case law encourages full disgorgement regardless of the impact on the bankruptcy estate, in this case, the impact on the bankruptcy case was profound. No mitigating factors exist that would warrant any other remedy besides full disgorgement.

---

[3] The Checks were disclosed in the September 2024 MOR, which was filed in October 2024. Further, Debtor's Counsel was copied on emails regarding the Checks in October 2024.

17

**C. Counsel Failed to Disclose the Joint Defense Agreement.**

### 1. Debtor's Counsel Had a Duty to Disclose the Joint Defense Agreement Pursuant to 11 U.S.C. §§ 327, 328, and Bankruptcy Rule 2014.

After the Mediation, it appears that a question arose regarding whether the Debtor's attorney-client privileged information created in the course of this bankruptcy case would pass to a trust that was to be established by a plan. The Committee and Debtor's Counsel exchanged emails regarding the attorney-client privileged materials. The Committee provided a copy of those emails to the U.S. Trustee and they are attached as **Exhibit 20**.  This communication from the Committee in September 2025 was the first the U.S. Trustee learned about a Joint Defense Agreement that purportedly affected the Debtor's attorney-client privilege.

The Parsons Employment Application and the Rothschild Declaration both disclosed that Parsons represented Mr. Tilton individually in litigation initiated by Jason Brown (the "Brown Lawsuit"). *See* **Exhibit 1** at ¶ 20 *and* **Exhibit 2** at ¶ 13. Thus, all parties in this case were aware that Parsons was defending Mr. Tilton as an individual in the Brown Lawsuit. However, it appears that Mr. Tilton's representation has changed during this case. While the signatures themselves are undated, the Joint Defense Agreement shows an effective date of April 1, 2025. *See* **Exhibit 21**. It was signed by attorney Timothy Smith at Parsons on behalf of the Debtor and by attorney Jeffrey Shields at Ray Quinney & Nebeker[4] on behalf of Aaron Tilton. The Second Fee Application covers a time period ending on March 31, 2025 and shows that 56.2 hours were billed in the "Litigation" category, for a fee request of $26,779.50. *See* **Exhibit 14** at p.6.

The day after the Second Fee Application period ended, the Joint Defense Agreement became effective. This raises many questions. Why was the Joint Defense Agreement signed at

---

[4] Ray, Quinney & Nebeker also represents Blue Castle in this bankruptcy case.

18

this particular point in the case? Is Parsons still representing Aaron Tilton as an individual? Are

Ray Quinney & Nebeker jointly representing Mr. Tilton with Parsons? Is Parsons still working

on the Brown Lawsuit? Are services being duplicated? How are duties allocated between

Parsons, which is billing the bankruptcy estate, and Ray Quinney & Nebeker, which is not being

paid from the bankruptcy estate? Since the automatic stay barred further action against the

Debtor in the Brown Lawsuit, why is the Debtor a party to this Joint Defense Agreement? What

impact (if any) does the Joint Defense Agreement have on the Debtor's attorney-client privilege?

All these questions could have been asked and answered months ago if Debtor's Counsel

had appropriately disclosed the Joint Defense Agreement by amending Schedule G to add it.[5]

While the Joint Defense Agreement apparently did not exist on the Petition Date, the duty to

disclose connections continues throughout the case. 11 U.S.C. § 328(c) denies compensation to a

professional if "at any time during such professional person's employment under section 327 …,

such professional person is not a disinterested person". The fact that a professional can lose

disinterested status during a case implies a duty to continue to disclose and evaluate connections

that may develop during the case. *See In re Cook*, 223 B.R. 782, 793 (BAP 10th Cir. 1998)

("[Section] 328(c) makes clear, however, the need for self-scrutiny and avoidance of conflicts

does not end when the professional's employment application is approved.").

An attorney's continuing obligation to disclose conflicts and connections has been

affirmed in case law. "The duty to disclose any conflict continues throughout counsel's

representation of the debtor-in-possession." *Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434,

456 (D. Utah 1998). "Most importantly, the duty to disclose does not end once the Rule 2014

---

[5] The Debtor should have sought this Court's permission before entering into this contract.
Without proper disclosure and the Court's approval to assume this contract under 11 U.S.C. §
365, the Joint Defense Agreement does not appear to be binding on the Debtor.

