## MANAGEMENT SERVICES AGREEMENT

**THIS MANAGEMENT SERVICES AGREEMENT** (this "*Agreement*") is made and effective as of the 1st day of December, 2023 (the "*Effective Date*"), by and between **BLUE CASTLE HOLDINGS, INC.**, a Delaware corporation ("*Manager*"), and **POWER BLOCK COIN, LLC**, dba **SMARTFI** a Utah limited liability company ("*Company*").

### RECITALS

**WHEREAS,** the Company is engaged in business of providing a cryptocurrency monetary system (the "*Business*");

**WHEREAS,** Manager has extensive knowledge and experience in providing oversight, management and support of certain administrative services, and Company is desirous of retaining Manager to provide such services, as hereinafter defined, to Company in support of the Business.

**NOW, THEREFORE,** in consideration of the mutual provisions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.      Appointment and Grant of Rights.

(a)      Subject to the terms and conditions set forth herein (the "*Terms*"), Company hereby appoints and grants Manager the exclusive right to provide and perform, for and on behalf of Company, and Manager agrees to provide and perform, on behalf of Company, the oversight and management services generally provided by executive management.  Consistent with the provisions of this Agreement, Manager shall have the responsibility and commensurate authority to provide the business services Manager reasonably determines appropriate to meet the day-to-day business functions of the foregoing personnel all as more specifically described in **Exhibit A** hereof (the "*Services*").

(b)      A service or task not included in **Exhibit A** shall not be deemed part of the services to be performed by Manager hereunder, unless such service or task is reasonably necessary to accomplish the Services.

2.      Manager' Obligations.  Manager shall:

(a)      before the date on which the Services are to start, obtain, and at all times during the term of this Agreement, maintain, all necessary licenses and consents and comply with all relevant laws applicable to the provision of the Services;

(b)      maintain complete and accurate records relating to the provision of the Services under this Agreement, including records of the time spent and materials used by Manager in providing the Services. During the term of this Agreement, and for a period of two (2) years thereafter, upon Company's reasonable request, Manager shall allow Company to inspect and make copies of such records and interview Manager personnel in connection with the provision of the Services;

(c)      obtain Company's written consent, which consent shall not be unreasonably withheld, prior to entering into agreements with or otherwise engaging any person or entity, including all subcontractors, other than Manager' employees or affiliates, to provide any Services to Company (each such approved subcontractor or other third party, a "*Permitted Subcontractor*"). Company's approval shall not relieve Manager of its obligations under the Agreement, and Manager shall remain fully responsible for

**Error! Unknown document property name.**

EXHIBIT

5

the performance of each such Permitted Subcontractor and its employees and affiliates and for their compliance with all of the terms and conditions of this Agreement as if they were Manager' own employees. Nothing contained in this Agreement shall create any contractual relationship between Company and any Manager subcontractor or supplier;

(d) ensure that all persons, whether employees, agents, subcontractors, or anyone acting for or on behalf of Manager, are properly licensed, certified, or accredited as required by applicable law and are suitably skilled, experienced, and qualified to perform the Services;

(e) devote and cause its employees and other representatives to devote, such time, attention and effort to the provisions of this Agreement as is necessary to perform the Services in a matter reasonably acceptable to Company;

(f) faithfully comply with all the terms and conditions of this Agreement.

3. <u>Company's Obligations</u>. Company shall:

(a) pay Manager the Service Fees specified in and in accordance with the manner and schedule set forth herein and in **Exhibit B** hereof;

(b) provide Manager access to Company's staff and relevant information to enable it to perform the Services;

(c) provide Manager with and allow it to use Company's specialized software and/or hardware system, if any;

(d) cooperate with and support Manager in its efforts to comply with and perform its obligations hereunder; and

(e) faithfully comply with all the terms and conditions of this Agreement.

4. <u>Fees and Expenses; Payment Terms</u>.

(a) In consideration for the satisfactory provision of the Services by Manager, Company agrees to pay the fees set forth on **Exhibit B** (the "***Service Fees***").

(b) Company shall pay the Service Fees to Manager within thirty (30) days of June 30 and December 31 of each fiscal year.

(c) The Service Fees and Services are subject to review by both parties annually from the Effective Date of this Agreement.

5. <u>Intellectual Property</u>.

(a) All intellectual property rights, including copyrights, patents, patent disclosures, and inventions (whether patentable or not), trademarks service marks, trade secrets, know-how and other confidential information, trade dress, trade names, logos, corporate names and domain names, together with all of the goodwill associated therewith, derivative works and all other rights (collectively, "***Intellectual Property Rights***") in and to all documents, work product, and other materials that are delivered to a party under this Agreement or prepared by or on behalf of the other party in the course of performing the Services shall be owned exclusively by the party who first owned or created the Intellectual Property Rights.

