**GREENBERG TRAURIG, LLP**
Annette W. Jarvis (Utah #1649)
Carson Heninger (Utah #17410)
Abigail J. Stone (Utah # 19083)
222 South Main Street, Suite 1730
Salt Lake City, UT 84101
Telephone: (801) 478-6900
Email: jarvisa@gtlaw.com
        carson.heninger@gtlaw.com
        abigail.stone@gtlaw.com

**BAKER MCKENZIE**
Nicholas O. Kennedy (admitted *pro hac vice*)
Texas Bar No. 24087841
1900 N. Pearl Street, Suite 1500
Dallas, TX 75201
Telephone: +1 214 978 3000
Facsimile: +1 214 978 3099
nicholas.kennedy@bakermckenzie.com

Mark D. Bloom (admitted *pro hac vice*)
FL Bar No. 303836
1111 Brickell Ave., Suite 1000
Miami, FL 33131
Telephone: 305-789-8927
Facsimile: 305-789-8953
mark.bloom@bakermckenzie.com

*Attorneys for Zhouyang "Mason" Song*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Case No. 24-bk-23041-JTM |
| POWER BLOCK COIN, L.L.C., | Chapter 11 |
| Debtor. | Judge Joel T. Marker |

**LIMITED OBJECTION TO FIRST INTERIM APPLICATIONS OF
DEBTOR'S PROFESSIONALS FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES, AND RESERVATION OF RIGHTS**

Zhouyang "Mason" Song, a creditor and party in interest in this Chapter 11 case, by and through undersigned counsel, respectfully submits the following Limited Objection to: (i) the *First Interim Application of Parsons Behle & Latimer, Counsel to Debtor, for Allowance of Compensation and Reimbursement of Expenses* [Doc. No. 189] (the "Parsons Behle Application") and (ii) the *First Interim Application of CFO Solutions, LLC d/b/a Amplēo for Allowance of Compensation and Reimbursement of Expenses* [Doc. No. 192] (the "Amplēo Application," and together with the Parsons Behle Application, the "Applications"), and in support thereof, respectfully states as follows:

EXHIBIT
**10**

## PRELIMINARY STATEMENT

1. Undersigned counsel take no pleasure in filing this Limited Objection to the Applications. There is no basis to doubt that the hours reported on the Applications are legitimate, the hourly rates are reasonable, and both applicants enjoy solid reputations in their professions.[1]

2. What is objectionable is the allowance and award of compensation and expense reimbursement from an estate that, for lack of a better description, appears to have been "picked clean" by its parent company, CEO, and other insiders and affiliates, generates no meaningful income from its ordinary course of business, and thus faces a significant risk of administrative insolvency. Regrettably, this concern is compounded with the Parsons Behle Application, as its misguided efforts in leading the Debtor down an ill-fated Subchapter V path to nowhere and litigating needlessly over Subchapter V eligibility—as part of what appears to be a larger effort to whitewash the misdeeds of those insiders and affiliates—have created no benefit to the estate and creditors. To the contrary, as emerges from a review of the docket, from the first-day filings[2] the efforts undertaken by Parsons Behle have sought to benefit those insiders and failed to advance the course of this case for the interests of the estate and creditors. Furthermore, Parsons Behle has failed to investigate claims or provide transparency with respect to the Debtor's past relationship and transactions with its insiders and affiliates, which has resulted in needlessly wasteful litigation.

3. Ampléo, on the other hand, appears to have provided work that has benefitted the estate, but given the continued discrepancy of some of the financial reporting and the limited

---

[1] It is also worth noting that the interim Applications were filed less than 120 days after the Petition Date without Court approval. *See* 11 U.S.C. § 331 ("a debtor's attorney, or any professional person . . . may apply to the court not more than once every 120 days after an order for relief . . . ."). On this basis alone, the Applications can be denied at this time.

[2] *See, e.g., Debtor's Motion for an Order (1) Authorizing Continued Use of Debtor's Payment System Through Services Agreement with Blue Castle Holdings Inc., (2) Waiving Certain Investment and Deposit Guidelines, and (3) Granting Related Relief* [Doc. No. 7]; *see also Motion for Order Under 11 U.S.C. §§ 105(A), 362(A), and 28 U.S.C. § 2201 Order Staying Actions and Determining that Automatic Stay Covers Against Debtor's Employees or Officers Acting in Such Capacity* [Doc. No. 11].

