## Willden, Melinda (USTP)

| | |
|---|---|
| **From:** | BRothschild@parsonsbehle.com |
| **Sent:** | Thursday, August 14, 2025 12:26 PM |
| **To:** | Abigail.Stone@gtlaw.com |
| **Cc:** | jarvisa@gtlaw.com; thomsonm@gtlaw.com; Carson.Heninger@gtlaw.com |
| **Subject:** | RE: PBC – following up on ACP issue in plan |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

While the Committee may have understood something, that was not put into the term sheet.  In fact, it was removed, and thus the Debtor understood the opposite.

I have described the reasons that they are not germane to anything, and you have responded only with "they are crucial."  Why are they crucial?  What use are they to the Plan Administrator.

I am not sure what you are proposing.  You say the Plan Administrator should get the materials and then, what, who could claw them back?  Once they are in the possession of the Plan Administrator, they are compromised and who would take them back?  The Affiliates, whose A/C privileged materials and joint-defense/common-interest materials are all mixed up in the emails, etc., would not be able to get them back.  And this would violate the JD/CI agreements.  So your suggestion is simply to breach those obligations with some later claw back right?  That is impractical as much as it is ineffective.  The affiliate won't know what use its privileged materials are being put to until long after they are used.

This is a no-go.

Brian



**Brian M. Rothschild**
Attorney at Law
Direct +1 801.536.6762

---

**From:** Abigail.Stone@gtlaw.com <Abigail.Stone@gtlaw.com>
**Sent:** Thursday, August 14, 2025 12:14 PM
**To:** Brian M. Rothschild <BRothschild@parsonsbehle.com>
**Cc:** jarvisa@gtlaw.com; thomsonm@gtlaw.com; Carson.Heninger@gtlaw.com
**Subject:** RE: PBC – following up on ACP issue in plan

Hi Brian,

Looking back at the Celsius Term Sheet and the Mediation Settlement Agreement, privileged materials were never excluded from the retained assets. The Committee and Celsius always understood, as is standard with a plan trust, that the Plan Administrator would inherit the attorney client privilege of the Debtor and all accompanying materials. This is crucial for the Committee and the Plan Administrator candidates. As we mentioned before, we can include a provision that the Plan Administrator will work with the Debtor to parse out privileged materials from non-Debtor affiliates. However, Debtor materials must go to the Plan Administrator.

Best,

EXHIBIT
20

**Abigail Stone**
Associate

Greenberg Traurig, LLP
222 South Main Street | Suite 1730 | Salt Lake City, Utah 84101
T +1 801.478.6931
Abigail.Stone@gtlaw.com | www.gtlaw.com | View GT Biography

**GT** GreenbergTraurig

---

**From:** Brian M. Rothschild <BRothschild@parsonsbehle.com>
**Sent:** Wednesday, August 13, 2025 12:18 PM
**To:** Stone, Abigail (Assoc-SLC-Bky) <Abigail.Stone@gtlaw.com>
**Cc:** Jarvis, Annette (Shld-SLC-Bky) <jarvisa@gtlaw.com>; Thomson, Michael F. (Shld-SLC-Bky) <thomsonm@gtlaw.com>; Heninger, Carson (Assoc-SLC-Bky) <Carson.Heninger@gtlaw.com>
**Subject:** RE: PBC - following up on ACP issue in plan

**\*EXTERNAL TO GT\***

We disagree that the issue is only one of logistics and cost.  At no point did we agree that attorney-client privileged materials would be turned over to the Plan Administrator.  In fact, I believe that was in an early draft, we asked that it be struck out, and it was.

It is also an issue of logistics:  Blue Castle, Solara, and the other affiliates have often used the same email addresses for their communications with many different attorneys on both separate and overlapping issues.  Further, the Debtor has had a joint-defense agreement with the affiliates since before the petition date, and the Debtor cannot unilaterally waive that privilege on any of those materials.

Finally, access to these materials is not necessary or even that useful for the Plan Administrator to do its job: these issues are accounting causes of action over which attorney-client privileged communications are going to be of no help.

Your case citations stand for little more than that in *those* cases, the privilege transferred or was always with the trustee.  Parties to plans, transactions, and sales can always specify what happens to the privilege.  In this case, it is not transferring.

Sincerely,

Brian



**Brian M. Rothschild**
Attorney at Law
Admitted in California, Idaho, and Utah
**Parsons Behle & Latimer**
201 South Main Street, Suite 1800  •  Salt Lake City, Utah 84111
Main +1 801.532.1234  •  Direct +1 801.536.6762  •  Fax +1 801.536.6111

**parsonsbehle.com**  •   BRothschild@parsonsbehle.com  •   vCard

A Professional Law Corporation

---

**CONFIDENTIALITY NOTICE:**  This electronic mail message and any attachment(s) are confidential and may also contain privileged attorney-client information or work product.  The message is intended only for the use of the addressee.  If you are not the intended recipient, or the person responsible to deliver it to the intended recipient, you may not use, distribute, or copy this communication.  If you have received the message in error, please immediately notify us by reply electronic mail or by telephone at +1 801.532.1234, and delete this original message.

**From:** Abigail.Stone@gtlaw.com <Abigail.Stone@gtlaw.com>
**Sent:** Wednesday, August 13, 2025 11:48 AM
**To:** Brian M. Rothschild <BRothschild@parsonsbehle.com>
**Cc:** jarvisa@gtlaw.com; thomsonm@gtlaw.com; Carson.Heninger@gtlaw.com
**Subject:** PBC - following up on ACP issue in plan

Hi Brian,

We wanted to follow up with you about the question of attorney client privileged information being part of the retained assets of the Plan Trust. Based on our discussion yesterday, it seems that the real issue here is separating out the ACP materials of the affiliates from that of the Debtor. While privileged materials of the affiliates do not need to be turned over to the Plan Administrator, it is both standard and essential for the Debtor's ACP materials to be handed over to the Plan Administrator, as the Plan Administrator succeeds to debtor's attorney-client privilege and unqualified right to work product.  *See, e.g. Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353 (1985); *see also In re Subpoena Issued to Friedman*, 286 B.R. 505, 507 (S.D.N.Y. 2002) (bankruptcy trustee controls the debtor's attorney-client privilege); *In re Hechinger Inv. Co. of Del.,* 285 B.R. 601, 613 (D. Del. 2002) (chapter 11 debtor's attorney-client privilege was controlled by the liquidating trustee). Additionally, we have spoken with potential Plan Administrator candidates as well as some of the UCC members, and both agree that it is critical for all Debtor ACP materials be turned over to the Plan Administrator.

Thus, we propose adding a provision to the plan stating that the Debtor will work cooperatively with the Plan Administrator to turn over privileged Debtor materials. This allows the Debtor and Plan Administrator to come up with a way to sort out the affiliate materials from those of the Debtor, whether through a 3rd party data processer or some other means. Please let us know if this is acceptable.

Best,
**Abigail Stone**
Associate

Greenberg Traurig, LLP
222 South Main Street | Suite 1730 | Salt Lake City, Utah 84101
T +1 801.478.6931
Abigail.Stone@gtlaw.com | www.gtlaw.com | View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.