Verified Statement has been filed; rather, there is an ongoing duty of counsel to inform the court

of its connections and potential conflicts." *In re Harris Agency, LLC*, 451 B.R. 378, 390 (Bankr.

E.D. Pa. 2011).

Regardless of the content of the Joint Defense Agreement and regardless of whether it

creates an actual conflict of interest, Debtor's Counsel should have disclosed its existence and,

on behalf of the Debtor, sought the Court's permission to enter into it. Debtor's Counsel makes it

plain that he believes he is bound by the Joint Defense Agreement. As shown in the emails

attached as **Exhibit 20**, he declined to agree to provide attorney-client privileged materials to a

future Plan Administrator because "the Debtor has had a joint-defense agreement with the

affiliates since before the petition date[6], and the Debtor cannot unilaterally waive that privilege

on any of those materials."

The Joint Defense Agreement should have been disclosed as a connection that Debtor's

Counsel had with "the debtor, … [and] any other party in interest. Bankruptcy Rule

2014(a)(2)(F). The Joint Defense Agreement is also relevant to the determination of whether

Debtor's Counsel is disinterested because it is a "connection" with the Debtor within the

meaning of 11 U.S.C. § 101(14)(C). Its existence was not disclosed until Debtor's Counsel

brought it up in an email to the Committee in August 2025.[7]

---

[6] The effective date of the Joint Defense Agreement is April 1, 2025. The date it was signed remains unknown. However, the Joint Defense Agreement was not effective until April 1, 2025 even if it was in existence before the Petition Date.

[7] In the email dated August 13, 2025, Debtor's Counsel states that he believed the attorney-client privileged materials had been discussed earlier, during the Mediation. *See* **Exhibit 20** at p.2. It appears that he may have corrected himself and agreed that the attorney-client privilege was not discussed at the Mediation. *See* **Exhibit 22** (email from Committee Counsel stating that "Brian later walked back this position on a call and acknowledged that this change may have never been communicated to the UCC.").

Even if the Joint Defense Agreement did not create an actual conflict of interest, "the Tenth Circuit has taken a stricter approach to the conflicts of interest issue." *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 850 (10th Cir. BAP 1997). Noting that a court does not have a chance to evaluate a possible conflict of interest if there is a "complete lack of disclosure," the court in *Smitty* denied all fees, brushing aside the argument that the undisclosed matter "gave rise only to a potential conflict of interest, not an actual conflict." *Id*. The determination about the existence or non-existence of an actual conflict cannot be made unless a debtor and its counsel disclose all connections. Similar to the *Smitty* case, in this case, there has been a complete lack of disclosure regarding the Joint Defense Agreement until many months after it was signed. Even then, its disclosure to the Court is due to the efforts of the U.S. Trustee, not to the Debtor's candor.

Whether or not the Joint Defense Agreement created an actual conflict of interest for Debtor's Counsel, it was a disclosable connection and Debtor's Counsel failed to disclose it. This was a violation of Bankruptcy Rule 2014.

### 2. The Appropriate Remedy is to Order Counsel to Return All Fees Paid and Deny Further Compensation from the Bankruptcy Estate

In *Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434 (D. Utah 1998), the Utah District court affirmed a Utah bankruptcy court decision denying compensation to counsel for failing to disclose that his firm provided a legal opinion to certain individuals employed by the debtor's special counsel. "Failure to disclose connections that even have the potential for creating a conflict can warrant the denial of all compensation to counsel for debtor-in-possession. It is not counsel's job to determine if that conflict is significant. That is the court's role." *Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. at 468-69 (internal citations omitted).

"An attorney who neglects to disclose all compensation arrangements, **and all connections in a bankruptcy case**, risks the forfeiture of all fees awarded from the bankruptcy

21

estate." *In re Stewart*, 970 F.3d 1255, 1265 (10th Cir. 2020) (emphasis added); *see also In re Interwest Business Equipment, Inc.* 23 F.3d 311, 318 (10th Cir. 1994) (finding that the employment applications and affidavits "did not address any of the conflicts involved" in the attorney's representation and affirming the denial of all fees); *and In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997) ("Failure to disclose connections that have the potential for creating a conflict warrants a denial of all compensation to debtor's counsel.").