**Error! Unknown document property name.**

Case 24-23041 Doc 4975 Filed 06/20/25 Entered 06/20/25 21:24:21 Desc Exhibit
Management Services Agreement Page 10 of 25 Page 3 of 9

*Management Services Agreement*

(b)      The party providing the Services and its licensors are, and shall remain, the sole and exclusive owners of all right, title and interest in and to all documents, data, know-how, methodologies, software and other materials, including computer programs, reports and specifications, provided by or used by it in connection with performing the Services.

6.      <u>Confidential Information</u>.

(a)      All non-public, confidential or proprietary information of Company, including, but not limited to, trade secrets, technology, information pertaining to business operations and strategies, and information pertaining to customers, pricing, and marketing (collectively, "***Confidential Information***"), disclosed by Company to Manager, whether disclosed orally or disclosed or accessed in written, electronic, or other form or media, and whether or not marked, designated, or otherwise identified as "confidential," in connection with the provision of the Services and this Agreement is confidential, and shall not be disclosed or copied by Manager without the prior written consent of Company. Confidential Information does not include information that is:

(i)      in the public domain;

(ii)      known to Manager at the time of disclosure; or

(iii)      rightfully obtained by Manager on a non-confidential basis from a third party.

(b)      Manager shall use the Confidential Information only for the purpose of providing Services under this Agreement.

(c)      Without limiting any remedies at law or equity to which it may otherwise be entitled, Company shall be entitled to injunctive relief for any violation of this Section.

(d)      The parties hereby acknowledge that in the event a party breaches the provisions of this Section 6, the burden of proof shall lie with the breaching party to show that the breaching party did not use any Confidential Information to the detriment of the party to which such Confidential Information belongs.

7.      <u>Representations and Warranties</u>.

(a)      Manager represents and warrants to Company that:

(i)      It is duly authorized to enter into this Agreement and that this Agreement represents obligations of the Manager and are enforceable hereunder.

(ii)      It shall perform the Services using personnel of required skill, experience, and qualifications and in a professional and workmanlike manner in accordance with customary industry standards for similar services and shall devote adequate resources to meet its obligations under this Agreement.

(iii)      It is in compliance with, and shall perform the Services in compliance with, all applicable laws.

(iv)      The Services will be in conformity in all respects with all requirements or specifications stated in this Agreement.

**Error! Unknown document property name.**

Case 24-23043 Doc 449-5 Filed 06/20/25 Entered 06/20/25 21:47:21 Desc Exhibit
Management Document Services Agreement Page 20 of 25 Page 4 of 9

*Management Services Agreement*

(b)     Company represents and warrants to Manager that:

(i)     It is duly authorized to enter into this Agreement and that this Agreement represents obligations of the Company and are enforceable hereunder.

(ii)     It has all rights, authorizations and capacity to enter into this Agreement and to carry out any and all duties, responsibilities and activities hereunder and that it owns or holds any and all applicable licenses, permits and other authorizations and consents (including but not limited to any government authorizations and consents) in respect of the Business.

8.     <u>Warranties Cumulative</u>.  The warranties set forth in Section 7 above are cumulative and in addition to any other warranty provided by law or equity. These warranties survive any acceptance of or payment for the Services by Company. Any applicable statute of limitations runs from the date of Company's discovery of the noncompliance of the Services with the foregoing warranties.

9.     <u>General Indemnification</u>.

(a)     Manager shall defend, indemnify, and hold harmless Company and its subsidiaries, affiliates, successors, or assigns and its respective directors, officers, shareholders, and employees (collectively, "***Company Indemnitees***") against any and all loss, injury, death, damage, liability, claim, deficiency, action, judgment, interest, award, penalty, fine, cost or expense, including reasonable attorney and professional fees and costs, and the cost of enforcing any right to indemnification hereunder and the cost of pursuing any insurance providers (collectively, "***Losses***") arising out of or related to (i) any gross negligence or willful misconduct of Manager or its employees, agents and representatives; (ii) any uncured material breach of this Agreement by Manager or (iii) any violation of any law, rule, ordinance or regulation by Manager.

(b)     Company shall defend, indemnify, and hold harmless Manager and its subsidiaries, affiliates, successors, or assigns and its respective directors, officers, shareholders, and employees (collectively, "***Manager Indemnitees***") against any and all loss, injury, death, damage, liability, claim, deficiency, action, judgment, interest, award, penalty, fine, cost or expense, including reasonable attorney and professional fees and costs, and the cost of enforcing any right to indemnification hereunder and the cost of pursuing any insurance providers (collectively, "***Losses***") arising out of or related to (i) any gross negligence or willful misconduct of Company or its employees, agents and representatives; (ii) any uncured material breach of this Agreement by Company or (iii) any violation of any law, rule, ordinance or regulation by Company.