2

amount of money to pay fees currently in the estate, the question arises as to whether interim fees should be awarded and paid at this time.

4. For these reasons, and as described more fully below, the Court should defer the payment of any fees to Parsons Behle and Amplēo pending further developments in this case and after giving an opportunity for the newly appointed official creditors committee to organize, retain counsel, and weigh in on the Applications.[3] Further, the Court should deny the interim compensation requested in the Parsons Behle Application at this time, without prejudice to refiling at such time as that firm's contribution and the ability of the estate to bear all of the professional fees can be assessed.

## ARGUMENT

5. Section 330(a)(1) of the Bankruptcy Code provides that the Court may award "reasonable compensation for actual, necessary services rendered by" the applicants. Section 330(a)(3)(C) specifies that, to determine whether the applicants' fees are "reasonable," the Court must consider whether the applicants' services were "necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of," this case. Section 330(a)(4)(A)(ii) explicitly prohibits awarding fees for "services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of" this case. *See also In re Bird*, 577 B.R. 365, 388 (B.A.P. 10th Cir. 2017) (denying a Chapter 7 trustee and his counsel's fee applications as containing services that "were neither necessary nor beneficial to the estate.") "The burden is on the party requesting fees to establish that its request is reasonable." *In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239, 1246 (10th Cir. 2013).

---

[3] *See Appointment of Unsecured Creditors Committee* [Doc. No. 199]. For these purposes, it may be appropriate to continue the hearing on the Applications from November 21, 2024 to a later date.

3

ACTIVE 703319959v2

6.      One factor courts consider in deciding whether to allow interim compensation is whether there is a "continuing need for funds to pay the necessary administrative expenses likely to be incurred in completing the administration of the case." *In re Com. Consortium of California*, 135 B.R. 120, 125 (Bankr. C.D. Cal. 1991); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 440 (Bankr. D. Alaska 1984) ("Another factor to be considered in determining the amount of interim compensation to be paid is whether there will be sufficient assets to cover all expenses of administration."). With assets having been stripped from the Debtor prior to the filing and the estate left wholly dependent on its Management Services Agreement with Blue Castle for liquidity, there is real cause for concern that awarding interim compensation to the Debtor's professionals may leave nothing for the professionals the Committee will seek to retain.

**I.      The Amplēo Application – Allow and Award But Withhold Payment**

7.      Addressing the less problematic of the Applications first, the amounts sought in the Amplēo Application are modest and there is no reason to doubt that the services described in that Application were rendered and accurately recorded on the fee statements. If anything, Amplēo is to be commended for promptly reporting the misrepresentations made to it and the Debtor by one of its former consultants, Cheryl Adams,[4] and issuing a credit for the work performed by Ms. Adams.[5]

8.      Accordingly, the objections to the Amplēo Application are limited to two narrow categories: (i) the overriding concern that, as offered above, having been looted of its cash and crypto assets by a series of insider transfers, the Debtor's estate may prove to be administratively

---

[4] *Declaration of Matt McKinlay Correcting Declaration of Cheryl Adams in Support of Application to Employ Amplēo* [Doc. No. 150].

[5] *See* Amplēo Application at n.1.

ACTIVE 703319959v2

insolvent[6] and (ii) questions over the Debtor's multiple conflicting filings that reflect significant disparities in the calculation of its financial condition—specifically, its cryptocurrency liabilities—as of and before the Petition Date.[7] It is unknown whether these material inconsistencies arise from defects in the financial advisory services provided by Amplēo or the Debtor's failed effort to understate its debts in order to seek refuge under Subchapter V of the Bankruptcy Code.[8] Accordingly, while reserving his right to object to all fees on further interim and final applications, Mr. Song proposes that the Court allow and award interim fees to Amplēo as requested but withhold authority to pay those fees pending further developments in the case. It is hoped that the recent appointment of a creditors committee with investigative powers will provide greater insight into the basis for these discrepancies and the overall financial condition of the Debtor's estate, so that the Court may make a more fully informed decision on the Applications at a later date.