The statute, the Bankruptcy Rules, and case law all agree that failure to disclose a connection may be grounds for denying all compensation.

III.   **CONCLUSION**

WHEREFORE, based on the foregoing, the United States Trustee respectfully requests that the Court (i) find that Debtor's Counsel failed to update its Disclosure of Attorney Compensation as required by 11 U.S.C. § 329 and Bankruptcy Rule 2016; (ii) find that Debtor's Counsel failed to disclose all connections as required by 11 U.S.C. § 327 and Bankruptcy Rule 2014; and (iii) issue an order to disgorge all interim compensation paid in this case, and denying any further compensation from the bankruptcy estate, and that the Court grant such other relief as it deems appropriate.

Date: December 11, 2025                    UNITED STATES TRUSTEE


By: /s/ *Melinda P. Willden*
MELINDA P. WILLDEN
Attorney for the United States Trustee

## <u>CERTIFICATE OF SERVICE BY ELECTRONIC NOTICE (CM/ECF)</u>

I hereby certify that on December 11, 2025, I electronically filed the foregoing document with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users.

- **James W. Anderson**   jwa@clydesnow.com, gmortensen@clydesnow.com
- **Laura Elizabeth Baccash**   laura.baccash@whitecase.com, mco@whitecase.com
- **Mark D. Bloom**   mark.bloom@bakermckenzie.com
- **Simeon J Brown**   sbrown@parsonsbehle.com
- **Deborah Rae Chandler**   dchandler@aklawfirm.com
- **Alexander Sun Chang**   achang@parsonsbehle.com
- **Austin Egan**   austin@stavroslaw.com
- **Carson Heninger**   heningerc@gtlaw.com, carson-heninger-5642@ecf.pacerpro.com,Candy.Long@gtlaw.com
- **Samuel P. Hershey**   sam.hershey@whitecase.com, mco@whitecase.com
- **Annette W. Jarvis**   jarvisa@gtlaw.com, longca@gtlaw.com
- **Michael R. Johnson**   mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Peter J. Kuhn**   Peter.J.Kuhn@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Joli A. Lofstedt**   joli@jaltrustee.com, ecf.alert+LofstedtUTB@titlexi.com,brenda@jaltrustee.com
- **Artur Machalski**   artur.machalski@gmail.com
- **Elliott D. McGill**   emcgill@parsonsbehle.com, pgruwell@parsonsbehle.com;ecf@parsonsbehle.com
- **Darren B. Neilson**   dneilson@parsonsbehle.com
- **Christopher L. Perkins**   cperkins@eckertseamans.com
- **Gregory F. Pesce**   gregory.pesce@whitecase.com, mco@whitecase.com
- **Walter A Romney**   war@clydesnow.com, gmortensen@clydesnow.com
- **Brian M. Rothschild**   brothschild@parsonsbehle.com, ecf@parsonsbehle.com;docket@parsonsbehle.com
- **Jeffrey Weston Shields**   jshields@rqn.com, 5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com
- **Abigail Jennifer Stone**   abigail.stone@gtlaw.com
- **Michael F. Thomson**   thomsonm@gtlaw.com, stuverm@gtlaw.com;mike-thomson-2584@ecf.pacerpro.com
- **Landon S. Troester**   lst@clydesnow.com, rcondos@clydesnow.com
- **United States Trustee**   USTPRegion19.SK.ECF@usdoj.gov
- **Melinda Willden tr**   melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

## <u>CERTIFICATE OF SERVICE BY MAIL OR OTHER MEANS</u>

I hereby certify that on December 11, 2025, I caused to be served a true and correct copy of the foregoing document as follows:

**Mail Service: First-class U.S. mail, postage pre-paid, addressed to:**

NONE

**Mail Service to all Parties in Interest: First-class mail, postage pre-paid, addressed to all parties who do not receive electronic service as set forth herein listed on the Official Court Mailing Matrix dated December 11, 2025  attached hereto:**

NONE

Date: December 11, 2025

<u>/s/</u>