10.     <u>Intentionally left blank</u>

11.     <u>Termination</u>.

(a)     Either party may terminate this Agreement by written notice to the other party for any reason or no reason. Such termination shall be effective upon delivery of such written notice to the non-terminating party.

(b)     After the issuance of the termination notice by any party, the parties shall begin making their respective plans for the termination, and, prior to the effective date of the termination, the parties shall meet to discuss their respective plans and reasonably cooperate with each other to minimize the adverse impact of the termination on the businesses of the parties.

- 4 -

**Error! Unknown document property name.**

Case 24-23041 Doc 449-5 Filed 06/20/25 Entered 06/20/25 21:47:21 Desc Exhibit
Management Services Agreement Page 24 of 28 Page 5 of 9

*Management Services Agreement*

12.     <u>Waiver</u>.  No waiver by any party of any of the provisions of this Agreement is effective unless explicitly set forth in writing and signed by the other party. No failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement operates or may be construed as a waiver thereof. No single or partial exercise of any right, remedy, power, or privilege hereunder precludes any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

13.     <u>Force Majeure</u>.  Neither party shall be liable or responsible to the other party, nor be deemed to have defaulted or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of the impacted party, including, without limitation, acts of God, flood, fire, earthquake, war, embargo, invasion or hostilities, terrorist acts, riot, national emergency, revolution, insurrection, epidemic, or strike (each a "***Force Majeure Event***"). Manager's economic hardship or changes in market conditions are not considered Force Majeure Events. Manager shall use all diligent efforts to end the failure or delay of its performance, ensure that the effects of any Force Majeure Event are minimized, and resume performance under this Agreement. If a Force Majeure Event prevents Manager from carrying out its obligations under this Agreement for a continuous period of more than thirty (30) business days, Company may terminate this Agreement immediately by giving written notice to Manager.  During any Force Majeure Event when Manager cannot supply the Services, Company shall be permitted to secure third party services on an interim basis.

14.     <u>Assignment</u>.  Manager shall not assign any of its rights or delegate any of its obligations under this Agreement except to an affiliate without the prior written consent of Company, which consent shall not be unreasonably withheld, or as contemplated by Section 2(c) above. Any purported assignment or delegation in violation of this Section shall be null and void. No assignment or delegation relieves Manager of any of its obligations under this Agreement.

15.     <u>Relationship of the Parties</u>.  Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture, or other form of joint enterprise, employment, or fiduciary relationship between the parties, and neither party shall have authority to contract for or bind the other party in any manner whatsoever. By virtue hereof, neither party assumes, directly or by implication, the debts, obligations, taxes or liabilities of the other party.

16.     <u>No Third-party Beneficiaries</u>.  This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of these Terms.

17.     <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Utah without regard to any otherwise applicable choice of laws principles and rules.

18.     <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement between the parties and fully supersedes any and all prior agreements or understandings, written or oral, between the parties pertaining to the subject matter of this Agreement.

19.     <u>Severability</u>.  Should any provision of this Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, the legality, validity and enforceability of the remaining parts, terms, or provisions shall not be affected, and the illegal, unenforceable, or invalid part, term or provision shall be deemed not to be a part of this Agreement.

**Error! Unknown document property name.**

*Management Services Agreement*

20.      <u>Binding Effect</u>.  This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, and assigns.

21.      <u>Counterparts</u>.  This Agreement may be executed by signatures delivered electronically and in one or more counterparts, each of which shall be considered an original, and all of which together shall be deemed one and the same instrument.

**[Signatures on the Following Page]**

**Error! Unknown document property name.**

IN WITNESS WHEREOF, the undersigned has caused its authorized representative to set his hand to this Agreement as of the date hereof.

MANAGER:

BLUE CASTLE HOLDINGS, INC., a
Delaware corporation

By: _Aaron Tilton_____
Name:__Aaron Tilton_____
Title:___President and CEO_____

COMPANY:

POWER BLOCK COIN, LLC, dba
SMARTFI, a Utah limited liability company

By:_Brad L. Jones_____
Name:__Brad L. Jones_____
Title:___Manager_____

*[Signature Page to Management Services Agreement]*

Error! Unknown document property name.

## EXHIBIT A

### *Services*

Unless otherwise agreed by the parties, the services generally performed by a company's executive management, including but not limited to the following: administration, accounting, actuarial, legal, compliance, information systems, and human resources.

Exhibit A-1

**Error! Unknown document property name.**

## EXHIBIT B

### *Service Fees*

Services fees will be equal to Power Block Coin, LLC expenses incurred plus a 10% administrative fee.

Exhibit B-1

**Error! Unknown document property name.**