## II.    The Parsons Behle Application – Deny Without Prejudice

9.    Regrettably, the issues posed by the Parsons Behle Application are far more significant, and at minimum warrant a delay in any award of interim compensation. This

---

[6] As reflected by the March 26, 2024 engagement letter attached to the *Application to Employ Amplēo as Accountant and Financial Advisor to the Debtor* [Doc. No. 5], Amplēo provided certain pre-petition services to the Debtor; however, it is unknown whether those services included or related to the series of questionable insider transfers that have left the estate devoid of any meaningful assets other than unsecured notes payable and claims against insiders and affiliates that have yet to be investigated.

[7] These discrepancies and the Debtor's lack of candor with the Court are described in paragraph 2 of the *Objecting Creditors' (I) Joinder to the United States Trustee's Objection and (II) Objection to Debtor's Designation as a Debtor Under 11 U.S.C. § 1182 and Election to Proceed Under Subchapter V* [Doc. No. 88] ("Among other devices, the Debtor grossly underreports liabilities on its Statements and Schedules by listing the value of all crypto-denominated claims as 'unknown' [Doc. No. 39] at 14–68. Notably, however, the Debtor had no problem valuing both its assets and liabilities, including those denominated in cryptocurrency, in U.S. dollars as part of its balance sheet as of March 31, 2024 (the "SmartFi Balance Sheet"). [Doc. No. 17]. According to the SmartFi Balance Sheet, the Debtor had $25,928,865 in total assets as of March 31, 2024 and $69,409,854 in total liabilities, resulting in a negative equity value of $43,480,989.40. *Id.* at 4. Despite these calculations from just a few months earlier, the Debtor's Statements and Schedules report only $1,679,550.68 in liabilities. [Doc. No. 39] at 1. Ironically, while the Debtor makes no effort and claims inability to value its crypto-denominated liabilities in U.S. dollars in its Statements and Schedules, it somehow has no problem providing a value for its crypto-denominated assets in U.S. dollars. *See id.* at 10.")

[8] See *Memorandum Decision Sustaining Objections to Debtor's Subchapter V Election* [Doc. No. 190].

Application should be denied in its entirety, without prejudice to filing a new application at a later time as the financial condition of the estate becomes clearer and Parsons Behle is able to show that its work that has truly benefited the estate.

10.    The concern here arises from the fact that, from the very first day of this case, the agenda set by the Debtor and implemented by Parsons Behle has already resulted in significant litigation that has not served the interests of creditors in this case;  rather, that litigation has arisen out of the efforts of the Debtor and Parsons Behle: (i) to serve and protect the interests of the Debtor's parent Blue Castle and their common principal Mr. Tilton and (ii) to disenfranchise the legitimate creditors of their claims and votes on a plan that would be patently unconfirmable in a case under Chapter 11[9] by masquerading as a Subchapter V debtor despite having debts of at least $69,409,854, as shown on the Debtor's own pre-petition balance sheet.[10]

11.    Both of the Debtor's first-day filings in the case sought relief solely for the benefit of insiders Mr. Tilton and Blue Castle and provided no discernible benefit to the estate. The Parsons Behle Application reflects 61.1 hours and $23,292.50 for "Task 19 – Relief From Stay and Adequate Protection" [11] in a failed effort to extend the protection of the automatic stay to Mr. Tilton[12] that was summarily denied by the Court.[13] The other first-day filings sought approval of the highly irregular "Management Services Agreement" with Blue Castle, which ultimately was approved by the Court in substantially modified form only after protracted litigation with the two

---

[9] Unlike a standard Chapter 11 case in which the grant of plan exclusivity is limited and can be terminated by the court, under 11 U.S.C. § 1121(b) & (d) a debtor in a case under Subchapter V enjoys permanent exclusivity under section 1189(a).

[10] *See Debtor's Amended Section 1116(1)(A) Disclosures* [Doc. No. 17], at 4 (March 31, 2024 Balance Sheet).

[11] References to the hours spent and fees incurred are drawn directly from the Summary by Task Code chart on page 5 of the Parsons Behle Application.

[12] *Motion for Order Under 11 U.S.C. §§ 105(a), 362(a), and 28 U.S.C. § 2201 Order Staying Actions and Determining That Automatic Stay Covers Against Debtor's Employees or Officers Acting in Such Capacity* [Doc. No. 11].

[13] *Order Denying Motion to Extend Automatic Stay (DKT. #11) Without Prejudice* [Doc. No. 48].

6

ACTIVE 703319959v2

largest creditors and elimination of the outrageous 10% surcharge payable to Blue Castle for every expense paid with the Debtor's own funds while purportedly acting as its banking agent.[14]

12.     Tellingly, and despite the Debtor's acknowledgment of over $21 million in direct transfers to Blue Castle and other insiders and the failure to explain the loss or disposition of over $100 million in alleged preference payments received from Celsius, the Parsons Behle Application reflects that the firm spent ***no time whatsoever*** on services billed under "Task Code 1 – Asset Analysis and Recovery." Instead, the firm's efforts have been devoted to the ambiguous catch-all category of "Task 7 – Case Administration"—197.7 hours for $89,959.50, just over 50% of the hours and fees reflected in its Application—and another 72.6 hours and $35,227.50 on "Task Code 14 – Litigation"—presumably its unsuccessful battles with its two largest creditors over the Blue Castle Management Services Agreement and Subchapter V eligibility.[15]

13.     Aggregating these three billing categories—Task Codes 7, 14 and 19— emphatically establishes the absence of any benefit to the estate from the bulk of the services for which Parsons Behle seeks compensation. Of the 389 hours and $179,005.50 reported and sought in the Parsons Behle Application,[16] ***84.4%*** of the fees appear to have been incurred for the benefit

---

[14] *Debtor's Motion for an Order (1) Authorizing Continued Use of Debtor's Payment System Through Services Agreement with Blue Castle Holdings Inc., (2) Waiving Certain Investment and Deposit Guidelines, and (3) Granting Related Relief* [Doc. No. 7]. As the Task Code summary reflects no time or fees relating to "Task Code 13 – Financing and Cash Collateral," it only can be assumed that the protracted battle over the one-sided Management Services Agreement with Blue Castle is included in one or both or the "Case Administration" and "Litigation" task codes addressed below.

[15] For purposes of this analysis, Mr. Song does not comment on the 45.8 hours and $21,964.00 in fees for "Task Code 17 – Plan and Disclosure Statement," resulting in the filing of the *Debtor's Combined Plan of Reorganization and Disclosure Statement* [Doc. No. 185] that the Debtor states its intention to pursue whether in Subchapter V or a full Chapter 11. Plan § 8.4. Mr. Song disputes the Debtor's contention that its "Plan is confirmable under either provision," but that dispute is beyond the scope of this Limited Objection.

[16] It bears mention here that the totals for the Summary by Task Code chart on page 5 of the Parsons Behle Application do not match those of the Summary by Timekeeper chart that precedes it on page 4. When the numbers in the Summary by Task Code chart are added up the totals are as follows: Total Hours: 450.10; Total Fees: $202,298.00; Blended Hourly Rate: $449.45; % Fees: 114.40.

ACTIVE 703319959v2

of Blue Castle and Mr. Tilton and the effort to evade the scrutiny and absolute priority protections attendant to a standard Chapter 11 case.[17]

14.    Parsons Behle's efforts to date invoke the expression, "live by the sword and die by the sword." Having served the Debtor on a fundamentally flawed mission to protect Blue Castle and Mr. Tilton and evade accountability for tens of millions of dollars in pre-petition transfers and unexplained losses in an ill-fated trip down the Subchapter V lane over the protestations of the largest creditors whose claims it sought to ignore, Parsons Behle should not be rewarded for that misguided effort. The litigious efforts for which Parsons Behle now seeks interim compensation in its Application were incurred in a concerted attempt to frustrate and disenfranchise legitimate creditors rather than fulfill the obligations of the Bankruptcy Code,[18] and at this point in time have produced little or nothing in the way of discernible benefit to the estate.

15.    For all these reasons, as well as the woeful cash position of the estate[19] following numerous unexplained transfers totalling millions of dollars to and through insiders and affiliates and the potential for administrative insolvency, the Parsons Behle Application should be denied, without prejudice to refiling and reconsideration at a later stage of this case.

---

[17] One also must question why 43.1 hours and $18,079.50—more than 10 % of the total Parsons Behle Application—are devoted to "Task Code 11 – Employment and Fee Applications." Surely a significant portion of this time was devoted to defending against the multiple objections to the unorthodox terms of the firm's retention—yet no time and fees are allocated to "Task Code 12 – Employment and Fee Application Objections."

[18] As if the Court needed more proof of the litigious approach that the Debtor and Parsons Behle have undertaken, the Parsons Behle Application reflects that only 10.7 hours and $5,068.00 are billed to "Task Code 15 – Meetings and Communications with Creditors"—a stunningly low amount in a case that proceeded initially under Subchapter V, where the primary efforts of a legitimate debtor are directed to the negotiation of a consensual plan within 90 days from the petition date. 11 U.S.C. § 1189(b).

[19] While the Plan is deficient or misleading in so many other respects, both the Plan and the Debtor's Monthly Operating Report for August 2024, [Doc. No. 187], reflect no cash on hand to pay administrative expenses of any kind.

ACTIVE 703319959v2

## RESERVATION OF RIGHTS

16.     In addition to all the foregoing objections, Mr. Song reserves all of his rights in respect of both the Ampléo and Parsons Behle Applications as may be modified, amended, pursued or renewed at any point in this case and to object to any further interim and final fee applications at a later stage of the case.

## CONCLUSION

WHEREFORE, Mr. Song respectfully requests that the Court dispose of the Ampléo and Parsons Behle Applications in the manner set forth above.

DATED this 28th day of October, 2024.          **GREENBERG TRAURIG, LLP**


*/ s / Annette W. Jarvis*
Annette W. Jarvis
Carson Heninger
Abigail J. Stone

**BAKER MCKENZIE**
Nicholas O. Kennedy (admitted *pro hac vice*)
Mark D. Bloom (admitted *pro hac vice*)

*Attorneys for Zhouyang "Mason" Song*

9

**<u>CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)</u>**

I hereby certify that on the 28th day of October 2024, the foregoing was electronically filed with the Court and served via the Court's CM/ECF system upon all parties who receive service upon electronic filing:

- **James W. Anderson**    jwa@clydesnow.com, gmortensen@clydesnow.com
- **Laura Elizabeth Baccash**    laura.baccash@whitecase.com, mco@whitecase.com
- **Mark D. Bloom**    mark.bloom@bakermckenzie.com
- **Simeon J Brown**    sbrown@parsonsbehle.com
- **Matthew James Burne**    matthew.burne@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Deborah Rae Chandler**    dchandler@aklawfirm.com
- **Carson Heninger**    heningerc@gtlaw.com, carson-heninger-5642@ecf.pacerpro.com,Candy.Long@gtlaw.com
- **Samuel P. Hershey**    sam.hershey@whitecase.com, mco@whitecase.com
- **Annette W. Jarvis**    jarvisa@gtlaw.com, longca@gtlaw.com
- **Michael R. Johnson**    mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Peter J. Kuhn**    Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Joli A. Lofstedt**    joli@jaltrustee.com, ecf.alert+LofstedtUTB@titlexi.com,brenda@jaltrustee.com
- **Elliott D. McGill**    emcgill@parsonsbehle.com
- **Darren B. Neilson**    dneilson@parsonsbehle.com
- **Christopher L. Perkins**    cperkins@eckertseamans.com
- **Gregory F. Pesce**    gregory.pesce@whitecase.com, mco@whitecase.com
- **Walter A Romney**    war@clydesnow.com, gmortensen@clydesnow.com
- **Brian M. Rothschild**    brothschild@parsonsbehle.com, ecf@parsonsbehle.com;docket@parsonsbehle.com
- **Jeffrey Weston Shields**    jshields@rqn.com, 5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com
- **Landon S. Troester**    lst@clydesnow.com, rcondos@clydesnow.com
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Melinda Willden tr**    melinda.willden@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

*/ s / Candy Long*

**CERTIFICATE OF SERVICE BY MAIL OR OTHER MEANS**

I further certify that on October 28, 2024, I caused to be served a true and correct copy of the foregoing document as follows:

**CFO Solutions, LLC dba Ampleo**
13601 W McMillan Rd
#102 PMB 320
Boise, ID 83713

*/ s / Candy Long*

11

ACTIVE 703319959v2